## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NANOSTRING TECHNOLOGIES, INC., *et al.*,[1] | Case No. 24-10160 (CTG) |
| Debtors. | (Jointly Administered) |
|  | Ref. Docket No. 24 |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING, GRANTING SENIOR POSTPETITION SECURITY INTERESTS AND ACCORDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO SECTIONS 364(C) AND 364(D) OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 24] (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (the "Interim DIP Order") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 507, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-1, 4001-2, and

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Technologies Netherlands B.V., and NanoString Technologies Germany GmbH.  The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning set forth in the Motion or the DIP Credit Agreement (as defined herein).

9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), among other things:

(i)     authorizing Nanostring Technologies, Inc., in its capacity as borrower (the "<u>DIP Borrower</u>"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally (the Debtors, other than the DIP Borrower, the "<u>DIP Guarantors</u>," and together with the DIP Borrower, the "<u>DIP Loan Parties</u>") on a joint and several basis, the DIP Borrower's obligations in connection with a multi-draw senior secured super-priority priming term loan debtor-in-possession credit facility in the aggregate principal amount of up to $142,500,000 (the "<u>DIP Facility</u>," and the commitments thereunder, the "<u>DIP Commitments</u>" and the loans made thereunder, the "<u>DIP Loans</u>") subject to the terms and conditions set forth in that certain Credit Agreement and Guaranty (a form of which is attached hereto as **<u>Exhibit A</u>**) (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among the DIP Borrower, as borrower, the DIP Guarantors, as guarantors, the several financial institutions or entities from time to time party thereto as Lenders (as defined in the DIP Credit Agreement) (the "<u>DIP Lenders</u>"), and Wilmington Trust, National Association, as administrative and collateral agent (in such capacity, together with its successors and permitted assigns, the "<u>DIP Agent</u>," and together with the DIP Lenders and all holders of all other DIP Obligations (as defined below), the "<u>DIP Secured Parties</u>"), consisting of:

(a)     <u>New Money Loans</u>. A multi-draw senior secured super-priority priming term loan debtor-in-possession credit facility in an aggregate principal amount not to exceed $47.5 million (the "<u>New Money Loan Commitments</u>" and the term loans made thereunder, the "<u>New Money Loans</u>" and the obligations thereunder, the "<u>New Money Loans Obligations</u>"), consisting of, subject to the DIP Credit Agreement:

(1)     upon entry of the Interim DIP Order and subject to the satisfaction of other conditions set forth in the DIP Credit Agreement, the funding of Tranche 1 new money loans in an aggregate principal amount of $12,500,000 (the "<u>Tranche 1 New Money Loans</u>");

(2)     upon entry of the Final DIP Order (as defined below), one or more draws in an aggregate principal amount not exceeding $35,000,000 (the "<u>Tranche 2 New Money Loans</u>"); and

(b)     <u>Roll-Up Loans</u>. The DIP Lenders shall be entitled to roll up their ratable share of $95,000,000 of Prepetition First Lien Secured Obligations (the "<u>Roll-Up Amount</u>"), as follows, subject to the DIP Credit Agreement:

(1)     upon entry of the Interim DIP Order and subject to the satisfaction of other conditions set forth in the DIP Credit Agreement, the roll up of each DIP Lender's ratable share of $25,000,000 of the

aggregate principal amount of Prepetition First Lien Secured Obligations (as defined below) outstanding under the Prepetition First Lien Indenture (as defined below) as of the date of the Interim DIP Order (the "Interim Roll-Up," and the corresponding loans, the "Interim Roll-Up Loans");

(2)    upon entry of the Final DIP Order and subject to the satisfaction of other conditions set forth in the DIP Credit Agreement, the roll up of each DIP Lender's ratable share of $70,000,000 of the aggregate principal amount of Prepetition First Lien Secured Obligations under the Prepetition First Lien Indenture as of the date of the Final DIP Order (the "Final Roll-Up," and the corresponding loans, the "Final Roll-Up Loans");

(3)    the aggregate amount of all Prepetition First Lien Secured Obligations rolled up by the DIP Lenders shall be the "Roll-Up Loans," and the obligations thereunder, the "DIP Roll-Up Obligations," and the Prepetition First Lien Secured Obligations that are not rolled up into the Roll-Up Loans shall be the "Remaining Prepetition First Lien Secured Obligations").

(c)    Upon the entry of the Interim DIP Order with respect to the Interim Roll-Up, and upon the entry of the Final DIP Order with respect to the Final Roll-Up, the applicable Roll-Up Loans shall be automatically deemed funded pursuant to the DIP Credit Agreement (on a cashless, dollar-for-dollar basis) and shall constitute DIP Obligations, without constituting a novation, and shall satisfy and discharge an equal amount of Prepetition First Lien Secured Obligations as if a payment in such amount had been made under the Prepetition First Lien Indenture on the date of the Final DIP Order. The Roll-Up Loans shall be deemed to be made by each DIP Lender (the "Roll-Up Lenders") in an amount equal to such DIP Lender's pro rata share of the aggregate amount of the Prepetition First Lien Secured Obligations owing to all Roll-Up Lenders on the Closing Date (as defined in the DIP Loan Documents) and the outstanding aggregate amount of the Prepetition First Lien Secured Obligations held by any such DIP Lender shall be automatically and irrevocably deemed reduced by the amount of the Roll-Up Loans.

(ii)    authorizing the Debtors to execute, deliver, and perform under the DIP Credit Agreement, the security agreement, and any other related documents, including pledge agreements, mortgages, guaranties, promissory notes, certificates, instruments, the DIP Agent fee letter, and such other documents that may be reasonably necessary, desirable or required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the DIP Agent or the DIP Lenders (collectively, as such may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Loan Documents"), each of which shall be in form and substance

reasonably satisfactory to the DIP Secured Parties and the Debtors; and to perform such other acts as may be reasonably necessary, desirable or appropriate in connection with the DIP Loan Documents; <u>provided</u> that the executed DIP Credit Agreement shall be filed with the Court;

(iii)     granting to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, (a) DIP Liens (as defined below) on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, which DIP Liens shall be, subject to the Carve Out (as defined below), senior to all liens, security interests, and pledges on the DIP Collateral, except for only Permitted Prior Liens (as defined below) and (b) DIP Superpriority Claims (as defined below) pursuant to section 364(c)(1) of the Bankruptcy Code, subject and subordinate to the Carve Out;

(iv)     authorizing and directing the Debtors to pay all principal, interest, fees, costs, expenses, and other amounts payable under the DIP Loan Documents as such become due and payable, as provided and in accordance therewith;

(v)     authorizing the Debtors to use Cash Collateral (as defined below) in accordance with the Interim DIP Order, the Approved Budget (as defined below), and the DIP Loan Documents (including the DIP Credit Agreement);

(vi)     authorizing the Debtor to perform such other and further acts as may be necessary or desirable in connection with the Interim DIP Order, the DIP Loan Documents (including the DIP Credit Agreement) and the transactions contemplated hereby and thereby, subject to the Interim DIP Order and the Approved Budget;

(vii)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement the terms and provisions of the DIP Loan Documents and this Interim DIP Order;

(viii)     granting adequate protection to the Prepetition Secured Parties as provided in this Interim DIP Order;

(ix)     scheduling a final hearing (the "<u>Final Hearing</u>") within thirty days of entry of this Interim DIP Order to consider entry of a final order that grants all of the relief requested in the Motion on a final basis (the "<u>Final DIP Order</u>"), and approving the form of notice with respect to the Final Hearing; and

(x)     providing for the immediate effectiveness of this Interim DIP Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the Motion, the *Declaration of R. Bradley Gray in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 26] (the "<u>First Day Declaration</u>"), the *Declaration of John Cesarz in Support of Motion of the Debtors for Entry of Interim and Final*

*Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Section 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. •] (the "Cesarz Declaration"), the *Declaration of Jesse DelConte in Support of Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, Granting Senior Postpetition Security Interests and According Superpriority Administrative Expense Status Pursuant to Section 364(c) and 364(d) of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. •] (the "DelConte Declaration," and together with the First Day Declaration and the Cesarz Declaration, the "Declarations"), and evidence submitted or proffered at the hearing on the Motion held on February 6, 2024 (the "Interim Hearing"); and the Court having jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having determined that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having considered the Motion, the Declarations and the arguments of counsel at the Interim Hearing; and the Interim Hearing having been held and concluded, and all objections, if any, to the interim relief requested in the Motion having been withdraw, resolved or overruled by the Court; and the Court having found that the relief requested in the Motion is necessary to avoid immediate and irreparable harm

to the Debtors and their estates, as contemplated by Bankruptcy Rules 4001 and 6003; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors and their respective estates, creditors, and other parties in interest; and it appearing that the Debtors' entry into the DIP Facility is a sound and prudent exercise of the Debtors' business judgment; and the Court having found that proper and adequate notice of the Motion and Interim Hearing thereon has been given under the circumstances and that no other or further notice is necessary for the interim relief requested in the Motion; and the Court having found that good and sufficient cause exists for the granting of the relief requested in the Motion after having given due deliberation to the Motion and all of the proceedings had before the Court in connection with the Motion, **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.      Petition Date.  On February 4, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").

B.      Debtors in Possession. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      Jurisdiction and Venue.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the*

---

[3]    Where appropriate in this Interim DIP Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

*District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 9013, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, 7007-1, and 9013-1.

D.      Committee.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, "Committee").

E.      Notice.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(c)(2).  Under the exigent circumstances described in the Declarations, proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Interim DIP Order shall be required.

F.      Debtors' Stipulations.  In requesting the DIP Facility and the use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lenders and the Prepetition First Lien Secured Parties to agree to provide, or consent to, the DIP Facility, the Debtors' access to the Cash Collateral, and subordination of the Prepetition First Priority Liens to the Carve Out and the DIP Liens (which DIP Liens shall be subject and subordinate to the Carve Out) and as a condition to providing financing under the DIP Facility and consenting to the use of Cash Collateral, subject to the rights of the parties in interest (other than the Debtors) set forth in paragraph 12 hereof, the

Debtors, permanently and irrevocably admit, stipulate, acknowledge, and agree, as follows (collectively, the "Debtors' Stipulations"):

(i)     Prepetition First Lien Notes.  Pursuant to that certain Indenture, dated as of November 7, 2023 (as amended, or otherwise modified from time to time prior to, and as in effect on, the date hereof, the "Prepetition First Lien Indenture" and the notes issued thereunder, the "Prepetition First Lien Notes"), by and among, Nanostring Technologies, Inc., as issuer, the Guarantors (as defined therein) party thereto from time to time and U.S. Bank Trust Company, National Association, as trustee and collateral agent (the "Prepetition First Lien Agent," and together with holders of the Prepetition First Lien Notes from time to time, the "Prepetition First Lien Holders," the "Prepetition First Lien Secured Parties"), the Debtors incurred indebtedness to the Prepetition First Lien Holders (the "Prepetition First Lien Claims").

