Troutman Pepper Hamilton Sanders LLP
Hercules Plaza, 1313 Market Street, Suite 5100
Wilmington, DE 19801

troutman.com

**David M. Fournier**
D 302.777.6565
david.fournier@troutman.com

March 1, 2024

VIA EMAIL (nickita_barksdale@deb.uscourts.gov)
VIA ELECTRONIC COURT FILING

The Honorable Craig T. Goldblatt
U. S. Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

**Re: *In re NanoString Technologies, Inc., et al.*[1], No. 1:24-BK-10160**

Dear Judge Goldblatt:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors"), by and through its proposed undersigned counsel, submits this letter in response to the letter of February 28, 2024 submitted to this Court by Braidwell Partners Transaction Master Fund LP ("Braidwell") and Deerfield Partners, L.P. ("Deerfield," and together with Braidwell, the "DIP Lenders," and the letter submitted by the DIP Lenders, the "DIP Lenders' February 28 Letter") regarding the Committee's discovery requests ("Requests") and deposition notices ("Deposition Notices") [Dkt. No. 190] served in connection with the March 7, 2024 hearing on final approval of the Debtors' proposed debtor-in-possession financing (the "DIP Motion").

The Committee was disappointed with the DIP Lenders' February 28 Letter—which was submitted with just minutes of notice to the Committee and *after* the Committee indicated it needed time to review the DIP Lenders' discovery responses that had only just been served. Before the DIP Lenders filed their letter, the parties had conducted a single meet and confer. The meet and confer was before any discovery responses were served, and it ended with an understanding that there was more to discuss.

[1] The Debtors in these chapter 11 cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Technologies Netherlands B.V., and NanoString Technologies Germany GmbH. The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

The Committee confirms that there is no need for Court intervention on any discovery issues at this time. After the Committee's review of the various discovery responses, its continued consideration of the issues that arise in connection with the DIP Motion, and continued conversations with the DIP Lenders, including the representations from the DIP Lenders regarding the upcoming hearing on the DIP Motion, the parties were able to reach an agreement regarding the scope of discovery in connection with the DIP Motion as follows:

- Braidwell and Deerfield will agree not to 1) put on any witnesses or other testimony, or 2) seek to admit any documentary evidence, but reserve all rights to examine witnesses called by the Debtors and the Committee;

- The Committee will withdraw its Deposition Notices as to the DIP Lenders and agree to limit the scope of documents that the DIP Lenders have to produce in connection with the DIP Motion to those identified in the DIP Lenders' February 28 Letter; and

- The Committee reserves the right to seek the discovery it initially sought at a later time if it deems it necessary to do so.

To be clear, the Committee had every right to seek the discovery it did from the DIP Lenders, including their depositions. None of the cases that the DIP Lenders cite in their letter say otherwise. In fact, none even involved discovery related to a proposed DIP financing. The only decision the Committee located that squarely addresses the propriety of discovery served on proposed DIP lenders actually *confirms* the relevance of such discovery in a case like this, where the Committee is investigating the purported liens and secured nature of the very debt the DIP Lenders hope to insulate from challenge through the final DIP order. *See* Hr'g Tr. 64:14-65:2, *In re Rite Aid Corp.*, 23-18993-MBK, ECF No. 882 (Bankr. D. N.J. Nov. 29, 2023) (authorizing discovery of the DIP agent's internal communications and communications with the DIP lenders surrounding deliberations and valuations related to a DIP motion).

Having resolved the disputed issues for the time being, the Committee submits this response so that the record is clear about the issues presented in the DIP Lenders' February 28 Letter.

Respectfully,

*/s/ David M. Fournier*

David M. Fournier

# Exhibit A

## DIP Lenders' Letter re Discovery Requests

# LANDIS RATH & COBB LLP

A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW

919 MARKET STREET, SUITE 1800
P.O. BOX 2087
WILMINGTON, DELAWARE 19899
www.lrclaw.com

Adam G. Landis
Direct Dial: (302) 467-4410
Email: landis@lrclaw.com

Telephone: (302) 467-4400
Facsimile: (302) 467-4450

February 28, 2024

The Honorable Craig T. Goldblatt
United States Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

Re: *In re NanoString Technologies, Inc., et al.*, No. 1:24-BK-10160

Dear Judge Goldblatt:

