# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NANOSTRING TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10160 (CTG)<br><br>(Jointly Administered)<br><br>Ref. Docket No. 270 |

**DECLARATION OF CHRISTOPHER O'CONNOR
IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF ORDERS
(I) (A) APPROVING BIDDING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(B) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE
PURCHASE AGREEMENT AND TO PROVIDE THE STALKING HORSE
BID PROTECTIONS THEREUNDER, (C) SCHEDULING AN AUCTION
AND A SALE HEARING AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND (E) GRANTING RELATED RELIEF; AND
(II) (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

I, Christopher O' Connor, declare under penalty of perjury:

1. I am a Partner at Perella Weinberg Partners LP (together with its corporate advisory affiliates, "PWP"), which has its principal office at 767 Fifth Avenue, New York, NY 10153. PWP is part of a global financial services firm that provides corporate advisory and asset management services. I submit this declaration (the "O'Connor Declaration") in support of the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the*

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Netherlands BV, and NanoString Technologies Germany GmbH. The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

*Debtors' Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 270] (the "Motion").[2]

2. I am authorized to submit this declaration (this "Declaration") on behalf of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") in support of the relief requested in the Motion.

3. On February 4, 2024, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, initiating the above-captioned chapter 11 cases (together, the "Chapter 11 Cases").

4. Unless otherwise indicated, all facts set forth in this Declaration are based on (i) my personal knowledge or information that I have received from employees of PWP working directly with me or under my supervision, direction, or control, (ii) information learned from my review of relevant financial and operational data regarding the Debtors, (iii) information received from members of the Debtors' management or other advisors, and (iv) my past experience advising both distressed and non-distressed businesses and companies and their stakeholders. If called upon to testify, I would testify competently to the facts set forth herein.

---

[2] Terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures Order, as applicable

2

**PROFESSIONAL BACKGROUND AND QUALIFICATIONS**

5. PWP is a leading global independent advisory firm that provides strategic and financial advice to clients across a range of the most active industry sectors and international markets, with offices in New York, London, Houston, Calgary, Chicago, Denver, Los Angeles, Munich, Paris, and San Francisco. PWP's corporate advisory practice is focused on providing clients with advice related to mergers and acquisitions and financial restructurings. PWP's mergers and acquisitions practice advises both public and private companies. Its financial restructuring practice works with companies, investors, and other parties in interest in turn-around and distressed situations.

6. PWP and its professionals have extensive experience working with financially troubled companies across a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Major in-court restructurings in which PWP has been involved include: FTX Trading Ltd., Case No. 22-11068 (JTD) (Bankr. D. Del. 2022); Mallinckrodt plc, Case No. 23-11258 (JTD) (Bankr. D. Del. 2023); OSG Group Holdings Inc., Case No. 23-90799 (CML) (Bankr. S.D. Tex. 2023); Quotient Ltd., Case No. 23-90003 (DRJ) (Bankr. S.D. Tex. 2023); Clovis Oncology, Inc., Case No. 22-11292 (JKS) (Bankr. D. Del. 2022); Cineworld Group plc, Case No. 22-90168 (MI) (Bankr. S.D. Tex. 2022); Celsius Network LLC, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. 2022); Talen Energy Supply, LLC, Case No. 22-90054 (MI) (Bankr. S.D. Tex. 2022); TPC Group Inc., Case No. 22-10493 (Bankr. D. Del. 2022); Ion Geophysical Corp., Case No. 22-30987 (MI) (Bankr. S.D. Tex. 2022); Ector County Energy Center LLC, Case No. 22-10320 (JTD) (Bankr. D. Del. 2022); Endo Int'l plc, Case No. 22-22549 (JLG) (Bankr. S.D.N.Y. 2022); Nine Point Energy Holdings, Inc., Case No. 21-10570 (MFW) (Bankr. D. Del. 2021); HighPoint Res. Corp., No. 21-10565 (CSS) (Bankr. D. Del. 2021); Limetree Bay Serv., LLC, Case

