**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NANOSTRING TECHNOLOGIES, INC., | : | Case No. 24-10160 (CTG) |
| *et al.*,[1] | : | |
| | : | **Obj. Deadline: March 22, 2024 at 4:00 p.m.** |
| | | **Extended by agreement to March 25, 2024 for** |
| | | **U.S. Trustee** |
| Debtors. | : | **Hearing Date: March 28, 2024 at 2:30 p.m.** |

**LIMITED OBJECTION OF THE UNITED STATES TRUSTEE
TO DEBTORS' MOTION FOR ENTRY OF ORDERS
(I) (A) APPROVING BIDDING PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(B) AUTHORIZING THE DEBTORS TO ENTER INTO THE STALKING HORSE
PURCHASE AGREEMENT AND TO PROVIDE THE STALKING HORSE
BID PROTECTIONS THEREUNDER, (C) SCHEDULING AN AUCTION
AND A SALE HEARING AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, AND (E) GRANTING RELATED RELIEF; AND
(II) (A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR
OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through

his undersigned counsel, objects on a limited basis to the *Debtors' Motion For Entry of Orders*

*(I) (A) Approving Bidding Procedures for the Sale of Substantially All Of The Debtors' Assets,*

*(B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement and to*

*Provide the Stalking Horse Bid Protections Thereunder, (C) Scheduling an Auction and a Sale*

*Hearing and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption*

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Netherlands BV, and NanoString Technologies Germany GmbH. The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

*and Assignment Procedures, and (E) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear Of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (D.I. 270) (the "<u>Motion</u>"), and in support of his objection respectfully states as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The Motion should be denied because it would provide for payment of bid protections in certain situations not tied to consummation of a transaction involving a higher and better bid – e.g., case conversion, appointment of a trustee, appointment of an examiner with expanded powers, and/or appointment of a responsible officer – and notwithstanding that the Debtors or a person in control may be positioned to consummate the transaction.  Those terms in favor of the stalking horse give rise to the estates' obligation to pay the bid protections without the estates receiving any corresponding benefit.

2.      Further, as currently proposed, the ability of the buyer to terminate its performance and receive the bid protections under the foregoing situations would improperly give the bid protections superpriority status when there are not proceeds from a superior alternative transaction to provide a source of payment, elevating the buyer's rights above those of other administrative creditors inconsistent with the other provisions of the Bankruptcy Code.

3.      The Court should not grant the relief requested unless the Debtors and Stalking Horse agree to remove the payment of bid protections in certain situations not tied to consummation of a higher and better bid (e.g., case conversion, appointment of a trustee, appointment of an examiner with expanded powers, and/or appointment of a responsible officer), as otherwise the bid protections are purely a liquidated damages provision or

2

termination fee in the buyer's favor, and inconsistent with the requirements of *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).

## JURISDICTION

4.      Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve the Motion and this objection.

5.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      The U.S. Trustee has standing to be heard on the Motion and this objection pursuant to 11 U.S.C. § 307.

## BACKGROUND

7.      On February 4, 2024, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court.

8.      On March 10, 2024, the Debtors filed the Motion.

9.      Also on March 10, 2024, the Debtors entered into the Asset Purchase Agreement, annexed to the Motion, designating Nucleus Buyer, LLC as the purchaser and Stalking Horse (the "Stalking Horse"), with a total aggregate cash consideration of $220,000,000, plus assumption of certain liabilities, subject to further bids as contemplated by the Motion.  Mot. at ¶¶ 10 & 13.

10.    The form of bid procedures order attached to the Motion has the following

provisions:

