**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NANOSTRING TECHNOLOGIES, INC., *et al.*,[1] | Case No. 24-10160 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 270** |

**ORDER (A) APPROVING
BIDDING PROCEDURES FOR THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(B) AUTHORIZING THE DEBTORS TO
ENTER INTO THE STALKING HORSE PURCHASE AGREEMENT
AND TO PROVIDE THE STALKING HORSE BID PROTECTIONS
THEREUNDER, (C) SCHEDULING AN AUCTION AND A SALE
HEARING AND APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
<u>AND (E) GRANTING RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (I) (a) authorizing and approving the bidding procedures attached hereto as <u>Exhibit 1</u> (the "<u>Bidding Procedures</u>") for the sale of substantially all of the Debtors' Assets, (b) authorizing the Debtors to enter into the Stalking Horse Purchase Agreement for the Purchased Assets (as such term is defined in the Stalking Horse Purchase Agreement), attached hereto as <u>Exhibit 4</u>, and to provide the Bid Protections; (c) scheduling an Auction and a Sale Hearing and approving the form and manner of notice of the Auction, the Sale, and the Sale Hearing, (d) establishing procedures for the assumption and

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Technologies Netherlands B.V., and NanoString Technologies Germany GmbH. The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures, as applicable.

assignment of Contracts and approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of (i) the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (ii) certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale, and (e) granting related relief, and (II) (a) approving the sale of the Debtors' assets free and clear of liens, claims, interests, and encumbrances, (b) approving the assumption and assignment of executory contracts and unexpired leases, and (c) granting related relief; and upon the *Declaration of R. Bradley Gray in Support of Debtors' Chapter 11 Petitions and First Day Pleadings*; and upon the *Declaration of Christopher O'Connor* in further support of the Motion; and upon the record of the hearing of the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been adequate and appropriate under the circumstances; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The bases for the relief requested in the Motion are: (i) sections 105, 363, 365, 503, and 507 of the Bankruptcy Code; (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014; and (iii) Local Rule 6004-1.

D.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; (ii) approve the Stalking Horse Purchase Agreement and the Bid Protections; (iii)  schedule the Auction and Sale Hearing (to consider granting the other relief requested in the Motion); (iv) approve the forms and manner of notice of the Auction, Sale, and Sale Hearing; and (v) approve the procedures for the assumption and assignment of the Contracts, including notice of proposed Cure Costs.  The best interests of the Debtors, their estates, creditors, and other parties in interest will be served by such approval and authorization.

E.      The Bidding Procedures, the Stalking Horse Purchase Agreement, and the Bid Protections were negotiated at arm's length and in good faith by the Debtors and the Stalking Horse Bidder.  The Bidding Procedures are fair, appropriate, and reasonably designed to promote active bidding at and participation in the Auction to ensure that the highest or otherwise best value is generated for the Assets.  The Debtors and their advisors engaged in a robust and extensive marketing and sale process prior to the commencement of these Chapter 11 Cases.  The Bidding Procedures are designed to continue that robust and extensive marketing and sale process following entry of this Order in order to solicit the highest or otherwise best value for the Assets.

The Bidding Procedures represent the best method for maximizing the realizable value of the Assets for the benefit of the Debtors' estates.

      F.     The Bid Protections to be paid in accordance with the Stalking Horse Purchase Agreement are: (i) an actual and necessary cost of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) reasonable and appropriate in light of the size and nature of the proposed Sale embodied in the Stalking Horse Purchase Agreement and comparable transactions, the commitments that have been made by the Stalking Horse Bidder for the benefit of the Debtors' estates, the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing the Sale and the commitment of capital in connection therewith, the condition of the Purchased Assets, and the efforts that have been and will be expended by the Stalking Horse Bidder; (iv) reasonably tailored to encourage bidding for the Assets by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets; and (v) a condition to and necessary to induce the Stalking Horse Bidder to continue to pursue the Sale and to continue to be bound by the Stalking Horse Purchase Agreement.

