**<u>EXHIBIT 1</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NANOSTRING TECHNOLOGIES, INC., *et al.*,[1] | Case No. 24-10160 (CTG) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

On February 4, 2024, NanoString Technologies, Inc. and its affiliated debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

On [●], 2024, the Court entered an order [Docket No. [●]] (the "Bidding Procedures Order"),[2] authorizing the Debtors to solicit bids for a sale or disposition (the "Sale") of all or substantially all of the Debtors' assets (collectively, the "Assets"), free and clear of all liens, claims, encumbrances, and other interests and in accordance with the following procedures (the "Bidding Procedures") and to conduct a related auction if needed (the "Auction").

These Bidding Procedures set forth the process through which a person or entity interested in all or substantially all of the Assets or a material portion of the Assets (each, a "Potential Bidder") may submit a binding proposal or offer (each, a "Bid") pursuant to which the Potential Bidder proposes to, among other things, purchase, acquire, and take assignment and delivery of the Assets and assume certain liabilities (the "Liabilities") of the Debtors. This process is intended to obtain a sale proposal that is in the best interests of the Debtors, their creditors, and their equity holders.

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of their U.S. federal tax identification numbers, to the extent applicable, are NanoString Technologies, Inc. (4687), NanoString Technologies International, Inc. (2723), NanoString Technologies Netherlands B.V., and NanoString Technologies Germany GmbH. The Debtors' headquarters is located at 530 Fairview Avenue North, Suite 2000, Seattle, WA 98109.

[2] Terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion of the Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement and to Provide the Stalking Horse Bid Protections Thereunder, (C) Scheduling an Auction and a Sale Hearing and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, and (E) Granting Related Relief; and (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Motion") or the Bidding Procedures Order, as applicable.

**ANY PARTY INTERESTED IN BIDDING ON ALL OR ANY PORTION OF THE DEBTORS' ASSETS SHOULD CONTACT THE DEBTORS' ADVISORS, AS FOLLOWS:**

| | | |
|---|---|---|
| Perella Weinberg Partners | Willkie Farr & Gallagher LLP | Young Conaway Stargatt & |
| 767 Fifth Avenue | 787 Seventh Avenue | Taylor, LLP |
| New York, NY 10153 | New York, New York 10019 | 1000 North King Street |
| Attn: John Cesarz | Attn: Rachel C. Strickland | Wilmington, Delaware 19801 |
| (jcesarz@pwpartner.com); | (rstrickland@willkie.com); | Attn:  Edmon L. Morton |
| Christopher O'Connor | Debra M. Sinclair | (emorton@ycst.com); |
| (coconnor@pwpartners.com; | (dsinclair@willkie.com); | Matthew B. Lunn |
| Chad Porter | Betsy L. Feldman | (mlunn@ycst.com); |
| (cporter@pwpartners.com); and | (bfeldman@willkie.com); and | Allison S. Mielke |
| Jason Forschler | Jessica D. Graber | (amielke@ycst.com); and |
| (jforschler@pwpartners.com | (jgraber@willkie.com) | Kristin L McElroy |
| | | (kmcelroy@ycst.com |

## I.    DESCRIPTION OF THE ASSETS AND STALKING HORSE BID.

### A.    The Assets.

The Debtors intend to sell all or substantially all of the Assets.

Any Potential Bidder may bid on all or substantially all of the Assets or a material portion of the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court.

### B.    The Stalking Horse Purchase Agreement.

On March 10, 2024, the Debtors entered into that certain Asset Purchase Agreement (the "Stalking Horse Purchase Agreement") with Nucleus Buyer, LLC (the "Stalking Horse Bidder," and such bid, the "Stalking Horse Bid").  Subject to court approval, pursuant to the Stalking Horse Purchase Agreement, the Stalking Horse Bidder has committed to pay a Purchase Price worth a total aggregate consideration as set forth in the Stalking Horse Purchase Agreement, free and clear of all claims or encumbrances (other than Assumed Liabilities and Permitted Liens, as defined in the Stalking Horse Purchase Agreement).  In the event that the Stalking Horse Purchase Agreement is terminated, pursuant to the conditions thereunder, or in the event that the purchase of the Assets is ultimately consummated by any person other than the Stalking Horse Bidder, the Debtors will pay the Stalking Horse Bidder (at the time required under the Stalking Horse Purchase Agreement) a break-up fee in the amount equal to $6,600,000 (three (3) percent of the Purchase Price) (the "Break-Up Fee")[3] and reimburse the Stalking Horse Bidder for its reasonable and documented expenses in conjunction with the Stalking Horse Bid up to a maximum amount of $3,300,000 (one and a half (1.5) percent of the Purchase Price) (the "Expense Reimbursement," and together with

---

[3]    For the avoidance of doubt, the Break-Up Fee is referred to as the Termination Fee in the Stalking Horse Purchase Agreement.

the Break-Up Fee, the "Bid Protections"); provided, however, that the Break-Up Fee and Expense Reimbursement, in the aggregate, shall not exceed an amount equal to $9,900,000 (four and a half (4.5) percent of the Purchase Price).

## II.    KEY DATES AND DEADLINES.

| Deadline | Event |
|---|---|
| **Two Business Days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Hearing Notice and Assumption and Assignment Notice |
| **As soon as practicable after the entry of the Bidding Procedures Order** | Deadline for Debtors to publish Sale Hearing Notice |
| **4:00 p.m. (ET) on the date that is fourteen (14) days after service of the Sale Notice and Assumption and Assignment Notice** | Sale Objection Deadline (including objections to Assumption and Assignment of Contracts) |
| **April 12, 2024 at 5:00 p.m. (ET)** | Bid Deadline |
| **No later than 24 hours prior to Auction, if applicable** | Deadline to Designate Qualified Bidders |
| **April 16, 2024 at 10:00 a.m. (ET)** | Auction, solely in the event the Debtors receive one or more Qualified Bids in addition to the Stalking Horse Bid |
| **As soon as practicable after the Auction, if applicable** | Deadline for Debtors to file and serve Notice of Winning Bidder |
| **April 17, 2024 at 12:00 p.m. (ET)** | Deadline to object to (i) conduct at Auction and (ii) adequate assurance of future performance under Assigned Contracts if Successful Bidder is not the Stalking Horse Bidder |
| **April 18, 2024 at 12:00 p.m. (ET)** | Deadline to Reply to Sale Objections |
| **April 19, 2024 at 10:00 a.m. (ET)** | Sale Hearing |