(ii)    Prepetition First Lien Secured Obligations.  As of the Petition Date, NanoString Technologies, Inc. and the guarantors thereto were justly and lawfully indebted and liable to the Prepetition First Lien Holders, without defense, counterclaim, or offset of any kind, in the aggregate amount of not less than $217,306,575 in principal amount of the Prepetition First Lien Notes (inclusive of interest that was payable in kind and added to the principal amount in accordance with the Prepetition First Lien Indenture prior to the Petition Date), plus any and all unpaid interest (including default interest), reimbursement obligations, fees, costs, expenses (including attorneys' fees, financial advisors' fees, related expenses, and disbursements), charges, disbursements, indemnification obligations, and any other amounts, contingent or otherwise, whenever arising or accruing, that may be due, owing, or chargeable in respect thereof, in each case, to the extent provided in the Prepetition First Lien Indenture (the "Prepetition First Lien Secured Obligations").

The Prepetition First Lien Secured Obligations owing to the Prepetition First Lien Secured Parties (including, from and after the deemed funding of the Interim Roll-Up Loans and the Final Roll-Up Loans, as applicable, the Remaining Prepetition First Lien Secured Obligations) constitute legal, valid, and binding obligations of the Debtors and their non-Debtor affiliate, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and no portion of the Prepetition First Lien Secured Obligations owing to the Prepetition First Lien Secured Parties is subject to avoidance, recharacterization, reduction, set-off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination, or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation, including in any cases under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").

(iii) <u>Prepetition First Priority Liens</u>.  As of the Petition Date, liens and security interests securing the Prepetition First Lien Notes (the "<u>Prepetition First Priority Liens</u>") granted to the Prepetition First Lien Agent on behalf of the Prepetition First Lien Secured Parties (including from and after the deemed funding of the Interim Roll-Up Loans and the Final Roll-Up Loans, as applicable, Prepetition First Lien Collateral Documents, which shall continue in effect to secure the Remaining Prepetition First Lien Secured Obligations), (A) have been properly recorded and are valid, binding, enforceable, non-avoidable and fully perfected liens and security interests in the Collateral (as defined in the Prepetition First Lien Indenture, the "<u>Prepetition First Lien Collateral</u>"), (B) constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and perfected first-priority security interests in and liens on the Prepetition First Lien Collateral, (C) encumber all of the Prepetition First Lien Collateral, as the same existed on the Petition Date, (D) are not subject to any offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination, recharacterization, disgorgement, disallowance, avoidance, challenge, or any other claim or Cause of Action[4] of any kind or nature whatsoever, whether under the Bankruptcy Code, applicable non-bankruptcy law, other applicable law, or regulation, (E) were granted to or for the benefit of the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the financial accommodations or consideration secured or obtained thereby, (F) are entitled to adequate protection as set forth herein, and (G) without giving effect to this Interim DIP Order, are senior with priority over any and all other liens on or security interests in the Prepetition First Lien Collateral, subject and subordinate only to (i) the Carve Out, (ii) the DIP Liens, and (iii) the Permitted Prior Liens.

(iv) <u>Prepetition First Lien Collateral</u>.  To secure the Prepetition First Lien Secured Obligations, the Debtors entered into certain security agreements and other instruments, including the Security Agreement, dated as of November 7, 2023, and the other Collateral Documents (as defined in the Prepetition First Lien Indenture) (collectively, as amended, restated, amended and restated, supplemented or otherwise modified from time to time, and together with any ancillary collateral documents, including any related mortgages and deeds of trust, the "<u>Prepetition First Lien Collateral Documents</u>", and together with the Prepetition First Lien Indenture and all other related documents, the "<u>Prepetition First Lien Notes Documents</u>"). Pursuant to the Prepetition First Lien Collateral Documents, the Debtors granted to the Prepetition First Lien Agent, for the benefit of their

---

[4]   As used in this Interim DIP Order, "<u>Causes of Action</u>" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, or offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the entry of this Interim DIP Order, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.

respective Prepetition First Lien Secured Parties, the Prepetition First Priority Liens on the Prepetition First Lien Collateral.

(v)    <u>Cash Collateral</u>.  Any and all of the Debtors' cash, including all amounts on deposit or maintained in any banking, checking, or other deposit accounts by the Debtors, any amounts generated by the collection of accounts receivable or other disposition of the Prepetition First Lien Collateral or deposited into the Debtors' banking, checking, or other deposit accounts, in each case as of or after the Petition Date, and the proceeds of any of the foregoing is the Prepetition First Lien Secured Parties' cash collateral within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>").

(vi)    <u>Bank Accounts</u>.  The Debtors acknowledge and agree that as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts listed in the exhibit attached to any order authorizing the Debtors to continue to use the Debtors' existing cash management system (the "<u>Cash Management Order</u>").

(vii)    <u>No Control</u>.  None of the Prepetition First Lien Secured Parties controls the Debtors or their properties or operations, has authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition First Lien Secured Obligations.

(viii)    <u>No Challenges/Claims</u>. No valid offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition First Priority Liens or Prepetition First Lien Secured Obligations exist, and no portion of the Prepetition First Priority Liens or Prepetition First Lien Secured Obligations is subject to any valid challenge or defense including impairment, set-off, avoidance, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (equitable or otherwise), attack, offset, defense, counterclaims or cross-claims pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors have no valid Claims (as such term is defined in section 101(5) of the Bankruptcy Code), objections, challenges, Causes of Action, and/or choses in action against any of the Prepetition First Lien Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to the Prepetition First Lien Notes, the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens, or otherwise, whether arising at law or at equity, including any challenge, recharacterization, subordination, avoidance, recovery, disallowance, reduction, or other claims arising under or pursuant to sections 105, 502, 510, 541, 542 through 553, inclusive, or 558 of the Bankruptcy Code or applicable state law equivalents.

(ix)    <u>Default</u>.  The Debtors are in default under the Prepetition First Lien Indenture, and an event of default has occurred under the Prepetition First Lien Indenture.

(x)     Good Faith.  The Prepetition First Lien Secured Parties have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of granting the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents relating to any and all transactions contemplated by the foregoing.

G.     Cash Collateral.  All of the Debtors' cash (subject to certain exceptions set out in the Prepetition First Lien Collateral Documents), including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition First Lien Secured Parties.

H.     Findings Regarding Postpetition Financing and Use of Cash Collateral.

(a)     The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing to provide, financing to the Debtors subject to: (i) for the Tranche 1 New Money Loans, entry of this Interim DIP Order and, for the Tranche 2 New Money Loans, the Final DIP Order; (ii) Court approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (iii) satisfaction or waiver of the closing conditions set forth in the DIP Loan Documents; and (iv) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Secured Parties are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim DIP Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(b)     Good and sufficient cause has been shown for the entry of this Interim DIP Order and for authorization of the Debtors to obtain the Tranche 1 New Money Loans and access the Cash Collateral on the terms set forth in the DIP Documents and this Interim DIP Order.  The Debtors have an immediate and critical need to obtain (i) postpetition financing pursuant to the

DIP Facility and (ii) permission to use Cash Collateral (in each case, solely to the extent consistent with the Approved Budget, subject to any permitted variance (the "Permitted Variance") as set forth in this Interim DIP Order and the DIP Loan Documents): (w) for general corporate and working capital purposes, including (1) to fund a marketing process for an Approved Sale (as defined below) and (2) to fund IP and Non-Bankruptcy Litigation (as defined in the DIP Credit Agreement) (provided that the amounts under clause (2) shall be limited to $10,000,000 (less any amounts used for such purpose from the proceeds of an Approved Sale or other cash on hand) or such other greater amount as consented to in writing by the Required DIP Lenders (as defined below)), (x) to fund costs and expenses related to the Chapter 11 Cases, (y) to fund the payment of interest, fees, costs, and expenses related to the DIP Facility arising under the DIP Loan Documents, and (z) to fund the payment of other fees and expenses set forth in the Approved Budget.  The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers requires the availability of working capital from the DIP Facility and Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, and parties in interest.  The Debtors do not have sufficient available sources of working capital and financing to preserve the value of their businesses without the ability to borrow under the DIP Facility and use Cash Collateral.  The Debtors and their estates will be immediately and irreparably harmed if the financing under the DIP Facility is not obtained pursuant to the terms of this Interim DIP Order and, as applicable, the DIP Loan Documents, or if the Debtors are unable to use Cash Collateral.  Entry of this Interim DIP Order is necessary and appropriate to avoid such harm to the Debtors, their estates, and other parties in interest.

(c)     The Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility.  The Debtors are unable to

obtain, pursuant to sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, (i) unsecured credit allowable under section 503(b) of the Bankruptcy Code as an administrative expense, (ii) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (iii) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  The Debtors are further unable to obtain superior secured credit under section 364(d)(1) of the Bankruptcy Code without, as provided for herein, (x) granting to the DIP Secured Parties the rights, remedies, privileges, benefits and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claim, (y) granting the Prepetition First Lien Secured Parties the rights, remedies, privileges, benefits and protections provided herein, including the First Lien Adequate Protection Liens, in each case, subject to the Carve Out and the Permitted Prior Liens and otherwise subject to the priorities set forth in this Interim DIP Order.  The Roll-Up Loans are an integral part of the DIP Facility, without which the DIP Lenders would be unwilling to extend the New Money Loans.

(d)    The DIP Facility and this Interim DIP Order have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Loan Documents, including all loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and all other obligations under the DIP Loan Documents (collectively, the "DIP Obligations") shall be deemed to have been extended by the DIP Secured Parties in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code. The DIP Obligations, the DIP Liens, and the DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) in the event that this Interim DIP Order or any provision hereof

is reversed or modified on appeal, and any liens or claims granted to, or payments made to, the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of any such reversal or modification of this Interim DIP Order shall be governed in all respects by the original provisions of this Interim DIP Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

(e)     Subject to paragraph 12 below, the Debtors have agreed to provide to each of the Prepetition First Lien Secured Parties (including, from and after the deemed funding of the Interim Roll-Up Loans and the Final Roll-Up Loans, as applicable, the Prepetition First Lien Secured Parties with respect to the Prepetition First Priority Liens, which shall continue in effect to secure the Remaining Prepetition First Lien Secured Obligations), pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, adequate protection of their respective interests in the Prepetition First Lien Collateral, including Cash Collateral, for any diminution in the value thereof. The proposed adequate protection and use of Cash Collateral are fair and reasonable and reflect a prudent exercise of the Debtors' business judgment.

(f)     Upon entry of the Final DIP Order granting such relief, In light of the Prepetition First Lien Secured Parties' agreement to subordinate their liens and superpriority claims to the DIP Obligations and the Carve Out and to permit the use of their Cash Collateral as set forth herein, each of the Prepetition First Lien Secured Parties shall be entitled to, the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to such parties with respect to the proceeds, products, offspring, or profits of any of the DIP Collateral or such Prepetition First Lien Collateral, as applicable.