Pursuant to Rule 26(c) and 30 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable by Rules 7026, 7030, and 9014 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), Braidwell Partners Transaction Master Fund LP ("Braidwell") and Deerfield Partners, L.P. ("Deerfield," and together with Braidwell, the "Prepetition/DIP Lenders"), by and through their respective counsel,[1] respectfully request, for the reasons set forth below, that this Court enter a protective order (a) quashing the deposition notices served on both Braidwell and Deerfield pursuant to Fed R. Civ. P. 30(b)(6) and Fed R. Bankr. P. 30 (collectively, the "Deposition Notices"),[2] and (b) limiting the scope of documents the Prepetition/DIP Lenders must produce in response to requests for production of documents served on both Braidwell and Deerfield (collectively, the "Document Requests"),[3] in each case served by the Official Committee of Unsecured Creditors (the "Committee") in connection with the March 7, 2024 hearing on final approval of the Debtors' debtor-in-possession financing (the "DIP Facility") provided by the

---

[1] Landis Rath & Cobb LLP is Delaware counsel to both Braidwell (also represented by Gibson, Dunn & Crutcher LLP) and Deerfield (also represented by Sullivan & Cromwell LLP).

[2] The Deposition Notices are attached hereto as Exhibits A and B respectively. The Deposition Notices served on Braidwell and Deerfield are substantively identical.

[3] The Document Requests are attached hereto as Exhibits C and D respectively. The Document Requests served on Braidwell and Deerfield are substantially identical.

Prepetition/DIP Lenders.[4] As explained below, the discovery requested by the Committee is substantially duplicative of the requests served on the Debtors, constitutes an impermissible fishing expedition into the Prepetition/DIP Lenders' internal deliberations, valuations, and analyses, seeks discovery not relevant to the proceedings with respect to the DIP Facility, and is otherwise unduly burdensome, because the cost of complying with such requests substantially outweighs the potential probative value of the discovery requested by the Committee.

## I. Background

The Prepetition/DIP Lenders are holders of 100% of the Prepetition 2026 Secured Notes (as defined in the Document Requests), and are the lenders under the DIP Facility approved by the Bankruptcy Court pursuant to that interim order entered February 6, 2024 [D.I. 75] (the "Interim DIP Order"). Pursuant to and in reliance on the Interim DIP Order, the Prepetition/DIP Lenders have funded $12.5 million in New Money Loans (as defined in the Interim DIP Order) to fund the Debtors' operations and the administrative expense of these cases. Pursuant to the Interim DIP Order, the court originally set a hearing date on February 28, 2024, for final approval of the DIP Facility.

On Thursday, February 15, 2024, the United States Trustee formed the Committee [D.I. 104]. Rather than retain counsel ahead of the holiday weekend, the Committee did not select counsel until February 20. In an effort to engage constructively with the Committee, the Debtors and the Prepetition/DIP Lenders consensually agreed to continue the hearing for final approval of the DIP Facility to March 7, 2024, and extended the Committee's objection deadline to February 29.

On the evening of Saturday, February 24, 2024, the Committee served the Deposition Notices and Document Requests on the Prepetition/DIP Lenders. On the same date, the Committee served deposition notices and document requests on the Debtors. Notably, *every* category covered by the Deposition Notices and Document Requests is covered in the requests served on the Debtors.

On Monday, February 26, 2024, in light of the substantial overlap under the Committee's discovery requests, the Debtors, the Prepetition/DIP Lenders, and the Committee engaged in a joint meet and confer. During that meet and confer, counsel for the Debtors identified two potential Rule 30(b)(6) witnesses, and agreed to produce non-privileged documents and communications related to the DIP Facility, as well as documents and communications related to the Exchange Agreement (as defined in the Document Requests). The Debtors assured the Committee that they would be making a robust production this week, including documents and communications concerning the negotiations, indications of interest, bids, board presentations, comparables, and side-by-side comparisons, with respect to their decision to pursue the DIP Facility provided by the Prepetition/DIP Lenders. During this meet and confer, counsel for the Prepetition/DIP Lenders also confirmed that they would search for and produce non-privileged external communications related to the DIP Facility, and would be willing to engage on future productions related to the

[4] Pursuant to L.B.R. 7030-1(c), the proposed depositions are stayed pending the outcome of the instant motion.