No. 21-32351 (DRJ) (Bankr. S.D. Tex. 2021); Garrett Motion Inc., Case No. 20-12212 (MEW) (Bankr. S.D.N.Y. 2020); California Res. Corp., Case No. 20-33568 (DRJ) (Bankr. S.D. Tex. 2020); Gulfport Energy Corp., Case No. 20-35561 (DRJ) (Bankr. S.D. Tex. 2020); Chesapeake Exploration, LLC, Case No. 20-33239 (DRJ) (Bankr. S.D. Tex. 2020); Diamond Offshore Drilling, Inc., Case No. 20- 32321 (DRJ) (Bankr. S.D. Tex. 2020); Valaris plc, Case No. 20-34114 (MI) (Bankr. S.D. Tex. 2020); Global Eagle Entm't Inc., Case No. 20-11835 (JTD) (Bankr. D. Del. 2020); The Hertz Corp., Case No. 20-11218 (MFW) (Bankr. D. Del. 2020); Avianca Holdings S.A., Case No. 20-11133 (MG) (Bankr. S.D.N.Y. 2020); and LATAM Airlines Group S.A., Case No. 20-11254 (Bankr. S.D.N.Y. 2020). PWP's professionals have also provided services in connection with the out-of-court restructurings of numerous companies, including Algeco Group; Blackhawk Mining; Danaos Corporation; International Automotive Components Group; Del Monte; Highland Therapeutics; Jack Cooper; Key Energy Services; Ligado Networks; Medical Depot Holdings; Pernix Therapeutics; Proserv; Salt Creek Midstream; Savers; SM Energy Company; Sprint Industrial Holdings; Titan Energy; Concordia International Corp.; and WeWork Companies.

7.    I received a Bachelor of Arts degree in English and American Literature from Harvard College and a Master's degree in Business Administration from Harvard Business School.

8.    I am currently a Partner and head of the healthcare group at PWP, which I joined in July 2011. I have over 25 years of experience assisting companies on a wide range of strategic matters. I specialize in mergers and acquisitions in the healthcare space, during which I have advised senior management and boards of directors of companies as well as investors and creditors. Some of my most recent deals include, without limitation, Quotient Limited, the merger of Somalogic and Standard Biotools, the sale of c2i genomics to Veracyte, the Repligen acquisition

4

of Metanova , the Bruker acquisition of Phenomex, the sale of Specific Diagnostics to Biomerieux, the Quidel acquisition of Ortho Clinical, the Becton Dickinson spin off of Embecta, the Luminex sale to Diasorin, the Mesa Biotech sale to ThermoFisher, the Inivata sale to NeoGenomics, the Biotheranostics sale to Hologic, the Asurgaen sale to BioTechne, the PerkinElmer Acquisition of Horizon UK, the Oxford Immunotec sale to Perkin Elmer, and the Baxter acquisition of HillRom.

### MARKETING EFFORTS

9. Since PWP's engagement in November 2023, I, along with other members of the PWP team, have worked closely with the Debtors and their other professional advisors (the "Restructuring Advisors") to become knowledgeable about the Debtors' business, finances, operations and systems. In the months prior to the Petition Date, the Debtors faced increasingly tight liquidity, necessitating the commencement of these Chapter 11 Cases and the sale of the Debtors' assets on the timeline contemplated by the Bidding Procedures.

10. In late 2023, PWP began advising the Debtors in connection with various strategic opportunities, considering several potential restructuring alternatives in light of the Debtors' increasingly tight liquidity and the further negative impact of the $31.6 million damages award stemming from the jury verdict in the GeoMx litigation. In November 2023, the Debtors and PWP commenced an initial market outreach with respect to a sale of substantially all of the Debtors' assets (the "Assets").

11. This steps PWP took in this marketing and sale process (the "Sale Process") included (a) identifying the Assets, (b) developing marketing materials describing the Assets, their history, their use, and the opportunities the Assets present, (c) creating a virtual data room containing information about the Assets, (d) identifying and contacting potential strategic and financial buyers for the Assets, (e) facilitating due diligence gathering with potential buyers, and (f) negotiating transaction structures with potential buyers interested in acquiring the Assets.