11. The Bid Protections are approved as follows: a Break-Up Fee in the amount of 3% of the Purchase Price (as defined in the Stalking Horse Purchase Agreement) of the Stalking Horse Bid and Expense Reimbursement not to exceed 1.5% of the Purchase Price; provided that the Bid Protections shall not exceed 4.5% of the Purchase Price. The Bid Protections shall survive any termination of the Stalking Horse Purchase Agreement, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation, and shall be joint and several obligations binding and enforceable against each Debtor and its respective estates, any trustee, examiner or other representative of the Debtors' estates and any successors thereto. The Bid Protections *shall be allowed as superpriority administrative expense claims in the Chapter 11 Cases under sections 364(c)(1), 503(b), 507(a)(2), and 105(a) of the Bankruptcy Code with priority over any and all administrative expenses of any kind, including those specified under sections 503(b) and 507(a)(2) of the Bankruptcy Code.* The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder on account of the Bid Protections solely on the terms set forth in the Stalking Horse Purchase Agreement. The Bid Protections for the Stalking Horse Bidder shall be payable at the time required under the Stalking Horse Purchase Agreement, pursuant to the terms and conditions thereof, free and clear of all liens, claims, encumbrances and other interests, without further order of this Court. Nothing in this Order shall be construed as authorizing and directing the payment of the Bid Protections to the Stalking Horse Bidder in the event that it is the Successful Bidder with respect to the Purchased Assets.

27. For the avoidance of doubt and notwithstanding anything to the contrary herein, *nothing in this Order, the Bidding Procedures, or the Motion shall be construed to in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Stalking Horse Purchase Agreement or the Stalking Horse Bidder's rights thereunder.* The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the sale of the Assets, and related matters, including the right to object to the sale of the Assets or any portion thereof.

Mot. D.I. 270-2 at ¶¶ 11 & 27 (emphasis added).

11.    The Stalking Horse Purchase Agreement, annexed as Exhibit 4 to the

proposed bidding procedures order contains the following terms:

> **8.1 Termination**. This Agreement may, by Notice in writing given prior to the Closing, be terminated: . . .
>
> **8.1.5** by Buyer, if (a) the Bankruptcy Court enters a Final Order (i) dismissing the Chapter 11 Cases or converting the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code, or (ii) appointing a trustee, receiver or other Person responsible for operation or administration of Seller or its business or assets, or a responsible officer for any of Seller, or an examiner with enlarged powers relating to the operation or administration of Seller or its business or assets (each, an "**Appointee**"); *provided* that, the definition of "Appointee" shall not include any chief restructuring officer that may be appointed by the Seller and authorized by the Bankruptcy Court in the Chapter 11 Cases, or (b) if Seller files any stand-alone plan of reorganization or liquidation, in each case, that does not contemplate consummation of the transactions memorialized in this Agreement (or announces support of any such plan filed by any other party);
>
> **8.3.1** In the event that:
>
> (a) this Agreement is terminated by Buyer or Seller, as applicable, in accordance with (i) Section 8.1.3, or (ii) Section 8.1.2 (if terminated by Buyer), or (iii) Section 8.1.5 or (iv) Section 8.1.8(b), then in any of such cases, Seller shall pay Buyer by wire transfer of immediately available funds, to the account specified by Buyer to Seller in writing, the Termination Fee and Expense Reimbursement, and Seller and Buyer agree that neither the Expense Reimbursement nor the Termination Fee is a penalty, but rather is liquidated damages in a reasonable amount that will compensate Buyer for the time and effort associated with initial due diligence and negotiation of this Agreement and the opportunities forgone while negotiating this Agreement and in reliance on this Agreement and on the expectation of the consummation of the transactions contemplated herein; *provided* that, if this Agreement is terminated pursuant to clause (i) above,

the Termination Fee and Expense Reimbursement shall be paid on the earlier of (a) the date the Alternative Transaction is consummated and (b) the termination of the definitive agreement contemplating such Alternative Transaction; *provided, further,* that, if this Agreement is terminated pursuant to clauses (ii), (iii) or (iv) above, the Termination Fee and Expense Reimbursement shall be paid within five (5) Business Days of the date of such termination; . . .

(c) the obligations of Seller to pay the Termination Fee and Expense Reimbursement as provided in this Section 8.3 shall be (i) entitled to superpriority administrative expense status with priority over any and all administrative expenses of the kind specified in Sections 503(b)(1) and 507(a) of the Bankruptcy Code in Seller's Chapter 11 Cases, subject only to the superiority claims set forth in the DIP Financing Order in an amount not to exceed the amount of outstanding DIP Loans (as defined therein), and (ii) if triggered, shall be payable from the proceeds of any Alternative Transaction for the Purchased Assets, at the closing of such Alternative Transaction, free and clear of all liens (including those arising under the DIP Financing Order).