      G.     The Stalking Horse Bid represents the highest and best offer the Debtors have received to date to purchase the Purchased Assets. The Stalking Horse Purchase Agreement provides the Debtors the opportunity to sell the Purchased Assets in a manner designed to preserve and maximize their value and provide a floor for a further marketing and auction process, to the benefit of the Debtors' estates, their creditors, and all other parties in interest. Designation of the Stalking Horse Bidder as a "stalking horse bidder" and the Stalking Horse Purchase Agreement as

a "stalking horse agreement" is in the best interests of the Debtors' estates and their creditors and reflects a sound exercise of their business judgment. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized.

H.      The Bid Protections are an essential inducement and condition of the Stalking Horse Bidder's entry into, and continuing obligations under, the Stalking Horse Purchase Agreement. Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Sale or otherwise be bound under the Stalking Horse Purchase Agreement (including the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers). The Bid Protections induced the Stalking Horse Bidder to submit a bid that will serve as a minimum floor bid for the Purchased Assets on which the Debtors, their creditors and other bidders can rely, and which encourages and facilitates the Auction process. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible purchase price for the Purchased Assets will be realized. Accordingly, the Bid Protections are reasonable and appropriate and represent the best method for maximizing the value of the Purchased Assets.

I.      The Stalking Horse Bidder is a third-party purchaser and is unrelated to any of the Debtors. Neither the Stalking Horse Bidder, nor any of its affiliates, subsidiaries, officers, directors, members, partners, or principals, or any of their respective representatives, successors, or assigns is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

J.      The Sale Notice, substantially in the form attached hereto as Exhibit 2, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale,

including, without limitation: (i) the date, time, and place of the Auction (if one is held); (ii) the Bidding Procedures; (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Assets to be sold; (v) instructions for obtaining copies of the Stalking Horse Purchase Agreement; and (vi) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the Stalking Horse Purchase Agreement or another Successful Bidder's purchase agreement, if any), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds.  No other or further notice of the Sale shall be required.

K.      The Assumption and Assignment Notice, substantially in the form attached hereto as Exhibit 3, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the assumption and assignment of the Assigned Contracts to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder arising from the Auction, if any), including with respect to Cure Costs. No other or further notice of the Assumption and Assignment of the Assigned Contracts shall be required.

L.      The Assumption and Assignment Procedures set forth herein are fair, reasonable, appropriate, and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

M.      The Motion and this Order are reasonable and appropriate, and the Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

N.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED as set forth herein.

2.        All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are hereby overruled.

**I.        Important Dates and Deadlines.**

3.        The Debtors are authorized to proceed with the Sale in accordance with the Bidding Procedures and are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures (subject to the terms thereof) in accordance with the following timeline:

| Deadline | Event |
|---|---|
| **Two (2) Business Days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Hearing Notice and Assumption and Assignment Notice |
| **As soon as practicable after the entry of the Bidding Procedures Order** | Deadline for Debtors to publish Sale Hearing Notice |
| **4:00 p.m. (ET)  on the date that is fourteen (14) days after service of the Sale Notice and Assumption and Assignment Notice** | Sale Objection Deadline (including objections to Assumption and Assignment of Contracts) |
| **April 12, 2024 at 4:00 p.m. (ET)** | Bid Deadline |
| **No later than 24 hours prior to Auction, if applicable** | Deadline to Designate Qualified Bidders |
| **April 16, 2024 at 10:00 a.m. (ET)** | Auction, solely in the event the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid |
| **As soon as practicable after the Auction, if applicable** | Deadline for Debtors to file and serve Notice of Winning Bidder |
| **April 17, 2024 at 12:00 p.m. (ET)** | Deadline to object to (i) conduct at Auction and (ii) adequate assurance of future |

| Deadline | Event |
|---|---|
| | performance under Assigned Contracts if Successful Bidder is not the Stalking Horse Bidder |
| April 18, 2024 at 12:00 p.m. (ET) | Deadline to Reply to Sale Objections |
| April 19, 2024 at 10:00 a.m. (ET) | Sale Hearing |

## II.    Bidding Procedures, Bid Protections, and Related Relief

4.      The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets.  Any party desiring to bid on the Assets (other than the Stalking Horse Bidder, who shall automatically be deemed a Qualified Bidder under the Bidding Procedures) or a portion thereof shall comply with the Bidding Procedures and this Order in all respects.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures (subject in all respects to the terms thereof).  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures.