### III.    PARTICIPATION REQUIREMENTS.

### A.    Potential Bidders.

To participate in the bidding process, a Potential Bidder must deliver to each of the Debtors' advisors the following documents and information:

1.    an executed confidentiality agreement on terms acceptable to the Debtors (a "<u>Confidentiality Agreement</u>"); and

2.    proof by the Potential Bidder of its financial capacity to close the proposed Sale, which may include audited financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the desired Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors and their advisors after consultation with the DIP Lenders and the Committee.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors and their advisors regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction; <u>provided</u> that the Consultation Parties (as defined herein) and their respective advisors shall be permitted to communicate with Potential Bidders and/or their respective advisor(s) prior to the Auction regarding the Sale, solely with the consent (not to be unreasonably withheld, conditioned, or delayed) of the Debtors.  The Consultation Parties shall invite the Debtors and their advisors to participate in any such discussions (though participation in any such discussions by the Debtors and/or their advisors shall not be required).  The Debtors will provide copies of material delivered by any Potential Bidder to (i) the Committee and its advisors, and (ii) the DIP Lenders and their counsel, regardless of whether received prior or subsequent to the date of the Court's entry of these Bidding Procedures  no later than four (4) hours after the receipt thereof, to the extent reasonably practicable.

### B.    Obtaining Due Diligence.

Only Potential Bidders that have executed confidentiality agreements and have provided evidence satisfactory to the Debtors (in the Debtors' discretion, after consultation with the Committee and the DIP Lenders) of their financial capacity to close the proposed Sale (such Potential Bidders, an "<u>Acceptable Bidder</u>") shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and any additional non-public information regarding the Debtors and the Assets.

The Debtors and their advisors shall coordinate responses to all reasonable requests from Acceptable Bidders for additional information and due diligence access; <u>provided</u> that (i) the Debtors shall have the right, in consultation with the Committee and the DIP Lenders, to limit the information and due diligence provided to competitors and (ii) the Debtors may decline (after consultation with the Committee and the DIP Lenders) to provide such information to any Acceptable Bidder (other than the DIP Agent or the Prepetition First Lien Agent (each as defined

in the operative Financing Order, and collectively, the "Agents")[4] with respect to the Credit Bid Right) who, at such time and in the Debtors' reasonable business judgment and after consultation with the Committee and the DIP Lenders, has not established, or who has raised significant doubt, that such Acceptable Bidder intends in good faith to, or has the capacity (financial or otherwise) to timely consummate the proposed Sale in accordance with these Bidding Procedures. The Debtors will promptly provide any due diligence that has been made available to any other Acceptable Bidder to the Stalking Horse Bidder to the extent such information has not previously been provided to or is not simultaneously provided to the Stalking Horse Bidder.

The due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed appropriate by the Debtors after consultation with the DIP Lenders and the Committee. The Debtors and their representatives and advisors are not responsible for, and will bear no liability with respect to, any information obtained by any Acceptable Bidder in connection with the Sale.

### C. Right to Credit Bid.

In connection with any Sale pursuant to these Bidding Procedures and subject to the Financing Order and section 363(k) of the Bankruptcy Code, each Agent may, as determined by the Agents with the requisite consent of the applicable lenders, credit bid any portion and up to the full amount of the underlying lenders' or holders' respective secured claims and/or the DIP Obligations (as defined in the operative Financing Order), as applicable, on any individual Asset, portion of the Assets, or all Assets, in each case constituting Prepetition First Lien Collateral or DIP Collateral (each as defined in the operative Financing Order), as applicable (the "Credit Bid Right" and such bid, the "Credit Bid"); *provided,* however, the Credit Bid Right shall only be exercised as a Backup Bid to the extent either no other Qualified Bid (other than the Stalking Horse Bid) is submitted or no other Backup Bid is selected at the completion of an Auction, each in conformity with these Bidding Procedures, and any such Credit Bid (if any) shall be submitted prior to the conclusion of the Auction. For the avoidance of doubt, notwithstanding anything herein to the contrary, the Agents are under no obligation to submit a Credit Bid or to participate as a Backup Bidder.

Each Agent shall be deemed a Qualified Bidder (as defined herein) in all respects, and any Credit Bid shall be deemed a Qualified Bid (as defined herein) in all respects. For the avoidance of doubt, notwithstanding anything to the contrary, the Credit Bid must contain a cash component sufficient to pay the Break-Up Fees and/or Expense Reimbursements required to be paid by the Debtors to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement, if any, which cash component shall be used solely to pay such Break-Up Fees and Expense Reimbursements subject to the terms provided in the Stalking Horse Purchase Agreement and the Bidding Procedures Order.

Upon exercise of the Credit Bid Right, neither Agent shall be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or

---

[4] "Financing Order" shall mean the order then in effect authorizing the use of cash collateral and/or approving DIP financing.

otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and each Agent shall have the right to designate any person or entity that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid Right. Subject to the preservation of rights provided in the Financing Order with respect to the Prepetition First Lien Secured Obligations, no other person may credit bid on the Prepetition First Lien Collateral or the DIP Collateral unless the entire amount of the Prepetition First Lien Secured Obligations and the DIP Obligations will be paid in full in cash on the closing of the proposed Sale; *provided* that the Stalking Horse Bidder shall receive a credit in connection with such Overbid equal to the value of the Bid Protections granted to it pursuant to the terms of the Stalking Horse Purchase Agreement (as set forth in Section VII.B.2 of these Bidding Procedures) and the Bidding Procedures Order.

For the avoidance of doubt, and notwithstanding anything to the contrary herein or in the Bidding Procedures Order, the Credit Bid Right shall be subject in all respects to any conditions or limitations on such right set forth in the operative Financing Order and section 363(k) of the Bankruptcy Code.