(g)     The DIP Lenders constitute holders of 100% of the outstanding Prepetition

First Lien Notes.  All affected holders under the Prepetition First Lien Indenture have consented to, conditioned on the entry of this Interim DIP Order, the Debtors' incurrence of the DIP Facility, and proposed use of Cash Collateral on the terms and conditions set forth in this Interim DIP Order, including the terms of the adequate protection provided for in this Interim DIP Order.

I.      Section 506(c).  Upon entry of the Final DIP Order granting such relief, in light of the DIP Secured Parties' agreement to extend credit to the Debtors on the terms described herein, the DIP Secured Parties have negotiated for and are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code in respect of the DIP Collateral, subject to the Carve Out.

J.      Business Judgment and Good Faith Pursuant to Section 364(e).  The terms and conditions of the DIP Facility, the DIP Loan Documents, and the fees paid and to be paid thereunder to the DIP Secured Parties, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured postpetition financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Good cause has been shown for entry of this Interim DIP Order, and entry of this Interim DIP Order is in the best interests of the Debtors and their estates, creditors, and other stakeholders.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Secured Parties, the DIP Agent, and the Prepetition First Lien Secured Parties with the assistance and counsel of their respective advisors.  Credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made or extended in good faith by the DIP Secured Parties, within the meaning of section 364(e) of the Bankruptcy Code and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code.  The Prepetition First Lien Secured Parties have agreed to the use of Cash Collateral in good

faith, and the Prepetition First Lien Secured Parties shall be entitled to the full protection of sections 363(m) of the Bankruptcy Code in the event that this Interim DIP Order or any provision hereof is reversed or modified on appeal.  Based on the Motion, the Declarations, and on the record presented at the Interim Hearing, the terms of the DIP Facility are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration.

K. <u>Notice</u>.  Proper, timely, adequate, and sufficient notice of the interim relief requested in the Motion and the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, whether by facsimile, email, overnight courier, and or hand delivery, to certain parties in interest, including: (a) the United States Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice; (h) the DIP Agent and counsel thereto; (i) Prepetition First Lien Holders and counsels thereto; and (j) all other parties entitled to notice pursuant to Local Rule 9013-1(m). No other or further notice of the Motion with respect to the relief requested at the Interim Hearing or entry of this Interim DIP Order is or shall be required.

L. <u>Immediate Entry</u>.  The Debtors have requested immediate entry of this Interim DIP Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2), and 6003.  Absent entry of this Interim DIP Order, the Debtors' businesses, and estates would be immediately and irreparably harmed.  This Court concludes that entry of this Interim DIP Order is in the best interests of the

Debtors' respective estates and stakeholders and sufficient cause exists for immediate entry of this Interim DIP Order.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      <u>Interim Financing Approved</u>. The Motion is GRANTED on an interim basis as set forth herein.

2.      <u>Objections Overruled</u>. Any objections, reservations of rights, or other statements with respect to entry of the Interim DIP Order, to the extent not withdrawn or resolved, are OVERRULED on the merits.

3.      <u>Authorization of the DIP Facility and the DIP Loan Documents</u>.

(a)      The DIP Borrower and the DIP Guarantors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Loan Documents, including the DIP Credit Agreement, and such additional documents, instruments, certificates, and agreements as may be reasonably required or reasonably requested by the DIP Secured Parties or the Prepetition First Lien Secured Parties to implement the terms or effectuate the purposes of this Interim DIP Order and the DIP Loan Documents and to effectuate the funding of the Interim Roll-Up Loans and deemed repayment of a corresponding amount of Prepetition First Lien Secured Obligations. To the extent not entered into as of the date hereof, the Debtors and the DIP Secured Parties shall negotiate the DIP Loan Documents in good faith, and in all respects such DIP Loan Documents shall be subject to the terms of this Interim DIP Order and the Final DIP Order, consistent with the terms of the DIP Credit Agreement and otherwise reasonably acceptable to the Debtors, the DIP Agent and the required lenders under the DIP Credit Agreement (the "<u>Required</u>

DIP Lenders"). Upon entry of this Interim DIP Order, the Interim DIP Order, the DIP Credit Agreement, and other DIP Loan Documents shall govern and control the DIP Facility. The DIP Agent is hereby authorized to execute and enter into its respective obligations under the DIP Loan Documents, subject to the terms and conditions set forth therein and this Interim DIP Order. Upon execution and delivery thereof, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the DIP Loan Documents and this Interim DIP Order, the terms and conditions of this Interim DIP Order shall govern and control.

(b)     Upon entry of this Interim DIP Order, the DIP Borrower is hereby authorized to borrow, and the DIP Guarantors are hereby authorized to guaranty, the Tranche 1 New Money Loans in an aggregate principal amount of $12,500,000 on the date of this Interim DIP Order, subject to, and in accordance with, this Interim DIP Order.

(c)     Pursuant to the terms of this Interim DIP Order and the DIP Loan Documents, proceeds of the DIP Loans shall be used solely for the purposes permitted under the DIP Loan Documents and this Interim DIP Order, and in accordance with the Approved Budget, subject to any Permitted Variance. Attached as **Exhibit B** to the Motion and incorporated herein by reference is a budget prepared by the Debtors and approved by the Required DIP Lenders in accordance with the DIP Credit Agreement (the "Initial Budget"), which, for the avoidance of doubt, shall constitute an "Approved Budget."

(d)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including the DIP Credit Agreement, any security and pledge

agreement, and any mortgage to the extent contemplated thereby, or the DIP Credit Agreement), and to pay all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Loan Documents) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility and this Interim DIP Order, including:

(1)     the execution, delivery, and performance of the DIP Loan Documents, including the DIP Credit Agreement, the security agreement, and any other security documents;

(2)     the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Loan Documents (in each case in accordance with the terms of the applicable DIP Loan Documents and in such form as the Debtors, the DIP Agent, and the Required DIP Lenders may reasonably agree), it being understood that no further Court approval shall be required for (a) amendments, waivers, consents, or other modifications to and under the DIP Loan Documents or the DIP Obligations that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder or (b) any updates, modifications, or supplements to the Approved Budget in accordance with the DIP Credit Agreement;

(3)     the non-refundable payment to each of and/or on behalf of the DIP Secured Parties, as applicable, of the fees referred to in the DIP Loan Documents, including (x) all fees and other amounts owed to the DIP Agent and the DIP Lenders and (y) all reasonable and documented costs and expenses as may be due from time to time, including the commitment fees payable to the DIP Lenders for the New Money Loan Commitments, the reasonable and documented fees and expenses of counsel and other professionals retained as provided for in the DIP Loan Documents and this Interim DIP Order (whether incurred before or after the Petition Date), including, for the avoidance of doubt, (a) Gibson Dunn & Crutcher LLP (as counsel to certain DIP Lenders), Sullivan & Cromwell LLP (as counsel to certain DIP Lenders), Richards, Layton & Finger (as Delaware bankruptcy counsel to the DIP Lenders), Houlihan Lokey Capital, Inc. and any conflicts counsel or other legal counsels necessary to represent the interests of the DIP Lenders in connection with the Chapter 11 Cases (collectively, the "DIP Lender Advisors"); and (b) Alston & Bird and Potter Anderson, as counsel and Delaware counsel, respectively, to the DIP Agent; and, to the extent necessary to exercise its rights and fulfill its obligations under the DIP Loan Documents, one counsel to the DIP Agent in each

local jurisdiction, which such fees and expenses shall not be subject to the approval of the Court, nor shall any recipient of any such payment be required to file with respect thereto any interim or final fee application with the Court, <u>provided</u> that any fees and expenses of a professional shall be subject to the provisions of paragraph 18 of this Interim DIP Order; and

(4)      the performance of all other acts required under or in connection with the DIP Loan Documents.

(e)      Upon entry of this Interim DIP Order and subject and subordinate to the Carve Out, such DIP Loan Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding, and non-avoidable obligations of the Debtors enforceable against each Debtor in accordance with their respective terms and the terms of this Interim DIP Order for all purposes during the Chapter 11 Cases and any Successor Cases. No obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Interim DIP Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, or counterclaim. All payments or proceeds remitted (a) to or on behalf of the DIP Agent on behalf of any DIP Secured Parties or (b) subject to paragraph 12 below, to or on behalf of any Prepetition First Lien Secured Parties, in each case, pursuant to the DIP Loan Documents, the provisions of this Interim DIP Order, or any subsequent order of this Court shall be received free and clear of any offset, contest, objection, recovery, recoupment, reduction, defense, claim, counterclaim, charge, assessment, subordination, recharacterization, disgorgement, disallowance, avoidance, challenge or other liability, including any such claim or charge arising out of or based on, directly or indirectly, section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code (and, solely in the case of waivers of rights

under sections 506(c) and the "equities of the case" exception of section 552(b) with respect to the Prepetition First Lien Secured Parties, subject to entry of the Final DIP Order granting such relief).

(f)     The DIP Guarantors are hereby authorized and directed to jointly, severally, and unconditionally guarantee, and upon entry of this Interim DIP Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.  For the avoidance of doubt, subject to and upon entry of the Final DIP Order, any claim asserted by the DIP Secured Parties against a DIP Guarantor shall be asserted solely against such DIP Guarantor and not against the directors or officers of such DIP Guarantor.

4.      Approved Budget. The proceeds of the DIP Facility and Cash Collateral shall be used solely in accordance with the DIP Loan Documents and the Approved Budget, subject to the Permitted Variance. The Debtors shall comply in all respects with the terms of the DIP Loan Documents with respect to, among other things, the delivery and compliance with the Approved Budget and all obligations related thereto, including by delivering to the Prepetition First Lien Holders the Initial Budget and any subsequent Budget Supplement (as defined below), each of which shall be subject to the approval by the DIP Lenders as set forth in the DIP Credit Agreement.

5.      Budget and Variance Reporting. The Debtors will deliver to the DIP Agent, the Prepetition First Lien Holders, and the DIP Lender Advisors a supplement to the Approved Budget then in effect (each, a "Budget Supplement"), in addition to a variance report, in each case, in form, scope and detail satisfactory to the Required DIP Lenders, at such times as required and set forth in the DIP Credit Agreement.

6.      Access to Records. The DIP Secured Parties shall be provided with access to such information as they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to attorney client or similar privilege, or where such

disclosure would not be permitted by any applicable requirements of law or any binding agreement entered into prior to the date of this Interim DIP Order that would violate confidentiality obligations.