Exchange Agreement in connection with any potential challenges asserted by the Committee. However, the Prepetition/DIP Lenders advised the Committee that given the limited time to respond to the Committee's requests, and the limited issues before the Court on March 7, such discovery would have to be sequenced after discovery related to the DIP Facility. In addition, the Prepetition/DIP Lenders advised the Committee that any request for discovery (whether documentary or testimonial) into internal deliberations, valuations, and analyses of the Prepetition/DIP Lenders is not relevant or appropriate, and provided authority (described below) for this position to the Committee.

During the February 26 meet and confer, counsel for the Prepetition/DIP Lenders requested that the Committee withdraw the Deposition Notices given that the requested topics are either entirely duplicative of those that will be covered by the Debtors' depositions, or seek improper discovery as to internal lender communications. The Committee refused to provide any targeted explanation of the information that they think they need from the Prepetition/DIP Lenders for the hearing on March 7, that they will not otherwise receive from the Debtors. The Committee has confirmed that they will not require production by the Prepetition/DIP Lenders of communications with the Debtors, which would be duplicative, but the Committee thus far has not confirmed that they will not require the Prepetition/DIP Lenders to produce internal communications.

In light of the inability to reach a resolution of the issues discussed on the February 26 meet and confer, and the need to keep to the current schedule for final approval of the DIP Facility, the Prepetition/DIP Lenders respectfully request the Court's involvement to limit the Committee's discovery tactics that appear more directed at imposing undue expense on the estate than obtaining information related to legitimate disputes for the hearing on March 7.

## II. It Would Be Duplicative and Unduly Burdensome to Require the Prepetition/DIP Lenders to Provide Documents or Testimony that the Committee Will Obtain from the Debtors.

The Deposition Notices and Document Requests are unduly burdensome and harassing because, among other things, they principally and substantially seek duplicative testimony and/or documents from the Prepetition/DIP Lenders regarding matters within the exclusive province of the Debtors.

Importantly, it is the Debtors who have moved for approval of the DIP Facility, providing the Court with substantial briefing and declaration evidence reflecting the exercise of the Debtors' reasonable business judgment in agreeing to the DIP Facility presently before the Court. Only the testimony of the Debtors and their advisors is probative here. *See*, *e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving post-petition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"). The Debtors have confirmed that they will make two different Rule 30(b)(6) witnesses available for deposition by the Committee, to testify on all of the same topics requested of the Debtors. In fact, many of the deposition topics proposed in the Deposition Notices cover facts that would only be within the knowledge of the Debtors—not the Prepetition/DIP Lenders. *See, e.g.*, Topic No. 20 ("The Debtors' need for

liquidity, including the Debtors' need for debtor-in-possession financing."); Topic No. 7 ("Market comparables considered in respect of the DIP Roll-Up.").

Simply put, the Prepetition/DIP Lenders' recollections and opinions of the negotiations culminating in the DIP Facility are not evidence of the Debtors' exercise of their reasonable business judgment and are not additive to the Court's determination for final approval of the DIP Facility. Accordingly, this Court should grant a protective order under Rule 26(c) precluding the depositions requested of the Prepetition/DIP Lenders. F. R. Civ P. 26(c)(1) (In a discovery matter "[t]he court may, for good cause, issue an order to protect a party or person from…undue burden" or "forbid[] inquiry into certain matters" such as privileged material); *see O'Blenis v. Nat'l Elevator Indus. Pension Plan*, 2015 WL 3866229 (D. N.J. 2015) (granting a protective order under Rule 26(c) forbidding the disclosure or discovery of privileged communications).

The scope of discovery under Fed. R. Civ. P. 26 "is not unlimited and can be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). The scope of discovery does not extend to information that is "unreasonably cumulative or duplicative," or information that "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" *In re Centrix Fin., LLC*, 2012 WL 6625920, at *5 (citing Fed. R. Civ. P. 26(2)(C)(i) & (ii) in precluding 30(b)(6) testimony pointing to sources of already available discoverable information, the production of which could be obtained from the debtor). Here, to require the Prepetition/DIP Lenders to prepare for and sit for a Rule 30(b)(6) deposition on topics that either could be answered in greater detail by the Debtors or as to which the Prepetition/DIP Lenders have no relevant information would be "cumulative or duplicative" and unduly burdensome on the Prepetition/DIP Lenders. *Id.*

## III. Documents or Testimony With Respect to Internal Deliberations, Valuations, and Analyses of the Prepetition/DIP Lenders Are Not Relevant to the Proceedings on the DIP Facility and Are Otherwise Improper Objects of Discovery.