12. In connection with its marketing efforts, PWP reached out to over 55 potential bidders, of which 28 signed confidentiality agreements and received financial and operational diligence materials through the Debtors' virtual data room. Furthermore, PWP held a total of 21 first round diligence meetings with potential bidders in January 2024 (16 of which were held in person). While the Debtors received significant interest from these parties, the Debtors, in consultation with PWP, determined it was not feasible to transact quickly enough with any of these parties to avoid these Chapter 11 Cases. Following the Petition Date, PWP continued to engage with a range of strategic and financial parties, including the Stalking Horse Bidder (as defined below).

## THE STALKING HORSE BID

13. On February 27, 2024, the Debtors received multiple second round bids for substantially all of their assets, including a bid from the Stalking Horse Bidder that memorialized the preliminary terms under which the Stalking Horse Bidder was willing to pursue a transaction pursuant to section 363 of the Bankruptcy Code. On March 10, 2024, following good faith, arms'-length negotiations, the Debtors and the Stalking Horse Bidder entered into that certain Asset Purchase Agreement, annexed to the Bidding Procedures Order as Exhibit 4 (together with the scheduled and related documents thereto, and as may be amended, supplemented, or otherwise modified from time to time, the "Stalking Horse Purchase Agreement"), under which the Debtors agreed to sell their Assets (as defined in the Stalking Horse Purchase Agreement) to Nucleus Buyer, LLC (the "Stalking Horse Bidder") for a total aggregate cash consideration of $220,000,000 plus the assumption of certain liabilities as set forth in the Stalking Horse Purchase Agreement (the "Stalking Horse Bid").

14. The Debtors intend to continue market testing the Stalking Horse Bid through the postpetition Sale Process and pursuant to the Bidding Procedures to ensure that they maximize the value of the Assets.

### A SOUND BUSINESS PURPOSE EXISTS FOR THE USE OF A STALKING HORSE BIDDER

15. I believe that the terms of the Stalking Horse Bid and Stalking Horse Purchase Agreement are customary, reasonable, and were negotiated in good faith and at arm's-length. Negotiations were hard-fought and ongoing until immediately prior to the parties agreeing to enter into Stalking Horse Purchase Agreement. I also believe that there was no guarantee that the Stalking Horse Bidder would bid the price of the Stalking Horse Bid at an auction for the Assets in the absence of the Stalking Horse Purchase Agreement.

16. Importantly, the Stalking Horse Purchase Agreement provides the Debtors with a committed sale transaction for the Assets that would provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest. It also establishes in clear terms and conditions that will facilitate further bidding and may increase the consideration received in exchange for the Assets. Any offer (or combination of offers) that tops the Stalking Horse Bid will inure to the benefit of the Debtors' stakeholders. The consideration contemplated in Stalking Horse Purchase Agreement provides significant value to the Debtors' estates and will be used to repay obligations of the Debtors.

17. I understand that the Stalking Horse Purchase Agreement was negotiated in good faith and at arms-length. The Stalking Horse Purchase Agreement was executed only after (a) potential alternative bids were evaluated, (b) the marketing process was initiated, and (c) the proposed transaction was presented to the Debtors' board of directors, who, in conjunction with advice from experienced professionals, decided to pursue the sale on the terms of the Stalking

Horse Purchase Agreement, subject to competitive bidding sanctioned by the Court. I am not aware of any fraud, collusion between the parties or any attempt by the Stalking Horse Bidder to take unfair advantage of other bidders participation in the Sale Process.

## **CONCLUSION**

18.     Accordingly, for all the foregoing reasons, I believe that the Bidding Procedures and the timeline set forth therein: (a) will encourage bidding for the Debtors' assets; (b) are generally consistent with other procedures previously approved in chapter 11 cases of similar size and complexity; and (c) are appropriate under the circumstances. Given the details described above and based on my experience as a restructuring professional and involvement in other sales transactions, I believe that the Bidding Procedures are appropriate and should be approved.

[*Remainder of the Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts set forth in the foregoing declaration are true and correct to the best of my knowledge, information, and belief.

Dated: March 10, 2024

*/s/ Christopher O'Connor*
Christopher O'Connor
Partner
Perella Weinberg Partners LP