Mot. D.I. 270-2, Ex. 4 at p. 55-59.

## **ARGUMENT**

12.     The Motion should be denied because it would award bid protections in certain circumstances not tied to consummation of a higher and better bid – e.g., case conversion, appointment of a trustee, appointment of an examiner with expanded powers, and/or appointment of a responsible officer – notwithstanding that the Debtors or a person in control may be positioned to consummate the transaction.  Additionally, the Debtors seek to improperly give those protections superpriority status.

13.     Break-up fees must be sought and analyzed under Section 503(b).  *See Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) ("[A] bidder must seek a

break-up fee under 11 U.S.C. § 503(b)[.]") (citing *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999)).

14.    The analysis of break-up fees under Section 503(b) "must be made in reference to general administrative expense jurisprudence.  In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535 (emphasis added).  "[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503[.]"  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 313 (3d Cir. 2018).

15.    No bid protections should be awarded in circumstances that foreclose the Debtors' estates from receiving the benefit of the Stalking Horse Purchase Agreement.  First, providing the Stalking Horse with the ability to voluntarily exit its obligations and receive payment of the Bid Protections in the circumstances identified by the U.S. Trustee acts as a "poison pill" against parties in interest seeking relief which could be in the best interests of the estate (i.e., appointment of a chapter 11 trustee, or seeking conversion to chapter 7).  If any of that relief is supported by the facts and law, then the potential for payment of an approximately $9 million obligation should not be permitted to chill or prevent parties from ensuring the estates' interests are protected.  Second, the Debtors (in a situation where there is an examiner with "expanded powers" appointed) or an estate successor (such as a chapter 7 or chapter 11 trustee) may be able to close the Stalking Horse Purchase transaction and want to proceed with or ratify the deal reached by the Debtors.  Automatically paying bid protections in circumstances where the cases are converted or, alternatively, an "Appointee" (as that term is defined in section 8.1.5 of the Stalking Horse Purchase Agreement) is appointed while

simultaneously giving the Stalking Horse the right to terminate in such circumstances does not represent the "actual, necessary costs and expenses" of "preserv[ing]" the estates.  *See* 11 U.S.C. § 503(b)(1)(A).

16.     In *O'Brien*, the Third Circuit "rejected application of a business judgment rule, under which a requested termination fee would be approved if the debtor had a good faith belief that the fee would benefit the estate."  *In re Energy Future Holdings Corp.*, 904 F.3d at 313.  Even if a break-up fee would benefit the estate, the Court must still determine "whether the proposed fee's potential benefits to the estate outweigh any potential harms, such that the fee is actually necessary to preserve the value of the estate."  *Id.* at 314 (citing *O'Brien*, 181 F.3d at 535) (quotation marks omitted).  The potential harms of the terms of the Stalking Horse Purchase Agreement as currently structured require additional guardrails to ensure that payment of bid protections occurs only in circumstances where the estates receive the benefit of their bargain.

17.     Section 503(b) does not provide for superpriority status.  Superpriority status is provided for only in Sections 364(c)(1) and 507(b).  Those sections are addressed exclusively to (a) parties providing post-petition financing, and (b) secured creditors who have received insufficient "adequate protection" for the post-petition diminution in the value of their collateral.  Neither is at play here.  "[C]ourts do not have the authority to create a right to recover from [a] bankruptcy estate where no such right exists under the Bankruptcy Code."  *See Energy Future Holdings Corp.*, 904 F.3d at 313 (quoting *O'Brien*, 181 F.3d at 532) (quotation marks omitted).  Giving a break-up fee superpriority status has no basis in the Bankruptcy Code and should be denied.

18.     The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required, and to object on such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Motion as currently requested and grant such other relief as the Court deems appropriate and just.

Dated:      March 25, 2024
Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**

By: */s/ Timothy J. Fox*
Timothy J. Fox, Jr. (DE Bar No. 6737)
Trial Attorney
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)
Timothy.Fox@usdoj.gov