5.      The Debtors are authorized to enter into the Stalking Horse Purchase Agreement (including all schedules, exhibits, and other ancillary documents thereto), subject to higher and better offers at the Auction in accordance with the Bidding Procedures.  The Debtors are authorized to perform all obligations of the Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing and prior to entry of the Sale Order, subject to the terms of the Bidding Procedures.  The Stalking Horse Bidder is deemed a Qualified Bidder,

and the Stalking Horse Bid as set forth in the Stalking Horse Purchase Agreement is deemed a Qualified Bid.

6.        In connection with any Sale pursuant to Bidding Procedures, and subject to the Financing Order[3] and section 363(k) of the Bankruptcy Code, the Prepetition First Lien Agent and the DIP Agent (each as defined in the operative Financing Order, and collectively "<u>Agents</u>") may, as determined by the Agents (at the direction of the applicable required lenders or holders), credit bid any portion and up to the full amount of the underlying lenders' or holders' respective secured claims and/or the DIP Obligations (as defined in the operative Financing Order), as applicable, on any individual Asset, portion of the Assets, or all Assets, in each case constituting Prepetition First Lien Collateral or DIP Collateral (each as defined in the operative Financing Order), as applicable (the "<u>Credit Bid Right</u>" and such bid, the "<u>Credit Bid</u>"); *provided,* that the Credit Bid Right shall only be exercised as a Backup Bid to the extent either no other Qualified Bid (other than the Stalking Horse Bid) is submitted or no other Backup Bid is selected at the completion of an Auction, each in conformity with these Bidding Procedures, and any such Credit Bid (if any) shall be submitted prior to the conclusion of the Auction.

7.        In the event an Agent exercises the Credit Bid Right, such Agent shall be deemed a Qualified Bidder (as defined herein) in all respects, and the Credit Bid shall be deemed a Qualified Bid (as defined herein) in all respects.  For the avoidance of doubt, notwithstanding anything to the contrary, the Credit Bid must contain a cash component sufficient to pay the Break-Up Fee and/or Expense Reimbursement required to be paid by the Debtors to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement, which cash component shall be used

---

[3]     "<u>Financing Order</u>" shall mean the order then in effect authorizing the use of cash collateral and/or approving DIP financing.

solely to pay such Break-Up Fee and Expense Reimbursement subject to the terms provided in the Stalking Horse Purchase Agreement.

8.      Upon exercise of the Credit Bid Right, neither the Prepetition First Lien Agent nor the DIP Agent shall be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and the Prepetition First Lien Agent and the DIP Agent shall each have the right to designate any person or entity that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid Right. Subject to the preservation of rights provided in the Financing Order with respect to the Prepetition First Lien Obligations, no other person may credit bid on the Prepetition First Lien Collateral or the DIP Collateral unless the entire amount of the Prepetition First Lien Secured Obligations (as defined in the applicable Financing Order) and the DIP Obligations will be paid in full in cash on the closing of the proposed Sale; ***provided however*** that the Stalking Horse Bidder shall receive a credit in connection with any Overbid equal to the value of the Bid Protections granted to it pursuant to the terms of the Stalking Horse Purchase Agreement (as set forth in Section VII.B.2. of the Bidding Procedures).

9.      For the avoidance of doubt, and notwithstanding anything to the contrary herein or in the Bidding Procedures, the Credit Bid Right shall be subject in all respects to any conditions or limitations on such right set forth in the operative Financing Order and section 363(k) of the Bankruptcy Code.