## IV.    REQUIREMENTS FOR QUALIFIED BIDS.

Any Bid will be considered a qualified bid only if the Bid is submitted in writing by an Acceptable Bidder by the Bid Deadline and is determined to comply with all of the following in the Debtors' reasonable business judgment (after consultation with the Committee and the DIP Lenders) (such bid, a "Qualified Bid," and such bidder, a "Qualified Bidder"):

1.  ***Identity***.  The bid must fully disclose the identity of each person or entity that (a) is bidding for all or any portion of the Assets; (b) is sponsoring or financing the bid (including through the issuance of debt in connection with such bid); (c) is participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and/or (d) will directly or indirectly own and/or control any amount of equity and/or voting securities of the Qualified Bidder; in each case, including its full legal name, jurisdiction of incorporation or formation, and its location in the Qualified Bidder's corporate structure.  The bid must also disclose any past or present connection or agreement with any Debtor, any other prospective bidder for all or any portion of the Assets, or any officer, director, or equity security holder of any Debtor.

2.  ***Purpose; Assets and Liabilities***.  Each Qualified Bidder must state that the Bid includes an irrevocable and binding offer by the Qualified Bidder to purchase some or all of the Assets (identified with specificity).  The Bid must clearly identify the following: (a) the Assets, or the portion thereof, to be purchased; and (b) the Liabilities and obligations to be assumed, including any indebtedness and applicable Cure Costs to be assumed, if any.

3.    ***Purchase Price***.  The Bid must clearly set forth the cash purchase price, assumed Liabilities, and any other non-cash consideration (with the form of such consideration specified), to be paid for the Assets to be purchased; provided that the proposed purchase price shall satisfy the Minimum Bid requirement set forth below.  A Bid that contemplates a Sale for less than all of the Assets but includes multiple segments or groups of Assets must contain sufficient information as to allow the Debtors to determine an allocation of value among each segment or group of Assets (including, as applicable, by allocating the purchase price among each of the Assets that the Qualified Bidder intends to acquire).

4.    ***Deposit***.  Each Bid must be accompanied by a good faith deposit in the form of cash (or other form acceptable to the Debtors after consultation with the Committee and the DIP Lenders) in an amount equal to ten (10) percent (10%) of the maximum cash component of the purchase price of the Bid (the "Deposit") to be held in an escrow account to be established by the Debtors until no later than five (5) Business Days after the conclusion of the Auction and thereafter returned to the respective Qualified Bidders (except for the Deposit of any bidder who is selected at the Auction as a Successful Bidder or as a Backup Bidder (as defined below)); provided that, for the avoidance of doubt, in the event of the exercise of the Credit Bid Right, a Deposit must only be made with respect to the cash component of the purchase price, and not to any actual Credit Bid amount.

5.    ***Minimum Bid***.  If at least one Qualified Bid (in addition to the (i) Stalking Horse Bid; and (ii) any Credit Bid) is received by the Bid Deadline with regard to the Assets, the Debtors will conduct an Auction with respect to such Assets and shall determine, in their reasonable discretion (after consultation with (i) the Committee and (ii) the DIP Lenders), which Qualified Bid is the highest or otherwise best Qualified Bid for purposes of constituting the opening bid at the Auction (the "Minimum Bid"). The Minimum Bid must have a value to the Debtors, as determined by the Debtors in their reasonable business judgment, that: (a) is greater than or equal to the value of the Stalking Horse Bid, taking into account the aggregate cash consideration, assumption of liabilities (including, for the avoidance of doubt, the assumption of litigation liabilities, including currently outstanding litigation liabilities, contingent future litigation liabilities, and the operational savings to the Debtors' estates on account of the buyer's assumption of such litigation), and other non-cash consideration contemplated by the Stalking Horse Bid; and (b) includes cash consideration in an amount equal to or greater than (i) the sum of the Purchase Price under the Stalking Horse Purchase Agreement, plus (ii) the amount of the Bid Protections, plus (iii) $2,500,000.  For the avoidance of doubt, if the Debtors receive one or more Bids that do not each independently constitute a "Minimum Bid," but otherwise meet all requirements set forth herein for a "Qualified Bid," then the Debtors may

aggregate two or more such Qualified Bids and treat them as a single Qualified Bid for purposes of constituting the Minimum Bid.

6.      ***Marked Agreement***.  Each Bid must include duly executed, non-contingent transaction documents necessary to effectuate the transactions contemplated in the Bid (the "Bid Documents").  The Bid Documents shall include a schedule of Assigned Contracts and a clearly marked version of (a) the form Sale Order provided by the Debtors to the Acceptable Bidder, in each case, showing all changes requested by the Acceptable Bidder, and (b) the Stalking Horse Purchase Agreement, as well as all other material documents integral to such Bid.

7.      ***Committed Financing***.  Each Bid must include evidence of (a) the Acceptable Bidder's capacity to consummate the proposed transactions set forth in its Bid with cash on hand or (b) committed financing documented to the satisfaction of the Debtors (after consultation with the Committee and the DIP Lenders) that demonstrates that the Acceptable Bidder has received sufficient unconditional debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid, including providing adequate assurance of future performance under all contracts proposed to be Assigned Contracts by such Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.

8.      ***Contingencies; No Financing or Diligence Outs***.  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

9.      ***Governmental, Licensing, and Regulatory Approvals***.  Each Bid must describe all governmental, licensing, regulatory, or other approvals or consents that are required to consummate the proposed transaction (including any antitrust approval related to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended), together with evidence satisfactory to the Debtors, after consultation with the Committee and the DIP Lenders, of the ability to obtain such approvals or consents as soon as reasonably practicable, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such approvals or consents.

10.     ***Irrevocable***.  Each Bid must be irrevocable and binding; provided that if the Bid is not selected as the Successful Bid or Backup Bid, the Bid may be revoked after the Auction if such Acceptable Bidder's Bid is not selected as the Successful Bid or Backup Bid.