7.      DIP Superpriority Claims. Subject and subordinate only to the Carve Out and any Permitted Prior Liens, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims of the DIP Secured Parties against each of the Debtors' estates (the "DIP Superpriority Claims") (without the need to file any proof of claim) to the extent set forth in the Bankruptcy Code, with priority over any and all administrative expenses, adequate protection claims, diminution claims, and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(b), 506(c) (subject to entry of the Final DIP Order granting such relief), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code or otherwise, which allowed claims shall for the purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, subject to and upon entry of the Final DIP Order granting such relief, any proceeds or property recovered in connection with the pursuit of claims or Causes of Action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions"). Except as set forth in this Interim DIP Order or the Final DIP Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

8.      DIP Liens. As security for the DIP Obligations, effective and perfected upon the

date of this Interim DIP Order, and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Agent or any DIP Lender of, or over, any DIP Collateral (as defined below), the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for the benefit of the DIP Secured Parties (all property identified in clauses (a) through(c) below being collectively referred to as the "DIP Collateral"), subject and subordinate only to (x) valid, perfected and unavoidable liens (including any liens arising by statute or operation of law, or that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code), if any, existing as of the Petition Date that are senior to the liens or security interests of the Prepetition First Lien Secured Parties as of the Petition Date and are permitted by Section 4.27 of the Prepetition First Lien Indenture (the "Permitted Prior Liens"),[5] and (y) the Carve Out (all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Interim DIP Order and the DIP Loan Documents, the "DIP Liens"):

(a)     First Priority Lien On Any Unencumbered Property. Subject and subordinate only to the Carve Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically, and properly perfected first priority senior security interest in and lien upon all property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to Prepetition First Priority Liens or Permitted Prior Liens including (in each case, to the extent not subject to valid, perfected, and non-avoidable liens), all prepetition property and postpetition

---

[5]     The Prepetition First Lien Indenture is available publicly in the Form 8-K, dated as of November 7, 2023, filed by Debtor NanoString Technologies, Inc.

property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including unencumbered cash (and any investment of such cash) of the Debtors (wherever held); all equipment, all goods, all inventory, all accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date); all insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements of the Debtors; all owned real estate, real property leaseholds and fixtures of the Debtors (except to the extent any DIP Liens thereon would be prohibited by the applicable lease after giving effect to any applicable law regarding the enforceability of such prohibitions); patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtors; all commercial tort claims of the Debtors; and all claims and Causes of Action (including Causes of Action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from a Debtor to (x) another Debtor and (y) a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing, all products and proceeds of the foregoing and, subject to entry of the Final DIP Order granting such relief, all proceeds and property recovered in respect of Avoidance Actions (collectively, the "Previously Unencumbered Property"); provided, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law (including to the extent applicable law respects restrictions on the attachment of liens under the terms of applicable non-residential real property leases and agreements), the liens granted

pursuant to this Interim DIP Order shall attach solely to the Debtors' economic rights, including any and all proceeds of the foregoing.

(b)     <u>Liens Priming the Prepetition Liens</u>.  Subject and subordinate only to the Carve Out and Permitted Prior Liens, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all property of the Debtors, subject to paragraph (c) below; <u>provided</u>, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein or in the DIP Loan Documents, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law (including to the extent applicable law respects restrictions on the attachment of liens under the terms of applicable non-residential real property leases and agreements), the liens granted pursuant to this Interim DIP Order shall attach solely to the Debtors' economic rights, including any and all proceeds of the foregoing.

(c)     <u>Liens Junior to Certain Other Liens</u>. Subject and subordinate only to the Carve Out and Permitted Prior Liens, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and postpetition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security interests in favor of the DIP Lenders will be as described in such clauses).

9.     <u>Adequate Protection for the Prepetition First Lien Secured Parties</u>.

(a)     Subject to paragraph 12 below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, the Debtors have agreed to provide the Prepetition First Lien Secured Parties adequate protection of their interests in the Prepetition First Lien Collateral (including Cash Collateral), solely to the

extent of and in an amount equal to the aggregate diminution in value of such interests from and after the Petition Date (each such diminution, a "First Lien Diminution in Value"), resulting from the imposition of the priming DIP Liens on the Prepetition First Lien Collateral, the Carve Out, the Debtors' use of the Prepetition First Lien Collateral (including Cash Collateral), and the imposition of the automatic stay (each Prepetition First Lien Holder's claim for such First Lien Diminution in Value, a "Prepetition First Lien Adequate Protection Claim"). On account of such Prepetition First Lien Adequate Protection Claims, the Prepetition First Lien Agent, for the benefit of itself and the Prepetition First Lien Secured Parties, is hereby granted the following (collectively, the "Prepetition First Lien Adequate Protection Obligations"):

(b)      Prepetition First Lien Adequate Protection Liens. As security for any First Lien Diminution in Value of the Prepetition First Lien Collateral, subject and subordinate only to the Carve Out and the DIP Liens, additional and replacement, valid, binding, enforceable, non-avoidable, and effective and automatically perfected postpetition security interests in and liens as of the date of this Interim DIP Order (together, the "Prepetition First Lien Adequate Protection Liens"), without the necessity of the execution by the Debtors (or recordation or other filing), of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, on all DIP Collateral and, upon entry of the Final DIP Order granting such relief, any proceeds or property recovered from Avoidance Actions. Subject to the terms of this Interim DIP Order, the Prepetition First Lien Adequate Protection Liens shall be (A) with respect to the Prepetition First Lien Collateral, whether now existing or hereafter arising or acquired, subject and subordinate only to the Carve Out, the Permitted Prior Liens and the DIP Liens, (B) with respect to assets that did not constitute Prepetition First Lien Collateral but were subject to Permitted Prior Liens, subject and subordinate only to the Carve Out, the DIP Liens and

the Permitted Prior Liens and (C) with respect to Previously Unencumbered Property, subject and subordinate only to the Carve Out and the DIP Liens. The Prepetition First Lien Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code). Upon the deemed funding of the Interim Roll-Up Loans pursuant to the terms of this Interim DIP Order, the Prepetition First Lien Adequate Protection Liens shall continue to secure the Remaining Prepetition First Lien Secured Obligations.

(c)     Prepetition First Lien Adequate Protection Superpriority Claims. As further adequate protection, and to the fullest extent provided by sections 503(b), 507(a), and 507(b) of the Bankruptcy Code, the Prepetition First Lien Adequate Protection Claims shall be, subject and subordinate to the Carve Out, allowed superpriority administrative expense claims in each of the Chapter 11 Cases ("Prepetition First Lien Adequate Protection Superpriority Claims"). The Prepetition First Lien Adequate Protection Superpriority Claims shall be payable from and have recourse to all prepetition property and postpetition property of the Debtors and shall be senior to any and all other administrative expense claims in such Chapter 11 Cases now existing or hereafter arising, of any kind or nature whatsoever, including administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final DIP Order granting such relief), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code to the extent of any First Lien Diminution in Value and subject to the DIP Superpriority Claims.

(d)     Prepetition First Lien Adequate Protection Payments. As further adequate protection, the Debtors are authorized and directed to pay (1) postpetition monthly interest

payments to the Prepetition First Lien Agent, on behalf of the Prepetition First Lien Holders, in an amount equal to the accrued and unpaid interest at the non-default interest rate and as otherwise provided under the Prepetition First Lien Indenture (including, for the avoidance of doubt, payment of all prepetition accrued and unpaid interest under the Prepetition First Lien Indenture); provided that unless otherwise required by the Prepetition First Lien Agent, all such postpetition interest may be "paid-in-kind" by adding accrued and unpaid interest to the outstanding principal amount of the Prepetition First Lien Secured Obligations on the last business day of each month (which capitalized interest shall constitute principal for all purposes under the Prepetition First Lien Indenture), and (2) in accordance with the terms of paragraph 18 of this Interim DIP Order, all reasonable and documented fees and expenses (the "First Lien Adequate Protection Fees") of the Prepetition First Lien Secured Parties, whether incurred before or after the Petition Date, to the extent not duplicative of any fees and/or expenses paid pursuant to paragraph 3(d)(3) hereof, including all reasonable and documented fees and expenses of counsel and other professionals retained by the Prepetition First Lien Holders, including, for the avoidance of doubt, Gibson Dunn & Crutcher LLP, as counsel to certain Prepetition First Lien Holders, Sullivan & Cromwell LLP, as counsel to certain Prepetition First Lien Holders, Shipman & Goodwin LLP, as counsel to the Prepetition First Lien Agent, Richards, Layton & Finger, and Houlihan Lokey Capital, Inc. and any conflicts counsel or other legal counsels necessary to represent the interests of the Prepetition First Lien Holders (all payments described in (1) and (2) hereof, the "First Lien Adequate Protection Payments").  None of the First Lien Adequate Protection Fees or First Lien Adequate Protection Payments shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(e)  <u>Right to Seek Additional Adequate Protection</u>. Subject to further Court order, this Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any First Lien Diminution in Value of their interests in the Prepetition First Lien Collateral during the Chapter 11 Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties against any First Lien Diminution in Value of their respective interests in the Prepetition First Lien Collateral (including the Cash Collateral).

(f)  <u>Other Covenants</u>. The Debtors shall maintain their cash management arrangements in a manner consistent with the Cash Management Order approving the Debtors' cash management motion or any further Court order. The Debtors shall comply with the covenants contained in the DIP Credit Agreement regarding conduct of business, including preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations, and intellectual property rights material to the conduct of their business and the maintenance of properties and insurance.

(g)  <u>Reporting Requirements</u>. As additional adequate protection to the Prepetition First Lien Secured Parties, the Debtors shall comply with all reporting requirements set forth in the DIP Credit Agreement and shall provide all such reports, documents, and other information to the Prepetition First Lien Agent and the Prepetition First Lien Holders.

(h)    <u>Miscellaneous</u>. Except for the Carve Out and as otherwise provided in paragraph 7, the Prepetition First Lien Adequate Protection Liens and Prepetition First Lien Adequate Protection Claims granted to the Prepetition First Lien Secured Parties pursuant to this Interim DIP Order shall not be subject, junior, or *pari passu*, to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under the Bankruptcy Code, including pursuant to section 551 or otherwise, and shall not be subordinate to or made *pari passu* with any lien, security interest or administrative claim under the Bankruptcy Code, including pursuant to section 364 or otherwise in the Chapter 11 Cases or any Successor Cases, including any subsequently converted Chapter 11 Case of the Debtors to a case under Chapter 7 of the Bankruptcy Code.

10.    <u>Carve Out</u>.

(a)    <u>Priority of Carve Out</u>. Subject to the terms and conditions contained in this paragraph 10, each of the DIP Liens, DIP Superpriority Claims, Prepetition First Priority Liens, First Lien Adequate Protection Liens, and First Lien Adequate Protection Claims shall each be subject to and subordinate to payment of the Carve Out. The Carve Out shall have such priority claims and liens over all assets of the Debtors, including any DIP Collateral and Prepetition First Lien Collateral.