As explained above, the Prepetition/DIP Lenders have agreed, in responses to the Document Requests, to produce non-privileged, external communications relating to the DIP Facility. However, discovery with respect to the Prepetition/DIP Lenders' internal deliberations, valuations, and analyses requested by the Committee is not relevant to the proceedings before the Court on March 7 and therefore the depositions requested by the Committee and document requests for such materials are not justified here.

*First*, it is well settled in this Circuit and elsewhere that, where a pending action places the Debtors' business at issue, the judgment and motivations of creditors are not relevant and are not be subject to discovery. Hr'g Tr. 17:2–11, 49:8-19, *In re Ruby Pipeline, L.L.C.*, No. 22-10278(CTG) ECF No. 274 (Bankr. D. Del. June 10, 2022) ("Exhibit E") (lenders' internal communications regarding a debtor do not need to be produced in discovery); Hr'g Tr. 18:13-19:6, *In re Quorum Health Corp.*, No. 20-10766 (KBO) ECF No. 892 (Bankr. D. Del. May 11, 2020) ("Exhibit F") (discovery into creditors' opinion of Debtor's value irrelevant); *In re Energy Future Holdings Corp.*, 513 B.R. 651, 662 (Bankr. D. Del. 2014) (discovery into creditor's internal valuation uncommon outside avoidable preference actions); Hr'g Tr. 44:22-47:25, *In re Hercules Offshore, Inc.*, No. 16-11385 (KJC) ECF No. 233 (Bankr. D. Del. July 18, 2016) ("Exhibit G") (denying request for document production of "internal deliberations" and "internal valuations" of

the Ad Hoc Group); Hr'g Tr. 19:13-21:2, *In re Dolan Co.*, No. 14-10614 (BLS) ECF No. 284 (D. Del. May 2, 2014) ("Exhibit H") (creditors' internal assessments and deliberations "not an appropriate area of inquiry" when debtor motivations are at issue); Hr'g Tr. 60:4-62:19, *In re Genco Shipping & Trading*, No. 14–11108 ECF No.267 (Bankr. S.D.N.Y. June 3, 2014) ("Exhibit I") (denying as irrelevant request for discovery into internal valuations by RSA parties to be used on purely factual, not expert basis); Hr'g Tr. 21:15–25, *In re Washington Prime Grp.*, No. 21-31948 ECF No. 774 (Bankr. S.D. Tex. Aug. 5, 2021) ("Exhibit J") (denying discovery into plan sponsor's internal valuations and other communications); Hr'g Tr. 20:21-21:1, *In re Speedcast Int'l Ltd.*, No. 20-32243-11 ECF No. 1058 (Bankr. S.D.Tex. Dec. 9, 2020) ("Exhibit K") (discovery into plan sponsor's internal communications not relevant when movant would receive external communications on topic and had failed to show "something untoward going on internally"); Hr'g Tr. 8:23-9:3, *In re Legacy Reserves,* Inc., et al., No. 19-33395 ECF No. 596 (Bankr. S.D. Tex. Oct. 8, 2019), ECF No. 596 ("Exhibit L") (granting protective order from discovery into RSA parties' internal analyses as irrelevant).

This Court squarely addressed this issue in *Ruby Pipeline*, and properly rejected a debtor's attempt to obtain discovery of internal lender communications based on the overwhelming case support cited above:

> But if you have an internal communication that's purely about internal strategy, gee, we got a great deal on buying this piece of debt because here's what I think is going to happen, that has nothing to do with anything leaving the four corners of a particular holder.· Because it seems to me your request asks for that too. . . . I just don't understand why you would be entitled to that.
>
> I am not going to order the discovery of internal communications within the bondholder group that don't relate in any way to external communications. To me I think that is for the reasons that many of my colleagues have said in the cases that were cited, that's all just triangulating at something else. What is said within a bondholder about value or legal risk or external market facts, I'm not saying it's irrelevant, but you certainly wouldn't start there to learn things about value or legal risks or external market facts. You build to those directly before you start probing internal communications.

Hr'g Tr. 17:2–11, 49:8-19, *In re Ruby Pipeline, L.L.C.*, No. 22-10278(CTG) (Bankr. D. Del. June 10, 2022) ECF No. 274.

Under these precedents, the Committee is not entitled to documents or testimony reflecting internal lender deliberations or communications, including that called for by Topic 18 which seeks testimony on "any valuation or solvency analysis[,]" and Topic 20, which seeks testimony on "[t]he Debtors' need for liquidity."