10.     The deadline by which all Bids for all or any portion of the Debtors' Assets must be ***actually received*** by the parties specified in the Bidding Procedures is 4:00 p.m. (prevailing

Eastern Time), on **April 12, 2024** (the "Bid Deadline"); provided that such deadline shall not apply to a Credit Bid.

11.     The Bid Protections are approved as follows: a Break-Up Fee in the amount of 3% of the Purchase Price (as defined in the Stalking Horse Purchase Agreement) of the Stalking Horse Bid and Expense Reimbursement not to exceed 1.5% of the Purchase Price; *provided* that the Bid Protections shall not exceed 4.5% of the Purchase Price.  The Bid Protections shall survive any termination of the Stalking Horse Purchase Agreement, dismissal or conversion of any of the Chapter 11 Cases, and confirmation of any plan of reorganization or liquidation, and shall be joint and several obligations binding and enforceable against each Debtor and its respective estates, any trustee, examiner or other representative of the Debtors' estates and any successors thereto. Notwithstanding anything to the contrary in the Stalking Horse Purchase Agreement, the Bid Protections shall be allowed as administrative expense claims in the Chapter 11 Cases under sections 503(b), 507(a)(2), and 105(a) of the Bankruptcy Code; *provided, however,* that, for the avoidance of doubt, such claims shall be subject and subordinate to the superpriority administrative expense claims set forth in the Financing Order.  The Debtors are authorized to pay any and all amounts owing to the Stalking Horse Bidder on account of the Bid Protections solely on the terms set forth in the Stalking Horse Purchase Agreement; *provided*, *however*, that counsel to the Stalking Horse Bidder shall provide the Debtors and the Consultation Parties with invoices and/or documentation in support of the Expense Reimbursement proposed to be paid no later than three Business Days following an event that gives rise to payment of the Expense Reimbursement, and the Consultation Parties shall have the right to review such invoices and/or documentation, and may object to such payment on or before two Business Days following the receipt of such invoices and/or documentation, solely on the basis that such fees are unreasonable and/or undocumented.

The Bid Protections for the Stalking Horse Bidder shall be payable at the time required under the Stalking Horse Purchase Agreement, pursuant to the terms and conditions thereof, free and clear of all liens, claims, encumbrances and other interests, without further order of this Court.  Nothing in this Order shall be construed as authorizing and directing the payment of the Bid Protections to the Stalking Horse Bidder in the event that it is the Successful Bidder with respect to the Purchased Assets.

12.     Notwithstanding anything to the contrary herein or in the Stalking Horse Purchase Agreement, in the event that the Bankruptcy Court enters a Final Order (a) converting the Chapter 11 Cases into cases under chapter 7 of the Bankruptcy Code or (b) appointing a trustee, receiver or other Person responsible for operation or administration of Seller or its business or assets, or a responsible officer for any Seller, or an examiner with enlarged powers relating to the operation or administration of Seller or its business or assets (each event in the foregoing clauses (a) and (b), a "Conversion Event"), then the Stalking Horse Bidder shall not exercise its termination right provided in Section 8.1.5(a) of the Stalking Horse Purchase Agreement for a period of at least fifteen (15) days following such Conversion Event (the "Conversion Event Negotiation Period"), during which period the Stalking Horse Bidder agrees to negotiate with any successor trustee or Appointee in good faith to proceed with the sale on the terms of the Stalking Horse Purchase Agreement, subject to an adjustment of the Purchase Price to account for any degradation to the business as a result of the Conversion Event or otherwise; provided that, for the avoidance of doubt, immediately upon expiration of the Conversion Event Negotiation Period, unless otherwise agreed in writing by the Stalking Horse Bidder in its sole discretion, the Stalking Horse Bidder shall be entitled to terminate the Stalking Horse Purchase Agreement pursuant to Section 8.1.5(a) thereof, and the Bid Protections shall be paid within five (5) business days of termination in

accordance with Section 8.3.1(a) of the Stalking Horse Purchase Agreement (and notwithstanding anything to the contrary herein or in the Stalking Horse Purchase Agreement).