11. ***Backup Bidder***.  Each Bid must contain an agreement for the Acceptable Bidder to be a Backup Bidder if such bidder's Qualified Bid is selected as the next highest or next best bid after the Successful Bid; <u>provided</u> that, notwithstanding anything to the contrary herein, the Stalking Horse Bidder is not required to serve as the Backup Bidder.

12. ***As-Is, Where-Is***.  The Bid must include the following representations and warranties: (a) expressly state that the Acceptable Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' business and the Assets such Acceptable Bidder proposes to acquire prior to submitting its Bid; and (b) a statement that the Acceptable Bidder has relied solely upon its own independent review, investigation, and/or inspection of any relevant documents and the Assets such Acceptable Bidder proposes to acquire in making its Bid and did not rely on any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the Assets such Acceptable Bidder proposes to acquire or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the Acceptable Bidder's proposed purchase agreement ultimately accepted and executed by the Debtors.

13. ***Authorization***.  The Bid must include evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Debtors, in consultation with the Committee and the DIP Lenders, with respect to the submission, execution, and delivery of its Bid and Bid Documents, participation in the Auction, and closing of the proposed Sale contemplated in such Bid.  The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Acceptable Bidder.

14. ***Disclaimer of Fees***.  Each Bid (other than the Stalking Horse Bid, subject to the terms of the Bidding Procedures Order) must disclaim any right to receive a fee analogous to a break-up fee, expense reimbursement, "topping" or termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder (other than the Stalking Horse Bidder) will be permitted to request, nor will be granted by the Debtors, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and, by submitting its Bid, the Qualified Bidder is deemed to have agreed to waive any request for any such fee, costs, or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code.

15. ***Time Frame for Closing***.  A Bid by an Acceptable Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience,

and other considerations in the Debtors' reasonable business judgment, after consultation with (i) the Committee and (ii) the DIP Lenders) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtors.  The Acceptable Bidder must commit to closing the proposed Sale contemplated by the Bid as soon as practicable, and in no event later than June 30, 2024, and must expressly set forth any potential regulatory issues or approvals that might arise in connection with such Acceptable Bidder's acquisition of the Assets, including such Acceptable Bidder's anticipated timing and proposed approach for resolving any such regulatory issues and obtaining any potential regulatory approvals. Each Bid must include a commitment to close the proposed Sale as soon as practicable, and must state the expected date of (and timeline and any milestones to) closing of the proposed Sale.

16.     ***Employees***.  Each Bid must include a statement regarding whether the Acceptable Bidder intends to offer future employment to any of the Debtors' employees.  Each Bid must also expressly propose the treatment of the Debtors' prepetition compensation, incentive, retention, bonus or other compensatory arrangements, plans, or agreements, including offer letters, employment agreements, consulting agreements, severance arrangements, retention bonus agreements, change in control arrangements, retiree benefits, and any other employment related agreements.

17.     ***Adherence to Bidding Procedures***.  Each Bid must include a statement that (a) the Acceptable Bidder has acted in good faith consistent with section 363(m) of the Bankruptcy Code; and (b) the Bid constitutes a *bona fide* offer to consummate the proposed Sale embodied therein, and the Acceptable Bidder agrees to be bound by these Bidding Procedures.

18.     ***Cooperation***.  The Acceptable Bidder must covenant to cooperate with the Debtors to provide factual information regarding such Bidder's operations upon the Debtors' request to analyze issues arising with respect to any applicable laws or regulatory or licensing requirements.

19.     ***No Collusion***.  The Acceptable Bidder must acknowledge in writing that (a) in connection with submitting its Bid, it has not engaged in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids or the Sale, specifying that it did not agree with any Potential Bidders, Acceptable Bidders, or Qualified Bidders to control price; and (b) it agrees not to engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale.

20.     ***Other Information***.  The Bid contains such other information as may be reasonably requested by the Debtors, the Committee, and the DIP Lenders (with such requests made through the Debtors).

21.     ***Consent to Jurisdiction***. Each Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the qualification of the Bids, the Auction (if held), the construction and enforcement of these Bidding Procedures and the relevant documents, and the consummation of any Sale.

## V.    BID DEADLINE.

An Acceptable Bidder that desires to make a bid must transmit via email (in .pdf or similar format) or deliver written copies of its bid to the following parties so as to be received not later than **5:00 p.m. (prevailing Eastern Time) on April 12, 2024** (the "Bid Deadline"): (i) counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Rachel C. Strickland, email: rstrickland@willkie.com, Debra M. Sinclair, email: dsinclair@willkie.com, and Betsy L. Feldman, email: bfeldman@willkie.com; (ii) Delaware counsel to the Debtors, Young Conaway Stargatt and Taylor, LLP, 1000 North King Street, Wilmington, DE, 19801, Attn: Edmon L. Morton, email: emorton@ycst.com; Matthew B. Lunn, email: mlunn@ycst.com; and Allison S. Mielke, email: amielke@ycst.com; and (iii) the Debtors' investment banker, Perella Weinberg Partners, 767 Fifth Avenue, New York, NY 10153, Attn: John Cesarz, email: jcesarz@pwpartners.com; Alexander Svoyskiy, email: asvoyskiy@pwpartners.com. The Debtors shall within four (4) hours of receipt of any Bid or as soon as practicable thereafter, deliver a copy of such Bid, by email to (i) the Committee's proposed professional advisors (a) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Philip C. Dublin (pdublin@akingump.com), Meredith A. Lahaie (mlahaie@akingump.com), Benjamin L. Taylor (taylorb@akingump.com) and Erica D. McGrady, (emcgrady@akingump.com) and (b) Piper Sandler & Co., 1251 Avenue of Americas, 39th Floor, New York, NY 10020, Attn: James Wang (james.wang@psc.com) and Andrew Zinn (andrew.zinn@psc.com), on a professional eyes only basis, and (ii) counsel to the DIP Lenders, (a) Gibson Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, CA 90071, Attn:  David M. Feldman (dfeldman@gibsondunn.com) and Michael S. Neumeister (mneumeister@gibsondunn.com), (b) Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Ari Blaut (blauta@sullcrom.com) and Benjamin Beller (bellerb@sullcrom.com), and (c) Landis Rath & Cobb LLP, 919 N. Market Street, Suite 1800, Wilmington, DE 19801, Attn: Adam G. Landis (landis@lrclaw.com) and Matthew B. McGuire (mcguire@lrclaw.com).