(b)    <u>Definition of Carve Out</u>. As used in this Interim DIP Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by

interim order, procedural order, or otherwise, all unpaid fees and expenses (and any monthly, restructuring, or sale fees to the extent earned prior to the date of the Carve Out Trigger Notice (as defined below)) (the "Allowed Professional Fees") incurred by (or payable to) persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if any) pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before the date of delivery of the Carve Out Trigger Notice by the DIP Agent at the direction of the Required DIP Lenders or at the direction of the Prepetition First Lien Secured Parties, whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,600,000 incurred on or after the date of delivery of the Carve Out Trigger Notice by the DIP Agent (at the direction of the Required DIP Lenders) (or by the Prepetition First Lien Secured Parties after repayment of the DIP Obligations in full), to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Professional Persons and not previously returned or applied to fees and expenses (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of the Required DIP Lenders) (or by the Prepetition First Lien Secured Parties after repayment of the DIP Obligations in full) to the Debtors, their lead restructuring counsel (Willkie Farr & Gallagher LLP and Young Conaway Stargatt & Taylor, LLP) at the e-mail addresses set forth in paragraph 46 hereof, the U.S. Trustee, the Prepetition First Lien Agent, and counsel to the Committee (to the extent one has been appointed), which notice may be delivered following the occurrence and

during the continuation of an Event of Default (as defined below) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     Professional Fees Account.  The Debtors shall, on a weekly basis, transfer cash proceeds of the DIP Facility or cash on hand into a segregated account not subject to the control of the DIP Agent, the DIP Lenders, the Prepetition First Lien Lenders, or the Prepetition First Lien Agent (the "Professional Fees Account") in an amount equal to the good faith estimates of Professional Persons for the amount of unpaid fees and expenses incurred during the preceding week by such Professional Person; provided that such good faith estimates shall be provided to the DIP Lenders as soon as reasonably practicable in advance of the transfer, and provided further that the amount in the Professional Fees Account shall not exceed the total amount allocated for Professional Persons in the Approved Budget.  Upon the delivery of the Carve Out Trigger Notice, the Debtors shall deposit all available cash on hand into the Professional Fees Account until such amounts therein equal the Carve Out.  The Professional Fees Account, and all funds held therein, shall be held in trust exclusively for the benefit of the Professional Persons, and shall be available only to satisfy obligations benefitting from the Carve Out, and the DIP Agent and DIP Lenders (i) shall not sweep or foreclose on any such available cash of the Debtors until the Professional Fees Account is fully funded, and (ii) shall have a security interest on any residual interest in the Professional Fee Account available following satisfaction in cash of all Carve Out expenses in subparagraph (a) above, and the priority of such lien shall be consistent with the DIP Liens. Further, notwithstanding anything to the contrary in this Interim DIP Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Credit Agreement) or increase or reduce the DIP Obligations, and (ii) the failure of the Professional Fees

Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Professional Fees Account, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim DIP Order, the DIP Facility, or the Prepetition First Lien Indenture, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the First Lien Adequate Protection Liens, and the First Lien Adequate Protection Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition First Lien Secured Obligations.

(d)      <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(e)      <u>No Direct Obligation To Pay Allowed Professional Fees</u>. None of the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases. Nothing in this Interim DIP Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition First Lien Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Further, notwithstanding anything to the contrary, each of the DIP Agent, the DIP Lenders and the Prepetition First Lien Secured Parties shall reserve its right to object any request for the payment or reimbursement of any fees or disbursement of any

Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases.

(f)    Payment of Carve Out On or After the Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Interim DIP Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

11.    Reservation of Rights of the DIP Agent, DIP Lenders, and Prepetition First Lien Secured Parties. Subject only to the Carve Out and Permitted Prior Liens, notwithstanding any other provision in this Interim DIP Order or the DIP Loan Documents to the contrary, the entry of this Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the Prepetition First Lien Secured Parties to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection at and following the Final Hearing; provided that any such further or different adequate protection shall at all times be subordinate and junior to the Carve Out, and the claims and liens of the DIP Secured Parties granted under this Interim DIP Order and the DIP Loan Documents; (b) any of the rights of the DIP Secured Parties or the Prepetition First Lien Secured Parties under the DIP Loan Documents, the Prepetition First Lien Indenture, any intercreditor agreement, or the Bankruptcy Code or under non-bankruptcy law (as applicable), including the right of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Cases, or (iii)

34

seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties. The delay in or failure of the DIP Secured Parties and/or the Prepetition First Lien Secured Parties to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the DIP Secured Parties' and/or the Prepetition First Lien Secured Parties' rights and remedies.

12.    <u>Reservation of Certain Committee and Third-Party Rights and Bar of Challenges and Claims</u>. Subject to the Challenge Period (as defined herein), the stipulations, admissions, waivers, and releases contained in this Interim DIP Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors in all circumstances and for all purposes and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.   The stipulations, admissions, and waivers contained in this Interim DIP Order, including the Debtors' Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the Debtors' estates, unless and to the extent that a party in interest with proper standing granted by order of the Court has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules (i) seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations, including regarding: (a) the validity, enforceability, extent, priority, or perfection of the mortgages, security interests, and liens of any of the Prepetition First Lien Secured Parties; (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition First Lien Secured Obligations; (c) asserting or prosecuting any so-called "lender liability" claims, avoidance actions or any other claim, counter claim, Cause of Action, objection, contest or defense, of any kind or nature whatsoever, whether arising under the

Bankruptcy Code, applicable law or otherwise, against any of the Prepetition First Lien Secured Parties or their respective representatives (any such claim, a "Challenge") and (ii) in which the Court enters a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed Challenge. A Challenge must be filed on or prior to seventy-five (75) days following entry of this Interim DIP Order (the "Challenge Period" and the date of expiration of the Challenge Period, the "Challenge Period Termination Date"); provided however, that if a chapter 11 trustee is appointed or the Chapter 11 Cases are converted to cases under chapter 7 prior to the Challenge Period Termination Date, the chapter 11 or chapter 7 trustee, as applicable, shall have until the later of (1) the Challenge Period Termination Date or (2) the twentieth (20th) day after the appointment of the chapter 11 trustee or the conversion of the Chapter 11 Cases to cases under chapter 7, as applicable, to commence a Challenge or to join, take over as plaintiff, or intervene in a timely filed and pending Challenge commenced by another party in interest; provided, further, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph  (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.  . Upon the occurrence of the Challenge Period Termination Date without the filing of a Challenge (or if any such Challenge is withdrawn or filed and overruled): (a) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or

elected in any Successor Case) shall be deemed to be forever barred; (b) the Prepetition First Lien Secured Obligations shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Chapter 11 Cases and any Successor Cases; (c) the Prepetition First Priority Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens and security interests, not subject to recharacterization, subordination, or avoidance; and (d) all of the Debtors' stipulations and admissions contained in this Interim DIP Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition First Lien Secured Parties' claims, liens, and interests contained in this Interim DIP Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Chapter 11 Cases and any Successor Cases. Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules then (a) any claim or action that is not brought shall forever be barred and (b) the stipulations and admissions contained in this Interim DIP Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such Challenge prior to the Challenge Period Termination Date (and solely as to the plaintiff party that timely filed such Challenge and not, for the avoidance of doubt, any other party-in-interest). Nothing in this Interim DIP Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee appointed in the Chapter 11 Cases, standing or authority to pursue any Cause of Action belonging to the Debtors or their estates, including any challenges (including a Challenge) with respect to the Prepetition First Lien Indenture, the Prepetition First Priority Liens, the Prepetition First Lien Secured Obligations and

a separate order of the Court conferring such standing on any Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest; provided, however, that nothing herein prohibits the Prepetition First Lien Secured Parties from contesting any request to obtain standing on any other grounds that applicable law permits.

13.     In the event a third party, including any Committee, files a challenge standing motion ("Challenge Standing Motion") seeking standing to commence a Challenge in accordance with the terms of this Interim DIP Order, any such Challenge Standing Motion shall, at a minimum, include a copy of any proposed objection or adversary complaint containing a detailed description of the claims and causes of action such party proposes to pursue. The Challenge Period shall be tolled for a period not to exceed thirty (30) days upon the filing of a Challenge Standing Motion (the "Tolling Period") by an interested party (including any Committee) seeking standing to commence a Challenge in accordance with the terms of this Interim DIP Order); provided, that any such tolling shall be applicable solely to the party that files the subject Challenge Standing Motion and solely as to the Challenges for which standing is sought (as set forth in such Challenge Standing Motion); and provided, further, that, unless otherwise ordered by the Court, the granting of any Challenge Standing Motion shall not extend the Challenge Period beyond expiration of the Tolling Period. The Challenge Period Termination Date may occur as to some, but not all, of the Prepetition First Lien Agent and/or other Prepetition First Lien Secured Parties if a Challenge is brought against one or more but not all of the Prepetition First Lien Agent and/or other Prepetition First Lien Secured Parties.

14.     Termination Date. On the date that the DIP Facility is terminated in accordance with the DIP Credit Agreement (the "Termination Date"), consistent with the DIP Credit

Agreement, (a) all DIP Obligations shall be immediately due and payable and all New Money Loans will terminate; (b) all authority to use Cash Collateral shall cease; provided, however, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund the Carve Out and pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget, subject to any Permitted Variance; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Loan Documents in accordance with this Interim DIP Order.

15.     Events of Default. The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Loan Documents, shall constitute an event of default (collectively, the "Events of Default"): (a) the failure of the Debtors to perform, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under this Interim DIP Order, (b) the failure of the Debtors to comply with any of the case milestones set forth in the DIP Credit Agreement, or (c) the occurrence of an "Event of Default" under the DIP Credit Agreement, in each case unless waived by the Required DIP Lenders or DIP Agent (as directed by the Required DIP Lenders), as applicable.