*Second*, the Deposition Notices and Document Requests also improperly seek disclosure of information protected by the attorney-client privilege or work-product doctrine. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also Ebert v. C.R. Bard, Inc.*, No. 1:13-MC-277, 2014 WL 1365889, at *3 (M.D. Pa. Apr. 7, 2014) (quashing subpoena where it required disclosure of privileged and confidential information); *In re Centrix Fin., LLC*, 2012 WL 6625920, at *6–7 (quashing

deposition subpoena where non-party established the facts it knew came from, among other things, its attorney-client relationship). For example, Topic 12 calls for testimony on "[t]he effect of the DIP liens and/or DIP Facility on creditor recoveries in the Chapter 11 Cases"—which could only reflect advice from the Prepetition/DIP Lenders' attorneys and advisors. The same is true for Topic 21, which calls for testimony on "[t]he value, potential damages analysis, and/or analysis of the likelihood of success of the GeoMx Litigation, the U.S. CosMx Litigation, and/or the European CosMx Litigation."

As of the date of this letter, the Committee has refused to limit the Deposition Notices. In fact, the Committee has expressly refused to provide an explanation as to why, for purposes of the March 7 hearing, the Committee needs discovery from the Prepetition/DIP Parties at all, other than a generic desire to understand "both sides of the story." Nonetheless, the Prepetition/DIP Lenders have agreed to provide documents as described above in an effort to engage constructively with the Committee. But for the reasons explained above, the Committee's far-reaching fishing expedition into internal deliberations, valuations, or analyses is not proper, and accordingly the Court should quash the Deposition Notice, and restrict the Document Requests to external, non-privileged documents related to the DIP Facility.

## IV. The Committee Requests Discovery Unrelated to the DIP Facility.

Finally, the Committee's Document Requests and Deposition Notices extend well beyond the Debtors' motion for final approval of the DIP Facility on March 7, into an investigation of a potential challenge with respect to prepetition transactions. *See, e.g.*, Document Request Topic 15 (Exchange Agreement), 16 (Prepetition 2025 Notes), 17 (Prepetition 2026 Notes); 18 (valuation analysis or solvency analysis conducted in connection with the 2026 Indenture or transactions in connection with the Exchange Agreement), 19 (the Debtors' timing for filing for bankruptcy), and 21 (the GeoMx and CosMx litigations). The only matter on calendar for March 7 is the Debtors' request for final approval of the DIP Facility. While the Prepetition/DIP Lenders assert that discovery into anything beyond the DIP Facility is not relevant to the hearing on March 7, the Debtors have agreed to produce non-privileged, documents, including communications with the Prepetition/DIP Lenders involving the Exchange Agreement. It would be unduly burdensome and harassing for the Committee to be permitted to conduct discovery from the Prepetition/DIP Lenders on issues that are not squarely before the Court on March 7, and where the Committee is already receiving responsive documents and deposition testimony from the Debtors.

As communicated to counsel for the Committee, the Prepetition/DIP Lenders are willing to engage on future productions related to the Exchange Agreement in connection with any potential challenges asserted by the Committee, but such discovery of duplicative documents or testimony on the Committee's expedited timeline is not warranted or appropriate.

## V. Conclusion

For the reasons stated above, the Prepetition/DIP Lenders respectfully request this Court enter an order (a) granting a protective order (i) precluding any deposition of the Prepetition/DIP Lenders on the Debtors' motion for approval of the DIP Facility, and (ii) limiting the Prepetition/DIP Lenders' obligation to produce documents to non-privileged external

communications related to the DIP Facility, and (b) granting such other and further relief as the Court deems appropriate.

Very truly yours,

*/s/ Adam G. Landis*

Adam G. Landis

CC:
Gibson, Dunn & Crutcher LLP
Sullivan & Cromwell LLP
All Counsel of Record

# Exhibit B

## M. Neumeister 2.26.24 Email

---

**From:** Neumeister, Michael S. <MNeumeister@gibsondunn.com>
**Sent:** Monday, February 26, 2024 9:57 PM
**To:** Brimmage, Marty; Soni, Nik; Dublin, Philip; Lahaie, Meredith; Lawrence, Lacy; Taylor, Benjamin; Tizravesh, Roxanne
**Cc:** Beller, Benjamin S.; Blaut, Ari B.; Feldman, David M.; Dunworth, Jonathan M.; Maloney, Mary Beth; Serio, Robert F.; Aronin, Scott A.; Seelig, Matthew J.; Yu, Meng; Ellis, Samuel B.; Tsang, Joey; Bromley, James L.; DeCamp, Justin J.; Grover, Monica; Sugarman, Alon; Soloperto, Natalie L.
**Subject:** Nanostring - Meet & Confer Follow-Up
**Attachments:** Ruby Pipleine Ad Hoc Letter.pdf; Ruby Pipeline Transcript.pdf