13.     No person or entity other than the Stalking Horse Bidder shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

**III.    Auction.**

14.     If the Debtors receive one or more Qualified Bids (other than the Stalking Horse Bid and the Credit Bid), the Auction will take place on **April 16, 2024 at 10:00 a.m.** (prevailing Eastern Time), or such later time as the Debtors (after consultation with the Committee and the DIP Agent) shall notify all Qualified Bidders who have submitted Qualified Bids.  No later than 24 hours prior to the commencement of the Auction, the Debtors shall notify each Acceptable Bidder whether such party is a Qualified Bidder.  Such Auction will be held either (i) via a virtual meeting, (ii) at the offices of proposed co-counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, or (iii) at such other location as designated by the Debtors (after consultation with the Committee and the DIP Agent).  As soon as practicable after the Auction, the Debtors shall file a notice identifying the Successful Bidder and Backup Bidder (if selected), and in any event not more than 24 hours following closing the Auction.

15.     If the Debtors do not receive any Qualified Bids other than the Stalking Horse Bid by the Bid Deadline, or if the only Qualified Bid the Debtors receive other than the Stalking Horse Bid is the Credit Bid, the Debtors shall not hold an Auction, and the Stalking Horse Bidder shall be named the Successful Bidder immediately following the Bid Deadline.  In the event the Debtors do not hold an Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties (as

defined below), and cause to be published on the website maintained by Kroll Restructuring Administration LLC, the Debtors' claims and noticing agent in these Chapter 11 Cases, located at https://cases.ra.kroll.com/NanoString (the "Case Website"), a notice containing the following information (as applicable): (a) a statement that the Auction has been canceled; (b) the identity of the Successful Bidder; (c) either include a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (d) the date, time, and location of the Sale Hearing.

16.     Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction shall be required to confirm on the record that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly and all creditors will be permitted to attend (but, unless such creditor is a Qualified Bidder or Consultation Party, not participate in) the Auction; and (c) the Auction shall be transcribed by a court reporter or videotaped.

17.     The Debtors will evaluate all Bids that are timely submitted by the Bid Deadline and may engage in negotiations with Acceptable Bidders who submitted Bids as the Debtors deem appropriate, in the exercise of their reasonable judgment and after consultation with the Committee and the DIP Agent.  The Debtors may, in their reasonable business judgment (after consultation with the Committee and the DIP Lenders (as defined in the Financing Order)), (a) determine which Acceptable Bidders are Qualified Bidders (other than the Stalking Horse Bidder, who shall automatically be deemed a Qualified Bidder); (b) determine which Bids are Qualified Bids (other than the Stalking Horse Bid and any Credit Bid, which shall automatically be deemed a Qualified Bid); (c) determine which Qualified Bid is the highest or otherwise best offer, the "Successful

Bid," and which is the next highest or otherwise best proposal, the "Backup Bid"; (d) reject, at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any Bid (other than the Stalking Horse Bid) that, in the discretion of the Debtors (after consultation with the Committee and the DIP Agent), is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders; (e) at or before the conclusion of the Auction, may impose additional terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these Chapter 11 Cases; and (f) in consultation with the Consultation Parties, modify the Bidding Procedures, as applicable, at any time with or without prejudice; *provided that*, for the avoidance of doubt, the Debtors may not (i) modify the Bid Protections, unless the Stalking Horse Bidder agrees to such modification in writing in its sole discretion, or (ii) modify the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect (x) the Stalking Horse Bidder's right to payment of the Break-Up Fee or the Expense Reimbursement or the Stalking Horse Bidder's right to receive a credit for its Bid Protections as set forth in the Bidding Procedures, in each case, without the express written consent of the Stalking Horse Bidder in its sole discretion.

**IV.    The Sale Hearing.**

18.    Any party wishing to do so shall file a reply to any Sale Objections and/or Cure Objections (each as defined herein) by no later than 12:00 p.m. (prevailing Eastern Time) on **April 18, 2024**, and the Sale Hearing shall take place on **April 19, 2024 at 10:00 a.m.** (prevailing Eastern Time).