## VI.    QUALIFIED BIDDERS.

The Debtors will evaluate all Bids that are timely submitted by the Bid Deadline and may engage in negotiations with Potential Bidders who submitted Bids as the Debtors deem appropriate, in the exercise of their reasonable business judgment and after consultation with the Committee and the DIP Lenders, based upon the Debtors' evaluation of each Bid.

No later than twenty-four (24) hours prior to the commencement of the Auction, the Debtors, after consultation with the Committee and the DIP Lenders, shall notify each Acceptable Bidder whether such party is a Qualified Bidder.  If any Bid is determined by the Debtors (after consultation with the Committee and the DIP Lenders) not to be a Qualified Bid, the Debtors will

refund such Acceptable Bidder's Deposit on or before the date that is five (5) Business Days after the Bid Deadline. On the same date that the Debtors determine (after consultation with the Committee and the DIP Lenders) that a Bid is a Qualified Bid, the Debtors shall provide notice of such determination to the Stalking Horse Bidder.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may, in consultation with the Committee and the DIP Lenders, discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors after consultation with the Committee and the DIP Lenders, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein. The Debtors shall consult with the Committee and the DIP Lenders before permitting a Qualified Bidder to withdraw its Qualified Bid. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything in these Bidding Procedures to the contrary, the Debtors, in consultation with the Committee and the DIP Lenders, reserve the right to work with Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the applicable Auction (if any). The Debtors, in consultation with the Committee and the DIP Lenders, reserve the right to cooperate with any Acceptable Bidder to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors, in consultation with the Committee and the DIP Lenders, may accept a single Qualified Bid or multiple Bids that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple Qualified Bidders shall be treated as a single Qualified Bidder, and their Bid a single Qualified Bid, for purposes of the applicable Auction (if any)).

Each Qualified Bidder (other than the Stalking Horse Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Qualified Bidder to consummate its contemplated transaction. Failure by a Qualified Bidder (other than the Stalking Horse Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors, after consultation with the Committee and the DIP Lenders, to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

For the avoidance of doubt, the Stalking Horse Bidder will be deemed a Qualified Bidder and any Stalking Horse Bid will be deemed to be a Qualified Bid, for all purposes and requirements pursuant to the Bidding Procedures, notwithstanding the requirements that a bidder (other than the Stalking Horse Bidder) must satisfy to be a Qualified Bidder.

## VII.   THE AUCTION.

Within two (2) Business Days after entry of the Bidding Procedures Order, the Debtors shall serve a notice of the Auction and Sale (the "Sale Hearing Notice") on: (a) the Notice Parties; (b) all parties to executory contracts and leases to be assumed, assigned, or rejected as part of the proposed Sale; (c) all parties who have expressed a written interest in some or all of the Debtors'

Assets in the 12 months prior to entry of the Bidding Procedures Order, which service may be sent by email, if a mailing address for any of such parties is unknown; (d) all known holders of liens, encumbrances, and other claims secured by the Debtors' Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale and transactions proposed thereunder; and (h) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Hearing Notice, with any modifications necessary for ease of publication, in *The New York Times* (national edition) to provide notice to any other potentially interested parties. If the Debtors receive no Qualified Bid other than the Stalking Horse Bid or if the only other Qualified Bid the Debtors receive is a Credit Bid with regard to the Assets, (a) the Debtors shall not hold an Auction with respect to such Assets; (b) the Stalking Horse Bid will be deemed the Successful Bid with respect to such Assets; (c) the Stalking Horse Bidder will be named the Successful Bidder with respect to such Assets; and (d) if the Agents submit a Credit Bid, the Debtors, in consultation with the Committee, shall have the right to select such Credit Bid as the Backup Bid. If the Debtors receive more than one Qualified Bid (other than the Stalking Horse Bid and a Credit Bid) for the Assets, the Debtors, in consultation with the Committee and the DIP Lenders, shall conduct the Auction to determine the Successful Bidder(s) with respect to the Assets.

As soon as practicable after the Debtors have determined the Baseline Bid, and in any event no later than twenty-four (24) hours prior to the commencement of the Auction, the Debtors will notify all Qualified Bidders and the DIP Lenders of the highest or otherwise best Qualified Bid for the Assets, as determined in the Debtors' reasonable business judgment (after consultation with the Committee and the DIP Lenders) (the "Baseline Bid"), and provide copies of the Bid Documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid shall take into account any factors the Debtors, in their reasonable business judgment and in consultation with the Committee and the DIP Lenders, reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the number, type, and nature of any changes to the Stalking Horse Purchase Agreement requested by the Qualified Bidder, including the Assets sought and Assumed Liabilities to be assumed in the Qualified Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close the proposed Sale, the conditions thereto, and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transactions contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid.

The Auction shall take place **at 10:00 a.m. (prevailing Eastern Time) on April 16, 2024**, (i) via a virtual meeting, (ii) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (iii) at such later date, time, and location as designated by the Debtors (after consultation with the Committee and the DIP Lenders), after providing notice to the Notice Parties. The Debtors shall have the right to conduct any number of Auctions on that date, if the Debtors determine, in their reasonable business judgment (in consultation with the Committee and the DIP Lenders), that conducting such Auctions would be in the best interests of the Debtors' estates.

A.      **Participants and Attendees.**

The Debtors and their advisors, in consultation with the Committee and the DIP Lenders, shall direct and preside over the Auction throughout the Auction process. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of the Auction and of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Successful Bid (as defined below).

Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Bidder) that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction. Qualified Bidders participating in the Auction must appear in person (or through a duly authorized representative), telephonically, or through a video teleconference, as determined by the Debtors. The Auction will be conducted openly and all creditors may be permitted to attend; provided that the Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction. Any creditor and its advisors wishing to attend the Auction must contact the Debtors' advisors no later than one (1) Business Days prior to the start of the Auction; provided that the Committee, the Prepetition First Lien Secured Parties, the DIP Lenders and DIP Agent, and the Stalking Horse Bidder, and their respective advisors, shall be permitted to attend the Auction without any prior notice to the Debtors' advisors.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any Bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith, and *bona fide* offer to purchase the Assets identified in such bid.