16.     Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default or other applicable Termination Date, unless such Event of Default or Termination Date has been waived by the DIP Agent (as directed by the Required DIP Lenders) or the Required DIP Lenders, as applicable, pursuant to section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from, the Court, subject to the terms of this Interim DIP Order and the Remedies Notice Period, (a) the DIP Agent (at the direction of the Required DIP Lenders) may send a Carve Out Trigger Notice to the parties set forth in Paragraph 10(b) declaring (i) all DIP Obligations

owing under the DIP Loan Documents to be immediately accelerated and due and payable for all purposes, rights, and remedies, without presentment, demand, protest or other notice of any kind, all of which are expressly waived by the Debtors, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens, DIP Superpriority Claims or the DIP Obligations, (iv) the Carve Out shall be triggered and (vi) interest under the DIP Facility shall accrue at the default rate, as provided in the DIP Loan Documents and (b) subject to paragraph 13(b), the Prepetition First Lien Agent (at the direction of the applicable required holders) may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral. The automatic stay in the Chapter 11 Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties is hereby modified so that five (5) business days after the Termination Date (the "Remedies Notice Period"): (a) the DIP Agent (at the direction of the Required DIP Lenders) shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Documents and this Interim DIP Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out; and (b) subject to the foregoing clause (a), the applicable Prepetition First Lien Secured Parties shall be entitled to exercise their respective rights and remedies to the extent available in accordance with the Prepetition First Lien Indenture and this Interim DIP Order with respect to the Debtors' use of Cash Collateral; provided, that the Debtors shall be entitled to continue to use Cash Collateral in accordance with the terms of this Interim DIP Order during any Remedies Notice Period only to make payroll and fund critical expenses necessary to preserve the Prepetition First Lien Collateral, in each case in accordance with the terms of the Approved Budget and this

Interim DIP Order. During the Remedies Notice Period, the Debtors and the Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court. Absent Court order prior to the expiration of the Remedies Notice Period to the contrary, the automatic stay, as to all of the DIP Agent, DIP Lenders, Prepetition First Lien Secured Parties, shall be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition First Lien Secured Parties (at the direction of the required Prepetition First Lien Holders) shall be permitted to exercise all remedies set forth herein, in the DIP Loan Documents, the Prepetition First Lien Loan Documents, and as otherwise available at law without further order of or application or motion to this Court consistent with this Interim DIP Order.  Upon expiration of the Remedies Notice Period, the Debtors shall waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim DIP Order.

17.    <u>Limitation on Charging Expenses Against Collateral</u>. Subject to entry of the Final DIP Order granting such relief, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from (a) the DIP Collateral (except to the extent of the Carve Out), the DIP Agent, or the DIP Lenders or (b) the Prepetition First Lien Collateral (except to the extent of the Carve Out) or the Prepetition First Lien Secured Parties, in each case, pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the DIP Agent (as directed by the Required DIP Lenders), the Required DIP Lenders, and the Prepetition First Lien Secured Parties,

as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the Required DIP Lenders, or the Prepetition First Lien Secured Parties.

18.    <u>Use of Cash Collateral</u>. The Debtors are hereby authorized to use all Cash Collateral of the Prepetition First Lien Secured Parties, but solely for the purposes set forth in this Interim DIP Order and in accordance with the Approved Budget (subject to Permitted Variances), including to make payments on account of the First Lien Adequate Protection Obligations provided for in this Interim DIP Order, from the date of this Interim DIP Order through and including the Termination Date.

19.    <u>Expenses and Indemnification</u>.

(a)    The Debtors are hereby authorized to pay, in accordance with this Interim DIP Order, (i) the principal, interest, fees, payments, expenses, and other amounts described in the DIP Loan Documents as such amounts become due and without need to obtain further Court approval, including closing, arrangement or commitment payments (including all payments and other amounts owed to the DIP Lenders), administrative agent's fees and collateral agent's fees (including all fees and other amounts owed to the DIP Agent), and (ii) the reasonable and documented fees and disbursements, including of counsel and other professionals, to the extent set forth in paragraphs 3(d)(3) and 9(d) of this Interim DIP Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Interim DIP Order or the DIP Loan Documents. Notwithstanding the foregoing, the Debtors are authorized to pay on the Closing Date reasonable and documented fees, costs, and expenses, including the fees and expenses of the DIP Lenders, the DIP Agent, the Prepetition First Lien Agent, the Prepetition First Lien Holders, and their respective counsels incurred on or prior to such date without the need for any professional engaged by the DIP Lenders, the DIP Agent, the Prepetition First Lien Agent, or the Prepetition

First Lien Holders to be subject to the procedures set forth in paragraph 18(b).

(b)    The Debtors shall be jointly and severally obligated to pay all fees and expenses described above, which obligations owed to the DIP Secured Parties shall constitute DIP Obligations. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in paragraphs 3(d)(3), 9(c) and 9(d) of this Interim DIP Order (collectively, the "Lender Professionals" and each, a "Lender Professional") no later than ten business days (the "Review Period") after the receipt by counsel for the Debtors, any Committee appointed in these chapter 11 cases, or the U.S. Trustee of each of the invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.

(c)    The Debtors, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, any Committee that may be appointed in these Chapter 11 Cases, or the U.S. Trustee

notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten days' prior written notice to the submitting party of any hearing on such motion or other pleading). Any hearing to consider such an objection to the payment of any fees, costs, or expenses set forth in a professional fee invoice hereunder shall be limited to the reasonableness of the fees, costs and expenses that are the subject of the objection. For the avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(d)     In addition, the Debtors hereby indemnify each of the DIP Lenders, the DIP Agent, the Prepetition First Lien Holders (but solely with respect to a Challenge, subject to entry of the Final DIP Order granting such relief), the Prepetition First Lien Agent (but solely with respect to a Challenge, subject to entry of the Final DIP Order granting such relief), and each of their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each, an "Indemnified Person") and hold them harmless from and against all costs, expenses (including reasonable and documented postpetition legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility as and to the extent provided in the DIP Credit Agreement or the applicable Prepetition First Lien Indenture. No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's gross negligence or willful

misconduct. In no event shall any Indemnified Person or any Debtor be liable on any theory of liability for any special, indirect, consequential, or punitive damages; provided, that this shall not affect the Debtors' indemnification obligations pursuant to the immediately preceding sentence.

20.    No Third-Party Rights. Except as explicitly provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

21.    Section 507(b) Reservation. Subject only to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Secured Parties is insufficient to compensate for any First Lien Diminution in Value of their interests in the Prepetition First Lien Collateral, respectively, during the Chapter 11 Cases or in any Successor Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition First Lien Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition First Lien Secured Parties, respectively, against any First Lien Diminution in Value, as applicable, of their respective interests in the Prepetition First Lien Collateral (including the Cash Collateral).

22.    Insurance. Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition First Lien Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date and shall name the DIP Agent as loss payee or additional insured, as applicable, thereunder.

23.    No Waiver for Failure to Seek Relief. The failure or delay of the DIP Agent or the Required DIP Lenders to exercise rights and remedies under this Interim DIP Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective

rights hereunder, thereunder, or otherwise.

    24.    <u>Perfection of the DIP Liens and First Lien Adequate Protection Liens</u>.

    (a)    Without in any way limiting the automatically effective perfection of the DIP Liens granted pursuant to paragraph 8 hereof and the First Lien Adequate Protection Liens granted pursuant to paragraph 9 hereof, the DIP Agent and the Prepetition First Lien Agent are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted hereunder. Whether the DIP Agent or the Prepetition First Lien Agent shall (at the direction of the applicable required lenders or holders) choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not, subject to the Challenge Period and paragraph 12 hereof, subject to challenge, dispute, or subordination as of the date of entry of this Interim DIP Order. If the DIP Agent or the Prepetition First Lien Agent (at the direction of the applicable required holders) determines to file or execute any financing statements, agreements, notice of liens, or similar instruments (which, in each case, shall be at the sole cost and expense of the Debtors), the Debtors shall cooperate and assist in any such execution and/or filings as reasonably requested by the DIP Agent or Prepetition First Lien Agent (at the direction of the applicable required lenders or holders), and the automatic stay shall be modified solely to allow such filings as provided for in this Interim DIP Order.

    (b)    A certified copy of this Interim DIP Order may, at the direction of the applicable required lenders or holders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar

instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim DIP Order for filing and recording; provided, however, that notwithstanding the date of any such filing, the date of such perfection shall be the date of this Interim DIP Order.

(c)      Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords, lessors, or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other collateral related thereto, shall be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, subject to applicable law, and any such provision shall have no force and effect with respect to the granting of the DIP Liens and the First Lien Adequate Protection Liens on such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor in accordance with the terms of the DIP Credit Agreement or this Interim DIP Order, subject to applicable law; provided, however, that this paragraph 24(c) shall be subject to a Final Order granting such relief, except that this paragraph 24(c) shall apply as of entry of this Interim Order with respect to (x) any DIP Liens or First Lien Adequate Protection Liens against any property or interests that already constitute Prepetition First Lien Collateral, and (y) the liens granted pursuant to this Interim DIP Order that attach solely to Debtors' economic rights, including any and all proceeds of DIP Collateral or Prepetition First Lien Collateral.

25.   Debtors' Release. Each of the Debtors, each on its own behalf and on behalf of each of their successors and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully and forever release, remise, acquit, relinquish, irrevocably waive, and discharge, effective upon entry of the Final DIP Order granting such relief, each of (i) the DIP Secured Parties (solely in their capacities as DIP Secured Parties) and each of their

respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such (collectively, the "Related Parties"), and (ii) subject to the rights and limitations set forth in paragraph 12 of this Interim DIP Order, each of the Prepetition First Lien Secured Parties and each of their respective Related Parties, in each case, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, Causes of Action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof, with respect to or relating to any acts or omissions arising prior to the Petition Date or in connection with the DIP Facility or the commencement of the Chapter 11 Cases; provided that nothing in this paragraph shall in any way limit or release the obligations of any DIP Secured Party under the DIP Loan Documents, this Interim DIP Order, and the Final DIP Order.

26.     Lenders' Release.  Each of the DIP Lenders, the Prepetition First Lien Holders, and each of their Related Parties, each in their capacity as such, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully and forever release, remise, acquit, relinquish, irrevocably waive, and discharge, effective upon entry of the Final DIP Order, each of the Debtors and the Debtors' estates and each of their Related Parties, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, Causes of Action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses,

damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof, whether held directly or derivatively in the name of one or more of the Debtors, with respect to or relating to any acts or omissions arising prior to the Petition Date or in connection with the DIP Facility or the commencement of the Chapter 11 Cases (the "Released Lender Claims"), provided that, for the avoidance of doubt, neither DIP Lenders nor the Prepetition First Lien Holders shall direct the DIP Agent or Prepetition First Lien Agent, as applicable, to assert or otherwise pursue any Released Lender Claims; provided, further that notwithstanding the foregoing, nothing herein shall prevent the DIP Lenders or the Prepetition First Lien Holders from asserting any defenses, arguments, or rights of any kind with respect to the lenders' legal, equitable, or contractual rights under the Prepetition First Lien Notes Documents or DIP Loan Documents to assert and enforce their liens and rights under the Prepetition First Lien Notes Documents or DIP Loan Documents in the event of any challenge or objection to the Debtors' Stipulations or the subject thereof or to the liens or rights of the Prepetition First Lien Holders or DIP Lenders; provided, further, that notwithstanding anything herein to the contrary, nothing herein shall alter or amend the Prepetition First Lien Notes Documents, the DIP Loan Documents, or the Indenture dated as of March 9, 2020 by and between NanoString Technologies, Inc. and U.S. Bank Trust Company, National Association, as successor in interest to U.S. Bank National Association (together with all related documents), or any party's (including DIP Secured Parties' or Prepetition First Lien Secured Parties') rights, loan or note amounts, the provisions of guarantees or grants of security or obligations thereunder, except as expressly set forth in this

Interim DIP Order (other than this paragraph 25).