**EXTERNAL Email**

Marty,

This email follows up our meet and confer call earlier today. On that call, you requested support for my statement that the relevant case law establishes that the UCC is not entitled to internal lender deliberations or communications (i.e., communications within Braidwell or within Deerfield, respectively) with respect to the Debtors' motion for approval of its DIP financing. Attached is a recent letter brief identifying legal precedent on this issue in the Ruby Pipeline case, which was in front of Judge Goldblatt. I have also attached the transcript from that proceeding. Attached are a couple relevant quotes from Judge Goldblatt:

1. "But if you have an internal communication that's purely about internal strategy, gee, we got a great deal on buying this piece of debt because here's what I think is going to happen, that has nothing to do with anything leaving the four corners of a particular holder.· Because it seems to me your request asks for that too. . . . I just don't understand why you would be entitled to that." P. 17:2-11.
2. "I am not going to order the discovery of internal communications within the bondholder group that don't relate in any way to external communications. To me I think that is for the reasons that many of my colleagues have said in the cases that were cited, that's all just triangulating at something else. What is said within a bondholder about value or legal risk or external market facts, I'm not saying it's irrelevant, but you certainly wouldn't start there to learn things about value or legal risks or external market facts.· You build to those directly before you start probing internal communications." P. 49:8-19.

The cases in the letter and Judge Goldblatt's ruling make clear that the UCC is not entitled to documents or testimony from Braidwell and Deerfield with respect to Braidwell and Deerfield's respective internal discussions, analysis, and views on the topics on which the Committee has sought documents and deposition testimony. We reiterate our request from our earlier meet and confer that you (i) confirm that the Committee does not seek documents from the DIP Lenders other than non-privileged communications between Braidwell and Deerfield related to the DIP and (ii) withdraw your deposition notices served on the DIP Lenders. Nonetheless, we welcome further discussion to the extent it allows us to avoid having to involve Judge Goldblatt. And to reiterate, we are willing to engage on searching and producing external, non-privileged communications related to the Exchange Agreement at an appropriate time, although that time is not in connection with the hearing on March 7th.

Thank you.

**Michael S. Neumeister**
Partner

T: +1 213.229.7006 | M: +1 858.699.6448
MNeumeister@gibsondunn.com

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

---

# Exhibit C

## M. McGuire 2.27.24 Email

**From:** Mcguire, Matt (External) <mcguire@lrclaw.com>
**Sent:** Tuesday, February 27, 2024 11:32 PM
**To:** Dublin, Philip; Lahaie, Meredith; Brimmage, Marty; Taylor, Benjamin; Lawrence, Lacy; Fournier, David; Meltzer, Evelyn J.; Listwak, Ken A.; Tizravesh, Roxanne; Soni, Nik; Remington, Tori Lynn
**Cc:** Beller, Benjamin S.; Blaut, Ari B.; Bromley, James L.; Feldman, David M.; Neumeister, Michael S.; Sugarman, Alon; Serio, Robert F.; Grover, Monica
**Subject:** NanoString Technologies -- Responses and Objections of Braidwell and Deerfield to Committee RFP's
**Attachments:** image001.jpg; NanoString - Deerfield's Responses and Objections to the Committee's Request for Production of Documents.pdf; image003.png; NanoString - Braidwell's Responses and Objections to the Committee's Request for Production of Documents.pdf

**EXTERNAL Email**

All:

Attached are:

1. Braidwell Partners Transaction Master Fund LP's Responses and Objections to the Official Committee of Unsecured Creditors' First Request for Production of Documents; and
2. Deerfield Partners, L.P.'s Responses and Objections to the Official Committee of Unsecured Creditors' First Request for Production of Documents.

**Matthew B. McGuire, Partner**
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
P.O. Box 2087
Wilmington, DE 19899
P 302.467.4416 C 302.245.0015 F 302.467.4450
mcguire@lrclaw.com | www.lrclaw.com | vCard

This message is intended only for the use of the individual or entity to which it is addressed, and may contain Information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please delete it and notify us immediately.