19.    The form of the Sale Notice attached to this Order as Exhibit 2 is approved.  Within two (2) Business Days after entry of this Order, the Debtors shall serve the Sale Hearing Notice

on the following parties (or their respective counsel, if known) by first class mail or email: (a) the Notice Parties; (b) all parties to executory contracts and leases to be assumed, assigned, or rejected as part of the proposed Sale; (c) all parties who have expressed a written interest in some or all of the Debtors' Assets; (d) all known holders of liens, encumbrances, and other claims secured by the Debtors' Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties").

20.　　As soon as reasonably practicable after entry of this Order, the Debtors shall publish the Sale Notice in *The New York Times* (national edition) and on the Case Website.

21.　　Objections, if any, to the Sale, including on the basis of the identity of the Stalking Horse Bidder (each, a "Sale Objection") must be made no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after service of the Sale Notice and Assumption and Assignment Notice (the "Sale Objection Deadline"). Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** no later than the Sale Objection Deadline by the following parties (the "Objection Notice Parties"):

| Counsel to the Debtors | Co-Counsel to the Debtors |
| --- | --- |
| Willkie Farr & Gallagher LLP<br>787 Seventh Avenue<br>New York, NY 10019<br>Attn.: Rachel C. Strickland, Esq.<br>Debra M. Sinclair, Esq.<br>Betsy L. Feldman, Esq. | Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn.: Edmon L. Morton, Esq.<br>Matthew B. Lunn, Esq.<br>Allison S. Mielke, Esq. |

| **Counsel to the Committee** | **The United States Trustee** |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park, Bank of America Tower<br>New York, New York 10036<br>Attn: Philip C. Dublin, Esq.<br>Meredith A. Lahaie, Esq.<br><br>Troutman Pepper Hamilton Sanders LLP<br>1313 N. Market Street, P.O. Box 1709<br>Wilmington, Delaware 19899<br>Attn: David M. Fournier, Esq.<br>Evelyn J. Meltzer, Esq. | Office of the United States Trustee<br>for the District of Delaware<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn.: Timothy J. Fox, Esq. |
| **Counsel to the Stalking Horse Bidder** | **Counsel to the DIP Lenders and the Prepetition First Lien Holders** |
| Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn: Brian Schartz, Esq.<br>Jordan E. Elkin, Esq. | Gibson Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attn: David M. Feldman, Esq.<br>Jonathan Dunworth, Esq.<br><br>Gibson Dunn & Crutcher LLP<br>333 S. Grand Avenue<br>Los Angeles, CA 90071<br>Attn: Michael S. Neumeister, Esq.<br><br>Sullivan & Cromwell LLP<br>125 Broad Street<br>New York, New York 10004<br>Attn: Ari Blaut, Esq.<br>Benjamin Beller, Esq.<br><br>Landis Rath & Cobb LLP<br>919 N. Market Street, Suite 1800<br>Wilmington, Delaware 19801<br>Attn: Adam G. Landis, Esq.<br>Matthew B. McGuire, Esq. |

22.     All parties-in-interest shall have an opportunity to object to the conduct of the

Auction and, if the Successful Bidder is not the Stalking Horse Bidder, counterparties to Assigned

Contracts shall have an opportunity to object to the adequate assurance of future performance under Assigned Contracts (each such objection, a "Supplemental Sale Objection"). Any Supplemental Objection must (i) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) be filed with the Court by no later than 12:00 p.m. on **April 17, 2024** (the "Supplemental Sale Objection Deadline"); and (iii) served on the Objection Notice Parties.

23.     Any party failing to timely file a Sale Objection shall be forever barred from objecting and shall be deemed to have consented to each Sale, including the transfer of the Debtors' right, title and interest in, to and under the Purchased Assets free and clear of any and all liens, claims, interests, and encumbrances in accordance with the Stalking Horse Purchase Agreement or Successful Bidder's purchase agreement.