B.      **Auction Procedures.**

The Auction shall be governed by the following procedures, subject to the Debtors' right (after consultation with the Committee and the DIP Lenders) to modify such procedures in their reasonable business judgment (provided that, for the avoidance of doubt, the Debtors may not modify the Bid Protections afforded to the Stalking Horse Bidder, unless the Stalking Horse Bidder agrees to such modification in writing in its sole discretion). For the avoidance of doubt, the Debtors may not modify the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect the Stalking Horse Bidder's right to payment of the Break-Up Fee or the Expense Reimbursement or the Stalking Horse Bidder's right to receive a credit for its Bid Protections as set forth in paragraph B.2, immediately below without the express written consent of the Stalking Horse Bidder in its sole discretion):

> 1.      ***Baseline Bid***.  Bidding shall commence at the amount of the Baseline Bid.
>
> 2.      ***Minimum Overbid***.  Qualified Bidders may submit successive bids higher than the previous bid, based on and increased from the Baseline Bid for the Assets (each such bid, an "Overbid").  Any Qualified Bidder's initial Overbid shall be made in increments of at least $250,000 in cash, cash

equivalents, the Credit Bid, or such other consideration that the Debtors (after consultation with the Committee) deem equivalent; <u>provided</u> that no bid may qualify as an Overbid unless such bid provides for cash consideration in an amount equal to or greater than the Bid Protections granted to the Stalking Horse Bidder.  The Debtors may, in their reasonable business judgment (and after consultation with the Committee and the DIP Lenders), announce increases or reductions to initial or subsequent minimum incremental bids at any time during the Auction.  If the Stalking Horse Bidder submits an Overbid, it will receive a credit equal to the value of the Bid Protections granted to it when bidding during the Auction.

3.  ***Highest or Best Offer***.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe in their reasonable business judgment (and after consultation with the Committee and the DIP Lenders) to be the highest or otherwise best offer for the Assets (the "<u>Leading Bid</u>") and describe the material terms thereof.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.  To the extent not previously provided (as determined by the Debtors), a Qualified Bidder submitting a subsequent bid must submit, as part of its subsequent bid, written evidence (in the form of financial disclosure or credit quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Qualified Bidder's ability to close the transaction at the Purchase Price contemplated by such subsequent bid.

4.  ***Incremental Deposit***.  Upon the declaration by a Qualified Bidder of its Bid at the Auction, it must commit on the record to pay promptly following the Auction, if such Bid were to be the Successful Bid or the Backup Bid, the incremental amount of its Deposit calculated based on the increased purchase price of such bid, if applicable (the "<u>Incremental Deposit Amount</u>"); <u>provided</u> that the foregoing requirement shall not apply to the Stalking Horse Bidder.

5.  ***Rejection of Bids***.  The Debtors may, in their reasonable business judgment after consultation with the Committee and DIP Lenders, at any time before entry of an order of the Court approving a Qualified Bid, reject any bid that the Debtors determine is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders.  For the avoidance of doubt, the Debtors may not reject the Stalking Horse Bid on any such grounds.

6.  ***No Late Bids***.  The Debtors shall not consider any bids submitted after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

7. ***No Round-Skipping***.  Round-skipping, as described herein, is explicitly prohibited.  To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid before the end of such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment (and after consultation with the Committee and the DIP Lenders), such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Assets without the consent of the Debtors; <u>provided</u> that, notwithstanding anything to the contrary herein, a Qualified Bidder that is bidding on all or substantially all of the Assets shall not be required to participate in any Auction or round thereof for less than all or substantially all of the Assets.

8. ***Auction Sequence***.  In the event the Debtors receive Qualified Bids for less than all or substantially all of the Assets (such bids, "<u>Partial Asset Bids</u>"), the Debtors shall start the Auction with such Partial Asset Bids (and, for the avoidance of doubt, the Stalking Horse Bidder and any other bidder for all or substantially all the Assets shall not be required to participate in such Auction) to determine which Partial Asset Bid is the highest or otherwise best bid for the Assets in question (such bid, the "<u>Prevailing Partial Asset Bid</u>").  Upon determination of the Prevailing Partial Asset Bid, the Debtors shall determine whether such Prevailing Partial Asset Bid is a higher or otherwise better bid than the Stalking Horse Bid or other highest or otherwise best bid for all or substantially all of the Assets (such bids, "<u>All Asset Bids</u>," and the highest or otherwise best such bid, the "<u>Prevailing All Asset Bid</u>").  To the extent the Debtors determine that the Prevailing Partial Asset Bid is not higher or otherwise better than the Prevailing All Asset Bid, then no other Partial Asset Bids shall be accepted at the Auction and the Partial Asset Bid bidders shall not be entitled to participate in the Auction for all or substantially all of the Assets.  To the extent the Debtors determine that the Prevailing Partial Asset Bid is higher or otherwise better than the Prevailing All Asset Bid, then the All Asset Bid bidders shall be required to submit bids that are higher or otherwise better than the Prevailing Partial Asset Bid.

9. ***Additional Information***.  The Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's (other than either Agent's and the Stalking Horse Bidder's) financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any bid made by a Qualified Bidder during the Auction.

10.     ***Modification of Procedures***.  The Debtors may, after consultation with (i) the Committee and (ii) the DIP Lenders, and in their reasonable business judgment, (a) announce, at the Auction, modified or additional procedures for conducting the Auction, and (b) otherwise modify these Bidding Procedures; *provided that*, for the avoidance of doubt, the Debtors may not modify (i) the Bid Protections afforded to the Stalking Horse Bidder, unless the Stalking Horse Bidder agrees to such modification in writing in its sole discretion, (ii) the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect the Stalking Horse Bidder's right to payment of the Break-Up Fee or the Expense Reimbursement or the Stalking Horse Bidder's right to receive a credit for its Bid Protections as set forth in paragraph B.2, immediately above without the express written consent of the Stalking Horse Bidder in its sole discretion, or (iii) the consent and consultation rights set forth herein.  All such modifications and additional rules will be communicated to each of the Acceptable Bidders and Qualified Bidders in advance to the extent reasonably practicable; <u>provided</u> that, to the extent such modifications occur at the Auction, disclosure of such modifications shall be limited to those in attendance at the Auction.