27.     _Credit Bidding_. The DIP Agent (at the direction of the Required DIP Lenders) and, subject to entry of the Final DIP Order granting such relief, the Prepetition First Lien Agent (at the direction of the applicable required holders and subject to the preservation of rights provided in paragraph 12 shall each have the unqualified right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the underlying lenders' or holders' respective claims, including, for the avoidance of doubt, in the case of the DIP Agent, the Roll-Up Loans, and in the case of the Prepetition First Lien Agent, the First Lien Adequate Protection Claims, if any, in any sale of all or any portion of the Prepetition First Lien Collateral or the DIP Collateral, including sales occurring pursuant to section 363(k) of the Bankruptcy Code (including any sale contemplated under the Final DIP Order or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii).

28.     _Preservation of Rights Granted Under this Interim DIP Order_.

(a)     Unless and until all DIP Obligations are indefeasibly paid in full, in cash, and all New Money Loan Commitments are terminated, the Prepetition First Lien Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition First Lien Indenture or this Interim DIP Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in paragraph 23 herein.

(b)     In the event this Interim DIP Order or any provision hereof is reversed or modified on appeal, any liens or claims granted to the DIP Secured Parties or the Prepetition First

Lien Secured Parties hereunder arising prior to the effective date of any such reversal or modification of this Interim DIP Order shall be governed in all respects by the original provisions of this Interim DIP Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition First Lien Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in section 364(e) of the Bankruptcy Code.

(c)    Unless and until all DIP Obligations, Prepetition First Lien Secured Obligations, and the First Lien Adequate Protection Obligations are indefeasibly paid in full, in cash, and all New Money Loan Commitments are terminated, it shall be an Event of Default if any of the Debtors seek or consent to, directly or indirectly (i) except as permitted under the DIP Loan Documents or, if not provided for therein, with the prior written consent of the DIP Agent (as directed by the Required DIP Lenders), the Required DIP Lenders, and the Prepetition First Lien Agent (acting at the direction of the applicable required holders), (x) any modification, stay, vacatur, or amendment of this Interim DIP Order, (y) a priority claim for any administrative expense or unsecured claim against any of the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 507(a), or 507(b) of the Bankruptcy Code) in any of the Chapter 11 Cases, *pari passu* with or senior to the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection Superpriority Claims or the Prepetition First Lien Secured Obligations, or (z) any other order allowing use of the DIP Collateral, or the Prepetition First Lien Collateral; (ii) any lien on any of the DIP Collateral or Prepetition First Lien Collateral with priority equal or superior to the DIP Liens, the First Lien Adequate Protection Liens or the Prepetition First Priority Liens, as applicable; (iii) the use of Cash Collateral for any purpose other than as permitted in the DIP Loan Documents and this Interim DIP Order; (iv) the return of goods pursuant to section 546(h) of the

Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; (v) an order converting or dismissing any of the Chapter 11 Cases; (vi) an order appointing a chapter 11 trustee in any of the Chapter 11 Cases; or (vii) an order appointing an examiner with enlarged powers in any of the Chapter 11 Cases.

(d)    Notwithstanding any order dismissing any of the Chapter 11 Cases or converting any of the Chapter 11 Cases to a case under chapter 7 entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Claims, and the other administrative claims granted pursuant to this Interim DIP Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim DIP Order until all DIP Obligations are indefeasibly paid in full in cash (or otherwise satisfied in a manner agreed to by the Required DIP Lenders and the DIP Agent) and all First Lien Adequate Protection Payments are indefeasibly paid in full in cash (and such DIP Liens, DIP Superpriority Claims, First Lien Adequate Protection Liens, First Lien Adequate Protection Claims, and the other administrative claims granted pursuant to this Interim DIP Order, shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(e)    Except as expressly provided in this Interim DIP Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties granted by the provisions of this Interim DIP Order and the DIP Loan Documents shall survive, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a

case under chapter 7, dismissing any of the Chapter 11 Cases or any Successor Cases terminating

the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of

an order approving the sale of any Prepetition First Lien Collateral or DIP Collateral pursuant to

section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a chapter 11 plan

in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, any

remaining DIP Obligations or First Lien Adequate Protection Obligations. The terms and

provisions of this Interim DIP Order and the DIP Loan Documents shall continue and be binding

in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly

administered, or in any superseding chapter 7 cases under the Bankruptcy Code. The DIP Liens,

the DIP Superpriority Claims, the First Lien Adequate Protection Liens, the First Lien Adequate

Protection Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition

First Lien Secured Parties granted by the provisions of this Interim DIP Order shall continue in

full force and effect until the DIP Obligations and the First Lien Adequate Protection Payments

are indefeasibly paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in

a manner agreed to by the Required DIP Lenders and the DIP Agent).

(f)        Other than as set forth in this Interim DIP Order, subject and subordinate to

the Carve Out, none of the DIP Liens or First Lien Adequate Protection Liens shall be made subject

to or *pari passu* with any lien or security interest granted in any of the Chapter 11 Cases or arising

after the Petition Date, and none of the DIP Liens or the Adequate Protection Liens shall be subject

or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors'

estates under Bankruptcy Code section 551.

29.       <u>Limitation on Use of DIP Facility Proceeds, DIP Collateral, and Cash Collateral</u>.

Notwithstanding anything to the contrary set forth in this Interim DIP Order, none of the DIP

Facility, the DIP Collateral, the Prepetition First Lien Collateral (including Cash Collateral), or the Carve Out or proceeds thereof may be used: (a) to investigate (including by way of examinations or discovery proceedings), analyze, initiate, assert, prosecute, join, commence, threaten, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition First Lien Secured Parties (each in their capacities as such), and each of their Related Parties, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including any so-called "lender liability" claims and Causes of Action, or seeking relief that would impair the rights and remedies of the DIP Secured Parties or the Prepetition First Lien Secured Parties (each in their capacities as such) under the DIP Loan Documents, the Prepetition First Lien Indenture, or this Interim DIP Order, including for the payment of any services rendered by the professionals retained by the Debtors or any Committee appointed in these Chapter 11 Cases in connection with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties to recover on the DIP Collateral, the Prepetition First Lien Collateral, or seeking affirmative relief against any of the DIP Secured Parties or the Prepetition First Lien Secured Parties related to the DIP Obligations or the Prepetition First Lien Secured Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition First Lien Secured Obligations, or the DIP Agent's, the DIP Lenders', or the Prepetition First Lien

Secured Parties' liens or security interests in the DIP Collateral, or Prepetition First Lien Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against the DIP Secured Parties or the Prepetition First Lien Secured Parties, or the DIP Agent's, the DIP Lenders', or the Prepetition First Lien Secured Parties' respective liens on or security interests in the DIP Collateral, or the Prepetition First Lien Collateral that would impair the ability of any of the DIP Secured Parties or the Prepetition First Lien Secured Parties, as applicable, to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition First Lien Secured Obligations, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition First Priority Liens) held by or on behalf of each of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Secured Obligations, respectively, or by or on behalf of the DIP Agent and the DIP Lenders related to the DIP Obligations; (c) for asserting, commencing, or prosecuting any claims or Causes of Action whatsoever, including any Avoidance Actions related to the DIP Obligations, the DIP Liens, the Prepetition First Lien Secured Obligations, the Prepetition First Priority Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of: (x) any of the DIP Liens or any other rights or interests of the DIP Agent or the DIP Lenders related to the DIP Obligations or the DIP Liens or (y) any of the Prepetition First Priority Liens or any other rights or interests of any of the Prepetition First Lien Secured Parties related to the Prepetition First Lien Secured Obligations or the Prepetition First Priority Liens; provided that no more than $50,000 of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition First Lien Collateral, including the Cash Collateral, may be used by any Committee appointed in these Chapter 11 Cases, if any, during the Challenge

Period solely to investigate, but not object to, challenge, prosecute, or litigate (including by way of formal discovery) the validity, enforceability, perfection, priority, or extent of the Prepetition First Priority Liens or any potential Challenge against the Prepetition First Lien Secured Parties. For the avoidance of doubt, nothing in this paragraph 28 shall prohibit the Debtors from responding to, objecting to, or complying with discovery requests by any Committee (if any) appointed in the Chapter 11 Cases, in whatever form, made in connection with any such investigation, the payment of any professional fees related thereto, or from contesting or challenging whether an Event of Default or Termination Date, as applicable, has in fact occurred, from the proceeds of the DIP Loans.

30.     <u>Retention of Certain Sale Proceeds</u>.  As set forth in the DIP Credit Agreement, in the event the Debtors consummate an Approved Sale that does not constitute a sale of all equity interests in the Debtors or all or substantially all of the Debtors' assets, the following proceeds of such sale shall be retained by the Debtors: (i) the first $40 million in aggregate proceeds from any such sale, (ii) none of the net proceeds between $40,000,000 and $150,000,000, and (iii) 20% of the net proceeds in excess of $150,000,000 until the aggregate amount of the DIP Obligations and Prepetition First Lien Obligations plus all accrued interest, fees, expenses and any other required payments to the DIP Secured Parties pursuant to the DIP Credit Agreement are fully paid.  In the event of a sale of all equity interests in the Debtors or all or substantially all of the Debtors' assets, the Debtors shall retain proceeds of such sale in an amount equal to a wind-down budget to be agreed upon in good faith by the Debtors and the DIP Secured Parties within five (5) business days after the entry of this Interim DIP Order.

31.     <u>Application of Sale Proceeds</u>.  Subject to entry of the Final DIP Order granting such relief, as set forth in the DIP Credit Agreement, in the event the Debtors consummate (i) a sale of

all equity interests in the Debtors, (ii) a sale of all or substantially all of the Debtors' assets, and/or (iii) a sale that does not constitute a sale of all equity interests in the Debtors or all or substantially all of the Debtors' assets (each, an "Approved Sale"), the proceeds of such Approved Sales, applied following the closing of all such Approved Sales in the aggregate, shall be applied in the following order: *first*, to pay off the Prepetition First Lien Obligations; *second*, to pay the Roll-up Loans; and *third*, to pay off the New Money Loans, in each case, including any associated fees and interest; provided, that if the proceeds of all Approved Sales in the aggregate are not ultimately sufficient to pay the New Money Loans, Roll-up Loans, and all administrative expense claims against the Borrower, in each case, in full and in cash, then Borrower shall not have been deemed to have made any payments with respect to the Prepetition First Lien Obligations until the New Money Loans, Roll-up Loans and all administrative expense claims are satisfied.  For the avoidance of doubt, if the proceeds of all Approved Sales in the aggregate are not sufficient to satisfy unpaid budgeted administrative expense claims and the Carve Out in full through confirmation of a chapter 11 plan or otherwise (the deficiency for such amounts, an "Administrative Shortfall"), the DIP Secured Parties will waive administrative expense priority in an amount equal to the Roll-Up Loans up to the amount of such Administrative Shortfall.  Notwithstanding anything to the contrary set forth herein, the application of proceeds of an Approved Sale shall not alter or amend the payment priority in the DIP Loan Documents of the fees, costs or expenses incurred by the DIP Agent and the DIP Lenders.