24.     The Sale Hearing may be adjourned by the Debtors, in consultation with the DIP Agent, the Committee, and the Successful Bidder, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

**V.     Assumption and Assignment Procedures.**

25.     The procedures set forth below regarding the assumption and assignment of the Contracts (each, an "Assigned Contract," and collectively, the "Assigned Contracts") proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder or other Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with the Sale (the "Assumption Procedures") are hereby approved to the extent set forth herein and shall govern the assumption and assignment of all of the Debtors' Assigned Contracts to be assumed and assigned in connection with the Sale, subject to the payment

of any amounts necessary to cure any defaults arising under any Assigned Contract (the "Cure Costs"):

    (a)    **Assumption and Assignment Notice**.  The form of the Assumption and Assignment Notice attached to this Order as Exhibit 3 is approved.  Within two (2) Business Days after entry of this Order (the "Assumption and Assignment Service Deadline"), the Debtors shall serve the Assumption and Assignment Notice by first class mail or email on each counterparty to the Assigned Contracts to be assumed and assigned as part of the proposed Sale (or their respective counsel, if known).  The Assumption and Assignment Notice shall inform each recipient of (i) the timing and procedures relating to such assumption and assignment, (ii) the title (or an appropriate description) and date of the Assigned Contract (if available), (iii) the name of the non-Debtor counterparty to the Assigned Contract, (iv) the Debtors' good faith estimates of the Cure Costs (if any) required in connection with the Assigned Contract, (v) the identity of the Stalking Horse Bidder or other Successful Bidder to whom the Assigned Contract is to be assigned, and (vi) the Cure Objection Deadline; provided, however, that service of an Assumption and Assignment Notice does not constitute an admission that such contract is an executory contract or that any stated Cure Cost constitutes a claim against the Debtors or a right against any Stalking Horse Bidder or other Successful Bidder, and all rights with respect thereto are expressly reserved.  Further, the inclusion of a contract on the Assumption and Assignment Notice is not a guarantee that such contract will ultimately be assumed and assigned.  Any determination of whether such contract is an executory contract or can be rejected will be made in accordance with the Bankruptcy Code, the Bankruptcy Rules, and all applicable orders of this Court.

    (b)    **Cure Costs**. The payment of the applicable Cure Costs shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the Assigned Contracts by the Debtors and the assignment of the Assigned Contracts to the Stalking Horse Bidder or other Successful Bidder, constitute adequate assurance of future performance thereof.  In the event the Successful Bidder is not the Stalking Horse Bidder, objections to adequate assurance of future performance of the Assigned Contracts by the Successful Bidder must be filed with the Court and served on the Objection Notice Parties no later than April 17, 2024 at 12:00 p.m. (ET).

    (c)    **Supplemental Contract Assumption Notice**. To the extent the Debtors, at any time after the Assumption and Assignment Service Deadline (i) identify additional Assigned Contracts to be assumed and assigned to the Stalking Horse Bidder or other Successful Bidder (the "Additional Assigned Contracts"), (ii) remove Assigned Contracts from the list of executory

contracts and leases proposed to be assumed and assigned in connection with a Sale, (iii) and/or modify the previously stated Cure Cost associated with any Assigned Contracts, the Debtors will promptly file with this Court and serve by first-class mail or email a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the counterparties to such Assigned Contracts and their counsel of record, if any.  Each Supplemental Assumption Notice will include the same information with respect to listed Assigned Contracts as was included in the Contract Assumption Notice.  The Stalking Horse Bidder may designate Additional Assigned Contracts to be assumed and assigned at any time until five (5) Business Days prior to the Closing Date (as defined in the Stalking Horse Purchase Agreement), and may remove Assigned Contracts from the list of Assigned Contracts at any time until five (5) Business Days prior to the Closing Date.  Counterparties to Additional Assigned Contracts or that otherwise receive a Supplemental Assumption Notice shall have until 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) days after the filing and service of the Supplemental Assumption Notice by the Debtors to the Counterparty to file a Cure Objection (as defined herein).