The Auction shall include open bidding in the presence of all other Qualified Bidders.  All Qualified Bidders shall have the right to submit additional bids and make modifications to any prior Qualified Bid or Overbid at the Auction to improve their bids; <u>provided</u> that any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until the Debtors determine the Successful Bid and the Backup Bid in accordance with the terms of these Bidding Procedures; <u>provided</u> further that the Successful Bid and the Backup Bid must remain open and binding until the earlier of (a) the closing of a Sale for the Assets pursuant to the Successful Bid and (b) 90 days after the date of the Sale Hearing, unless otherwise agreed.  The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

## C.     Adjournment of the Auction.

The Debtors reserve the right, in their reasonable business judgment (after consultation with (i) the Committee and (ii) the DIP Lenders and (iii) the Stalking Horse Bidder)), to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment after consultation with the Committee and the DIP Lenders, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Sale at the prevailing bid amount.

## D.     Successful Bidder.

Immediately prior to the conclusion of the Auction, the Debtors shall (a) determine (after consultation with  the Committee, the DIP Lenders, and the Prepetition First Lien Holders)

consistent with these Bidding Procedures, in their reasonable business judgment, which Bid constitutes the highest or otherwise best Bid for the applicable Assets (each such Bid, a "Successful Bid"); and (b) notify all Qualified Bidders at the Auction for the applicable Assets of the identity of the bidder that submitted the Successful Bid (such bidder, the "Successful Bidder") and the amount of the purchase price and other material terms of the Successful Bid (the "Notice of Winning Bidder").  As a condition to remaining the Successful Bidder, any Successful Bidder (other than the Stalking Horse Bidder) shall be required to wire to the Debtors in immediately available funds the Incremental Deposit Amount, if applicable, calculated based on the purchase price of the Successful Bid, no later than one (1) Business Day following the date on which the Notice of Winning Bidder is served.

The Debtors shall file a notice identifying the Successful Bidder and Backup Bidder (if selected) as soon as reasonably practicable after closing the Auction, if any, and in any event not more than twenty-four (24) hours following closing the Auction.

## VIII.  BACKUP BIDDER.

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder (other than the Stalking Horse Bidder) with the next-highest or otherwise second-best Qualified Bid as compared to the Successful Bid at the Auction for the Assets, as determined by the Debtors in the exercise of their reasonable business judgment after consultation with the Committee and, other than with respect to a Credit Bid, the DIP Lenders, and the Prepetition First Lien Holders (the "Backup Bid"), shall be required to serve as a backup bidder (the "Backup Bidder"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated.  For the avoidance of doubt, in the event either Agent exercises the Credit Bid Right (consistent with Section III.C. above), such Agent shall agree to serve as a Backup Bidder.  As a condition to remaining the Backup Bidder, any Backup Bidder (other than the Stalking Horse Bidder) shall wire to the Debtors, in immediately available funds, the incremental amount of its Deposit, if applicable, calculated based on the increased cash component of the Purchase Price of the Backup Bid, no later than one (1) Business Day following the date on which the Notice of Winning Bidder is served.

The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder.

The Backup Bid(s) shall remain binding on the Backup Bidder until the earlier of (a) the closing of a Sale for the Assets pursuant to the Successful Bid and (b) 90 days after the date of the Sale Hearing, unless otherwise agreed.  If a Successful Bidder fails to consummate the approved transactions contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.

The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of a Backup Bidder without further order of the Court or notice to any party.

For the avoidance of doubt, and notwithstanding anything to the contrary herein, the Stalking Horse Bidder is not required to serve as the Backup Bidder and the Stalking Horse Bid shall not be deemed the Backup Bid unless and until the Stalking Horse Bidder separately agrees in writing to serve as the Backup Bidder.

## IX.  ACCEPTANCE OF SUCCESSFUL BID.

The Debtors' presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of such Qualified Bid.  The Debtors will be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing (as defined below).

## X.  FREE AND CLEAR OF ANY AND ALL ENCUMBRANCES.

All rights, title, and interest in and to the Assets or any portion thereof shall be sold free and clear of all liens, claims, interests, and encumbrances (if any) (collectively, the "Encumbrances"), subject only to the Assumed Liabilities and Permitted Liens (each as defined in the Successful Bidder's purchase agreement), if any, in accordance with Bankruptcy Code section 363(f), with such Encumbrances to attach to the net proceeds (if any) received by the Debtors from the Sale of the Assets in accordance with the Bankruptcy Code, applicable non-bankruptcy law, and any prior orders of the Court.

## XI.  ASSUMPTION AND ASSIGNMENT PROCEDURES.

The procedures for assuming and assigning Assigned Contracts to the Successful Bidder are set forth in the Bidding Procedures Order.

## XII.  NOTICE PARTIES.

The term "Notice Parties" as used in these Bidding Procedures shall mean (i) the Prepetition First Lien Secured Parties and their counsel; (ii) the Stalking Horse Bidder; (iii) the U.S. Trustee for the District of Delaware; and (iv) the Committee and its counsel.