32.    Conditions Precedent. No DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Loan Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

33.     <u>Use of DIP Facility Proceeds</u>. From and after the Petition Date, the Debtors shall be permitted to use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim DIP Order and the DIP Loan Documents, and only in compliance with the Approved Budget (subject to the Permitted Variances) and the terms and conditions in this Interim DIP Order and the DIP Loan Documents.  Notwithstanding anything to the contrary in the foregoing, the Debtors' obligations to pay fees, expenses and disbursements of professionals to the extent provided for in paragraphs 3(d)(3) and 9(d) shall not be subject to the Approved Budget.

34.     <u>No Monitoring Obligation</u>. Neither the DIP Agent nor DIP Lenders shall have any obligation or responsibility to monitor any Debtor's use of the DIP Facility, and the DIP Agent and DIP Lenders may rely upon each Debtor's representations that the use of the DIP Facility at any time is in accordance with the requirements of the DIP Orders and the DIP Loan Documents, including but not limited to the Approved Budget.

35.     <u>Repayment of DIP Superpriority Claims</u>. Notwithstanding anything to the contrary herein or in the other DIP Loan Documents, the Debtors shall indefeasibly pay to each holder of a DIP Superpriority Claim cash equal to the full amount of such DIP Superpriority Claim on the effective date of a chapter 11 plan, unless such holder of a DIP Superpriority Claim consents to a different treatment with respect to such DIP Superpriority Claim. The requirements set forth in this paragraph 34 may not be amended without the prior written consent of each holder of a DIP Superpriority Claim adversely affected thereby.

36.     <u>Intercreditor Provisions</u>. Pursuant to section 510 of the Bankruptcy Code, any applicable intercreditor or subordination provisions contained in any of, or entered into as permitted by and in accordance with, any intercompany subordination agreement and the Prepetition First Lien Indenture shall (i) remain in full force and effect, and (ii) not be deemed to

be amended, altered or modified by the terms of this Interim DIP Order or the DIP Loan Documents, in each case, unless expressly set forth herein or therein; provided that nothing in this Interim DIP Order shall be deemed to provide liens to any Prepetition First Lien Secured Party on any assets of the Debtors except as set forth herein.

37.    Proceeds of Subsequent Financing. If the Debtor, any trustee, any examiner, or any responsible officer subsequently appointed in these Chapter 11 Cases or any Successor Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations (other than unasserted contingent obligations that expressly survive termination of the DIP Loan Documents) and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, then, after satisfaction of the Carve Out, and unless otherwise agreed by the DIP Secured Parties, all cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Secured Parties to be distributed in accordance with this Interim DIP Order and the DIP Loan Documents.

38.    Payments Held in Trust. Except as expressly permitted in this Interim DIP Order or the DIP Loan Documents, including in respect of the Carve Out, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral or receives any DIP Collateral or any proceeds of DIP Collateral prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Loan Documents, and termination of the DIP Facility in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral and shall immediately turn over such proceeds to the DIP Secured Parties, for application in accordance with the DIP Credit Agreement and this Interim DIP Order.

39.    <u>Binding Effect; Successors and Assigns</u>. The DIP Loan Documents and the provisions of this Interim DIP Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including the DIP Secured Parties, the Prepetition First Lien Secured Parties, any Committee appointed in these Chapter 11 Cases, and the Debtors and their respective successors and permitted assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors in the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case) to the extent permitted by applicable law and shall inure to the benefit of the DIP Secured Parties and the applicable Prepetition First Lien Secured Parties; <u>provided</u> that, except to the extent expressly set forth in this Interim DIP Order, the Prepetition First Lien Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

40.    <u>Limitation of Liability</u>. In determining to make any DIP Loan or permitting the use of Cash Collateral, the DIP Secured Parties and the Prepetition First Lien Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Interim DIP Order or in the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition First Lien Secured Parties of

any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

41.     <u>No Requirement to File Claim for DIP Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, neither the DIP Agent nor any DIP Lender shall be required to file any proof of claim or request for payment of administrative expenses in the Chapter 11 Case or any Successor Cases with respect to any of the DIP Obligations, all of which shall be due and payable in accordance with the DIP Loan Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's or any DIP Lender's rights, remedies, powers, or privileges under any of the DIP Loan Documents, this Interim DIP Order, or applicable law. Notwithstanding the foregoing, each of the DIP Agent or the DIP Lenders may, in its sole discretion, but is not required to, file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Case for any claim allowed herein. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest.

42.     <u>No Requirement to File Claim for Prepetition First Lien Secured Obligations</u>. Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including any order establishing a deadline for the filing of proofs of claim or requests for payment

of administrative expenses in the Chapter 11 Cases or any Successor Cases under section 503(b) of the Bankruptcy Code, neither the Prepetition First Lien Agent nor any other Prepetition First Lien Secured Party shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition First Lien Secured Obligations; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of the Prepetition First Lien Indenture or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the Prepetition First Lien Agent's or any other Prepetition First Lien Secured Party's rights, remedies, powers, or privileges under the Prepetition First Lien Indenture, this Interim DIP Order, or applicable law. Notwithstanding the foregoing, each of the Prepetition First Lien Secured Parties may, in its sole discretion, but is not required to, file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Chapter 11 Case for any claim allowed herein. The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest.

43.    <u>No Marshaling</u>. The DIP Agent and the DIP Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and proceeds of the DIP Collateral shall be received and applied pursuant to the Final DIP Order, the DIP Loan Documents, and the Prepetition First Lien Indenture, notwithstanding any other agreement or provision to the contrary, and subject to entry of the Final DIP Order granting such relief, the Prepetition First Lien Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition First Lien Collateral and proceeds of the Prepetition First Lien Collateral shall be received and applied

pursuant to this Interim DIP Order, the DIP Loan Documents and, the Prepetition First Lien Indenture, notwithstanding any other agreement or provision to the contrary.

44.    <u>Application of Proceeds of DIP Collateral</u>. The DIP Obligations, at the option of the Required DIP Lenders, to be exercised in their sole and absolute discretion subject to the terms of the DIP Credit Agreement, shall be repaid (a) first, from the DIP Collateral comprising Previously Unencumbered Property and (b) second, from all other DIP Collateral.

45.    <u>Equities of the Case</u>. Subject to entry of the Final DIP Order granting such relief, the Prepetition First Lien Secured Parties shall be entitled to all the rights and benefits of section 552(b) of the Bankruptcy Code and the Prepetition First Lien Secured Parties have negotiated for, and the Debtors believe the Prepetition First Lien Secured Parties are entitled to, subject to the Final DIP Order, a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code, which shall not apply to the Prepetition First Lien Secured Parties with respect to proceeds, product, offspring, or profits of any of the DIP Collateral (including the Prepetition First Lien Collateral).

46.    <u>Necessary Actions</u>. The Debtors are authorized and directed, on a final basis, to take any and all such necessary actions as are reasonable and appropriate to implement the terms of this Interim DIP Order.

47.    <u>Final Hearing</u>. The Final Hearing on the Motion shall be held on **February 28, 2024**, **at 2:30 p.m.**, prevailing Eastern Time. Any objections or responses to entry of the Final DIP Order shall be filed on or before 4:00 p.m. **prevailing Eastern Time, on February 21, 2024**, and shall be served on: (a) proposed counsel to the Debtors (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attn: Rachel C. Strickland (rstrickland@willkie.com) and Debra M. Sinclair (dsinclair@willkie.com) and (ii) Young

Conaway Stargatt & Taylor, LLP, Attn: Edmon L. Morton (emorton@ycst.com) and Matthew

B. Lunn (mlunn@ycst.com); (b) Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York,

NY 10166 (Attn: David M. Feldman (dfeldman@gibsondunn.com), Michael S. Neumeister

(mneumeister@gibsondunn.com), and Jonathan M. Dunworth (JDunworth@gibsondunn.com)),

as counsel to certain DIP Lenders; (c) Sullivan & Cromwell LLP, 125 Broad Street, New York,

New York 10004 (Attn: Ari Blaut (blauta@sullcrom.com) and Benjamin Beller

(bellerb@sullcrom.com)), as counsel to certain DIP Lenders; (d) Gibson Dunn & Crutcher LLP,

200 Park Avenue, New York, NY 10166 (Attn: David M. Feldman (dfeldman@gibsondunn.com),

Michael S. Neumeister (mneumeister@gibsondunn.com), and Jonathan M. Dunworth

(JDunworth@gibsondunn.com)), as counsel to certain Prepetition First Lien Holders; (e) Sullivan

& Cromwell LLP, 125 Broad Street, New York, New York 10004 (Attn: Ari Blaut

(blauta@sullcrom.com) and Benjamin Beller (bellerb@sullcrom.com)), as counsel to certain

Prepetition First Lien Holders; (f) Richards, Layton & Finger, P.A., One Rodney Square, 920

North King Street, Wilmington, DE 19801, (Attn: John H. Knight (knight@rlf.com) and Paul N.

Heath (heath@rlf.com)), as Delaware bankruptcy counsel to the DIP Lenders; (g) Alston & Bird,

90 Park Avenue, New York, New York 10016 (Attn: Matthew Kelsey

(matthew.kelsey@alston.com and Antone Little (antone.little@alston.com)) and Potter Anderson,

Hercules Plaza, 1313 North Market Street, Wilmington, DE 19801 (Attn: M. Blake Cleary

(bcleary@potteranderson.com)), as counsel and Delaware counsel to the DIP Agent; (h) Shipman

& Goodwin LLP, One Constitution Plaza, Hartford CT 06103 (Attn: Kimberly S. Cohen

(KCohen@goodwin.com), as counsel to the Prepetition First Lien Agent; and (i) counsel to any

Committee appointed in these Chapter 11 Cases. In the event no objections to entry of the Final

DIP Order on the Motion are timely received, this Court may enter such Final DIP Order without

need for the Final Hearing.

48.     Effect of this Interim DIP Order. This Interim DIP Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.

49.     Bankruptcy Rule 6003(b) has been satisfied.

50.     The requirements of Bankruptcy Rule 6004(a) are waived, or are inapplicable due to Bankruptcy Rules 4001(b)(2) and (c)(2).

51.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim DIP Order shall be immediately effective and enforceable upon entry of this Interim DIP Order.

52.     Headings. All paragraph headings used in this Interim DIP Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

53.     Retention of Jurisdiction. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Interim DIP Order.


**Dated: February 6th, 2024**          **CRAIG T. GOLDBLATT**
**Wilmington, Delaware**               **UNITED STATES BANKRUPTCY JUDGE**