(d)  **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto (each, a "Cure Objection"), must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon the Objection Notice Parties, so as actually to be received on or before the Sale Objection Deadline or deadline set forth in the Supplemental Assumption Notice, as applicable (each, a "Cure Objection Deadline").

(e)  **Dispute Resolution**. In the event that a non-Debtor contract counterparty files a timely Cure Objection and the Debtors and such counterparty cannot resolve such objection, the objection shall be heard at the Sale Hearing or such later date that the Debtors determine in consultation with the Successful Bidder, subject to the Court's calendar.  If such objection has not been resolved prior to the Closing Date (whether by an order of the Court or by agreement with the counterparty), the Successful Bidder may elect, in its sole discretion, to: (i) treat such counterparty's contract (the "Disputed Contract") as an Excluded Contract (as defined in the Stalking Horse Purchase Agreement) or (ii) temporarily treat such counterparty's contract as an Excluded Contract, proceed to Closing of the Sale, and determine whether to treat the Disputed Contract as an Assigned Contract or Excluded Contract within five (5) business days after resolution of such objection (whether by order of the Court or by agreement with the counterparty).

(f)     **Contract Assumption**. No Assigned Contract shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Assigned Contracts or (ii) the date the Sale has closed.

26.     Any party failing to timely file an objection to the Cure Cost or the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on the Assumption and Assignment Notice or any Supplemental Assumption Notice is deemed to have consented to (a) such Cure Cost, (b) the assumption and assignment of such Assigned Contract or additional Assigned Contract, (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to the Cure Costs, the assumption and assignment of the Assigned Contract, or additional Assigned Contract, adequate assurance of future performance, the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or Successful Bidder, as applicable, for purposes of section 365(c)(1) of the Bankruptcy Code and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's Assigned Contract or Additional Assigned Contract.

27.     Nothing herein shall be deemed to abridge the rights of Veracyte, Inc. ("Veracyte") in any way, and the limited objection of Veracyte [Docket No. 371] (the "Veracyte Objection"), shall be reserved for hearing, if necessary, at the Sale Hearing or another hearing to be agreed by the Debtors, Veracyte, and the Stalking Horse Bidder (or other Successful Bidder) subject to the availability of the Bankruptcy Court.  The Debtors, Veracyte, and the Stalking Horse Bidder (or other Successful Bidder) reserve all rights with respect to the Veracyte Objection.

28.     The Assumption Procedures are appropriate and fair to all counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  The

Contract Assumption Notice is: (a) reasonably calculated to (i) provide sufficient, effective notice to all counterparties and any other affected parties of the Debtors' intent to assume and assign to any Successful Bidder some or all of the Assumed Contracts and (ii) afford the counterparties the opportunity to exercise any rights affected by the Motion and the relief granted by this Order pursuant to Bankruptcy Rules 2002(a)(2), 6004, and 6006; and (b) hereby approved.

**V.    Miscellaneous.**

29.    For the avoidance of doubt and notwithstanding anything to the contrary herein, nothing in this Order, the Bidding Procedures, or the Motion shall be construed to in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Stalking Horse Purchase Agreement or the Stalking Horse Bidder's rights thereunder.  The Stalking Horse Bidder shall have standing to appear and be heard on all issues related to the Auction, the sale of the Assets, and related matters, including the right to object to the sale of the Assets or any portion thereof.

30.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to (i) deliver any notice provided for in the Stalking Horse Purchase Agreement, including, without limitation, a notice terminating the Stalking Horse Purchase Agreement in accordance with the terms thereof, and (ii) take any and all actions permitted under the Stalking Horse Purchase Agreement in accordance with the terms and conditions thereof.

31.    All persons and entities that participate in the Auction or bidding for the Assets during the Sale process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other

relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

33.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

35.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Dated: March 28th, 2024**
**Wilmington, Delaware**

                                    **CRAIG T. GOLDBLATT**
                                    **UNITED STATES BANKRUPTCY JUDGE**