## XIII.  CONSULTATION BY THE DEBTORS.

The Debtors shall consult with the Consultation Parties as explicitly provided for in these Bidding Procedures, including, for the avoidance of doubt, the limitation on the DIP Agent's consultation rights as explicitly set forth elsewhere herein.  Each reference in these Bidding Procedures to "consultation" (or similar phrase) with the Consultation Parties shall mean consultation in good faith.  The Debtors shall consult with the Consultation Parties in good faith regarding the sale process for the Assets and provide to the Consultation Parties and their advisors regular reports concerning the sale process, including parties contacted, buyer feedback, copies of letters of intent, drafts of definitive agreements, updates regarding purchase proposals, and any diligence and other information reasonably requested by the Consultation Parties; provided that such materials shall be provided to the advisors to the Committee on a professional eyes only basis and may only be shared with an individual Committee member if such party has unequivocally revoked its right to submit a Bid in writing to the Debtors.  The following parties will constitute the "Consultation Parties": (a)  the DIP Lenders and their counsel; and (b) the Committee and its

counsel.  Notwithstanding anything to the contrary herein, during any period in which a Consultation Party has submitted a Qualified Bid and has become a Qualified Bidder hereunder, such Consultation Party shall no longer be considered a Consultation Party for purposes of these Bidding Procedures and shall only receive the same diligence, information, and notice as all other Qualified Bidders, unless and until such party unequivocally revokes its Bid and waives its right to continue in the Auction process.

## XIV.  RESERVATION OF RIGHTS.

**The Debtors reserve the right, in their reasonable business judgment (after consultation with the DIP Lenders and the Committee), to modify these Bidding Procedures in good faith and in a manner consistent with their fiduciary duties (*provided that*, for the avoidance of doubt, the Debtors may not modify (i) the Bid Protections afforded to the Stalking Horse Bidder, unless the Stalking Horse Bidder agrees to such modification in writing in its sole discretion, (ii) the rules, procedures, or deadlines set forth herein, or adopt new rules, procedures, or deadlines that would impair in any material respect the Stalking Horse Bidder's right to payment of the Break-Up Fee or the Expense Reimbursement or the Stalking Horse Bidder's right to receive a credit for its Bid Protections as set forth in paragraph B.2, immediately above without the express written consent of the Stalking Horse Bidder in its sole discretion, or (iii) the consent and consultation rights set forth herein), to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to selection of the Successful Bidder(s), additional customary terms and conditions on the Sale of the Assets, including, without limitation: (a) extending the dates and deadlines set forth in these Bidding Procedures (including, but not limited to, those set forth in Section II hereof); (b) adjourning the Auction (if held) without further notice; (c) adding or modifying procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, and/or adjourning the Sale Hearing (as defined below) in open court (if held); (d) cancelling the Auction or electing not to hold an Auction; (e) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid); (f) adjusting the applicable minimum Overbid increment; and (g) selecting a draft purchase agreement agreed to by a Qualified Bidder in connection with a Qualified Bid to serve as the purchase agreement that will be executed by the Successful Bidder or Successful Bidders, as applicable and with any necessary adjustments for the Assets and Liabilities being purchased and assumed, upon conclusion of the Auction, if held.  The Debtors shall provide reasonable notice of any such modification to all Qualified Bidders, including the Stalking Horse Bidder and the DIP Agent.**

## XV.  CONSENT TO JURISDICTION.

All Potential Bidders, Acceptable Bidders, and Qualified Bidders shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Bid Documents, as applicable.

## XVI.   SALE HEARING.

A hearing to consider approval of the sale of the Debtors' Assets (or any portion thereof) to the Successful Bidder(s) or Backup Bidder(s) (if applicable) (the "Sale Hearing") shall be scheduled to take place on April 22, 2024, at 10:00 a.m. (prevailing Eastern Time), or the soonest date the Court is available thereafter, before the Honorable Craig T. Goldblatt, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Courtroom No. 7, Wilmington, Delaware 19801.

**The Sale Hearing may be continued to a later date by the Debtors (after consultation with the DIP Lenders and the Committee) by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party (including the Stalking Horse Bidder).**

At the Sale Hearing, the Successful Bidder and the Backup Bidder must acknowledge on the record at the start of the hearing that in connection with submitting their Bids, they did not engage in any collusion that would be subject to section 363(n) of the Bankruptcy Code with respect to any Bids, the Auction, or the Sale, specifying that they did not agree with any Potential Bidders, Acceptable Bidders, or Qualified Bidders to control the price or any other terms of the Sale.

Objections to (i) the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code to the Successful Bidder(s) and/or Backup Bidder(s), as applicable, (ii) any of the relief requested in the Motion, and (iii) entry of any order approving the sale (the "Sale Order"), must (w) be in writing and specify the nature of such objection; (x) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; (y) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (z) be filed with the Court and served on the Objection Notice Parties (as such term is defined in the Bidding Procedures Order) so as to be actually received no later 4:00 p.m. (prevailing Eastern Time) on April 17, 2024.

## XVIII.  FIDUCIARY OUT.

Nothing in these Bidding Procedures will require the board of directors, board of managers, or such similar governing body of a Debtor or any non-Debtor affiliate to take any action, or to refrain from taking any action (including, but not limited to, with respect to the Bidding Procedures or the Sale), to the extent such board of directors, board of managers, or such similar governing body determines in good faith (upon consultation with outside financial advisors and legal counsel) that taking such action, or refraining from taking such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

## XVIII. RETURN OF DEPOSIT.

The Deposit of each Successful Bidder shall be applied to the purchase price of the applicable transaction(s) at closing.  The Deposits for each Qualified Bidder (other than the Stalking Horse Bidder) shall be held in one or more escrow accounts on terms acceptable to the Debtors in their sole discretion (after consultation with the Committee) and shall be returned on or before the date that is five (5) Business Days after the Auction (other than with respect to the

Successful Bidder and the Backup Bidder).  The Stalking Horse Bidder's Deposit shall be held and returned in accordance with the terms of the Stalking Horse Purchase Agreement.  Any Backup Bidder's Deposit shall be held in escrow until the closing of the Sale with the Successful Bidder. In the event the applicable Successful Bidder fails to close and the Debtors opt to close on the Sale set forth in the applicable Backup Bid, the Backup Bidder's Deposit shall be applied to the purchase price of such transaction at closing.  In the event of a breach or failure to consummate a Sale by the Successful Bidder or the Backup Bidder, as applicable, the defaulting Successful Bidder's Deposit or Backup Bidder's Deposit, as applicable, shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder or Backup Bidder, as applicable, subject to the terms of the Stalking Horse Purchase Agreement, the Successful Bidder's purchase agreement, or the Backup Bidder's purchase agreement, as applicable.

*      *      *      *